# EXHIBIT E

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "A"

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

WILLIAM MCGINNIS

vs.

WB HOMES INC

NO. 2018-19272

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY  BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**HORN WILLIAMSON LLC**
Jennifer M. Horn, Esquire
Kathleen J. Seligman, Esquire
PA ID Nos. 79721/94272
2 Penn Center, Suite 1700
1500 JFK Boulevard
Philadelphia, PA 19102
215-987-3800
jhorn@hornwilliamson.com
kseligman@hornwilliamson.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| **WILLIAM MCGINNIS** and **ROSE MARIE MCGINNIS** 2573 Muirfield Way Lansdale, PA 19446 | **COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PA** |
| **Plaintiffs,** | **CIVIL ACTION NO. 2018-19272** |
| v. | **JURY TRIAL DEMANDED** |
| **W.B. HOMES, INC.,** 404 N. Sumneytown Pike, Suite 200 North Wales, PA 19454, | |
| and | |
| **PENN GWYN, L.P.** 404 N. Sumneytown Pike, Suite 200 North Wales, PA 19454, | |
| and | |
| **THORNBY DEVELOPMENT CORP.,** 404 N. Sumneytown Pike, Suite 200 North Wales, PA 19454, | |
| and | |
| **W.B. HOMES DEVELOPMENT CO., INC.** 404 N. Sumneytown Pike, Suite 200 North Wales, PA 19454 | |
| and | |

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| WILLIAM J. BONENBERGER a/k/a | : |
|---|---|
| WILLIAM J. BONNENBERGER | : |
| 404 N. Sumneytown Pike, Suite 200 | : |
| North Wales, PA 19454, | : |
| | : |
| and | : |
| | : |
| OMNIA GROUP, INC., | : |
| 323 South York Road | : |
| Hatboro, PA 19040, | : |
| | : |
| and | : |
| | : |
| OMNIA GROUP ARCHITECTS, LLC, | : |
| 323 South York Road | : |
| Hatboro, PA 19040, | : |
| | : |
| **Defendants.** | : |

## COMPLAINT

Plaintiffs, by and through their attorneys, Horn Williamson, LLC, hereby submit their Complaint and aver that W.B. Homes, Inc., a family-owned residential real estate developer, marketed itself as a luxury home builder in Bucks and Montgomery Counties Pennsylvania.

### I.   PARTIES AND VENUE

1.    Plaintiffs William and Rose Marie McGinnis own and reside in a single-family home located at 2573 Muirfield Way, Lansdale, Pennsylvania (the "Home" or the "Property").

2.    The Home is located in a housing development known as Bethel Knoll ("Development") which, upon information and belief, is a planned residential community subject to Pennsylvania's Uniform Planned Community Act, 68 Pa.C.S.A. § 5101, et seq.

3.    Upon information and belief, Defendants Penn Gwyn, L.P. and Thornby Development Corp. are the Declarants of the Planned Community.

2

5/26/2020, 11:53 AM

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

4.      Defendant W.B. Homes, Inc. ("W.B. Homes"), upon information and belief, is a family-owned corporation that operates as a builder/developer of residential homes and its principal place of business is located at 404 N. Sumneytown Pike, Suite 200, North Wales, Pennsylvania.

5.      It is believed and therefore averred that W.B. Homes developed, planned, advertised, marketed, promoted, constructed, and/or warranted the Home sold to Plaintiffs.

6.      Defendant W.B. Homes Development Co., Inc. ("W.B. Development") is a corporation that operates as a builder/developer of residential homes with a principal place of business located at 404 N. Sumneytown Pike, Suite 200, North Wales, Pennsylvania.

7.      It is believed and therefore averred that W.B. Development is a successor in interest to W.B. Homes.

8.      Defendant Penn Gwyn, L.P., ("Penn Gwyn") is a limited partnership with a principal place of business located at 404 N. Sumneytown Pike, Suite 200, North Wales, Pennsylvania.

9.      Defendant Penn Gwyn was the owner and grantor of the Property that was sold by W.B. Homes to Plaintiffs.

10.     Defendant Thornby Development Corp. ("Thornby") is a corporation with a principal place of business located at 404 N. Sumneytown Pike, Suite 200, North Wales, Pennsylvania.

11.     Upon information and belief, W.B. Homes, W.B. Development, Penn Gwyn, and Thornby all share common ownership.  True and correct copies of the Pennsylvania Department of State Registration pages are attached hereto as Exhibit A.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

12.     Defendant Thornby is identified as the general partner of Penn Gwyn on the Pennsylvania Department of State's Business Registry.   *See* Exhibit A.

13.     Upon information and belief, W.B. Homes marketed, built, and sold the Home to Plaintiffs.

14.     Defendant William J. Bonenberger a/k/a William J. Bonnenberger ("Bonenberger") is an individual with a place of business located at 404 N. Sumneytown Pike, Suite 200, North Wales, Pennsylvania.

15.     Upon information and belief, Bonenberger is the President of Defendants W.B. Homes and Thornby, and he made personal representations to the Plaintiffs about the quality and workmanship of the Home.   *See* Exhibit A.

16.     "W.B. Homes Entities" shall refer collectively to W.B. Homes, Penn Gwyn, and Thornby.

17.     Defendant Omnia Group, Inc. is a corporation that operated as the architect of the Home, and its principal place of business is located at 323 South York Road, Hatboro, PA 19040.

18.     Defendant Omnia Group Architects, LLC is a limited liability corporation and an affiliate to Omnia Group, Inc with its principal place of business located at 323 South York Road, Hatboro, PA 19040.

19.     Upon information and belief, Defendants Omnia Group, Inc. and Omnia Group Architects, LLC. are related and/or affiliated entities and/or have a parent/subsidiary relationship.

20.     "Omnia" or "Omnia Group Defendants" shall refer collectively to Omnia Group, Inc. and Omnia Group Architects, LLC.

21.     Venue is proper because the Home is located in Montgomery County, Commonwealth of Pennsylvania.

Firefox

1 of 1

5/26/2020, 11:54 AM

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## II.   FACTS RELATING TO W.B. HOMES ENTITIES

22.     As advertised by W.B. Homes, W.B. Homes is "Philadelphia's premiere home builder in nearby Bucks and Montgomery counties, Pennsylvania." A true and correct copy of portions of W.B. Homes' website is attached hereto as Exhibit B.[1]

23.     Upon information and belief, Penn Gwyn and/or Thornby acquired the land on which the Development was built and Declared a Planned Community.

24.     W.B. Homes is identified in Plaintiffs' Agreement of Sale as the "Equitable Owner" of the Home. A true and correct copy of the Agreement of Sale is attached hereto as Exhibit C.

25.     Counsel for builder defendant has agreed not to pursue arbitration.

26.     At the time when Plaintiffs entered into the Agreement of Sale with W.B. Homes, W.B. Homes was not the legal title owner of the Property.

27.     Upon information and belief, at all times relevant hereto, Penn Gwyn was the legal title owner of the Property until title transferred to Plaintiffs.

28.     At all times relevant hereto, there was no mortgage in favor of W.B. Homes recorded against the Property.

29.     At all times relevant hereto, there was no assignment of rights in favor of W.B. Homes recorded against the Property.

30.     Upon information and belief, corporate formalities, including preserving the legal boundaries between W.B. Homes, Thornby, and Penn Gwyn were not observed during the marketing, sale, construction and transfer of the Home.

---

[1] A true and correct copy of Exhibit B is available at: http://www.wbhomesinc.com/

1 of 1                                                                 5/26/2020, 11:54 AM

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

31.     Upon information and belief, W.B. Homes and Penn Gwyn intermingled assets, including but not limited to real property and/or monies during the marketing, sale, construction and transfer of the Home.

32.     Upon information and belief, the Development was marketed, designed, constructed, sold by Bonenberger and W.B. Homes Entities between 2002 to 2005.

33.     Bonenberger and the W.B. Homes Entities advertised the Development a luxury estate home community and suggested home buyers "Escape the Ordinary." A true and correct copy of portions of W.B. Homes' website is attached hereto as Exhibit D.[2]

34.     Bonenberger and W.B. Homes Entities further advertised that the Development contained "W.B. Trademark Amenities Featured In Every Home," quality construction details, and gracious exteriors. A true and correct copy of portions of W.B. Homes' website is attached hereto as Exhibit E.[3]

35.     In or around the middle of 2003, when Plaintiffs were researching the purchase of their potential new home, W.B Homes, Inc.'s website, on the "About W.B. Homes" page, represented as follows:

> Our goal is to make the new home experience for our customers one of the most pleasurable and exciting experiences of their lives." In 1986, with this very simple and straight forward concept on which to build, W.B. Homes was formed. In the years since then, W.B. Homes has worked hard to earn a very successful and enviable reputation in the home building industry. With a resume that includes more than 45 completed communities and over 1000 satisfied customers, co-owners William Bonenberger and John Breitmayer have built this reputation by caring deeply about the same things our homebuyers care about. Our total commitment to the following five objectives has been, and will continue to be, crucial to our company's success.

---

[2] A true and correct copy of Exhibit D is available at:
https://web.archive.org/web/20031011125333/http://www.wbhomesinc.com:80/bethel_knoll/
[3] A true and correct copy of Exhibit E is available at:
https://web.archive.org/web/20040601180807/http://www.wbhomesinc.com:80/bethel_knoll/standard.html

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

- *OFFER MODERN, SPACIOUS, FUNCTIONAL HOME DESIGNS FOR TODAY'S CHANGING LIFESTYLES*

- *BUILD COMMUNITIES IN HIGHLY DESIRABLE LOCATIONS WITH EASY ACCESSIBILITY TO SCHOOLS, SHOPPING AND MAJOR HIGHWAYS*

- *PROVIDE THE HIGHEST LEVEL OF QUALITY WORKMANSHIP*

- *PROVIDE "VALUE" BY INCLUDING FEATURES THAT ARE CONSIDERED UPGRADES AT OTHER COMMUNITIES*

- *ENSURE TOTAL CUSTOMER SATISFACTION*

Each of our homes is as unique as the client we build it for. Each step and detail of the building process is carefully checked to assure that each home meets our high standards of excellence. This attention to detail ensures a finished product that both the new homeowner and W.B. Homes can be proud of. At W.B. Homes we welcome "Customizing." We offer an extensive list of Options in our "Option Manual," and we'll be glad to consider your own customizing ideas. The purchase of one of our homes includes the services of our Professional Staff to assist you in making color selections, choosing cabinets, countertops, flooring, and much more. In the end, we want to be sure that your new home is personalized and reflects who "YOU" are.

A true and correct copy of the "About W.B. Homes" page of the W.B. Homes website from June 22, 2003, is attached hereto as Exhibit F.[4]

36.    W.B. Homes' current website lists William "Bill" Bonenberger (Bonenberger) as the founder who "paid his dues and gained hands-on experience working with a trusted national builder." *See* Exhibit B.

37.    On or about June 1, 2018, Plaintiffs, by and through counsel, sent Notice of their claims to W.B. Homes, Inc. A true and correct copy of the June 1, 2018 Notice to Cure is attached hereto as Exhibit G.

38.    Upon information and belief, on or about July 12, 2018, W.B. Homes and W.B. Development completed a merger of and between the two companies. *See* Exhibit A.

### III.    FACTS SPECIFICALLY RELATING TO THE PLAINTIFFS' HOME

---

[4]A true and correct copy of Exhibit F is available at:
https://web.archive.org/web/20030622055617/http://www.wbhomesinc.com:80/about.html

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### A. The Plaintiffs' Purchase of the Home and Execution of the Agreement of Sale.

39.     In or about 2003, the Plaintiffs decided to purchase a new home and began viewing homes in Montgomery County, Pennsylvania.

40.     Bonenberger, a family friend to Plaintiffs, knew and/or learned that the Plaintiffs were interested in purchasing a new home.

41.     Bonenberger recommended that the Plaintiffs consider purchasing one of his homes (a W.B. Homes' Home) and suggested the Plaintiffs visit the not yet advertised Bethel Knoll Community in Montgomery County, Pennsylvania.

42.     Bonenberger, personally and individually, specifically and directly assured the Plaintiffs that their Home would be constructed with high quality materials, built with a high level of custom workmanship, and built in compliance with all building codes.

43.     Bonenberger and W.B. Homes Entities promised the Plaintiffs that their home would be designed and constructed in compliance with, and pursuant to, industry standards and applicable codes and regulations, and free from defects.

44.     Prior to purchasing the Home, the Plaintiffs reviewed the W. B. Homes website, marketing materials, brochures, and model floor plans, including the floor plan for the Newbury Country Manor which the Plaintiffs ultimately selected. A true and correct copy of the Plaintiffs' Home plan is attached hereto as Exhibit H.

45.     Bonenberger and W.B. Homes Entities customized the Newbury model home to fit Plaintiffs' unique style and preferences.

46.     Bonenberger also named an archway, requested by the Plaintiffs, the "McGinnis" archway and told the Plaintiffs that he was building them a great home.

47.     Justifiably relying upon Bonenberger' personal representations, the marketing

8

materials, representations about W.B. Homes' reputation, the Home's unique and desirable features, and promised quality of construction, on or about October 12, 2003, the Plaintiffs entered into an Agreement of Sale (the "Agreement") with W.B. Homes ("the Seller") for the purchase of the property located at 2573 Muirfield Lane, Lansdale, Pennsylvania. *See* Exhibit C.

48.     Jack Boyd, Vice President of Defendant W. B. Homes signed the Agreement on behalf of the Seller.

49.     A Certificate of Occupancy for the Plaintiffs' Home (the "McGinnis COO") was issued by Worcester Township on or about November 16, 2004. A true and correct copy of the McGinnis COO is attached hereto as Exhibit I.

50.     On or about November 19, 2004, Plaintiffs took possession of their Home, at which time, Penn Gwyn transferred the Home by deed to the Plaintiffs (the "McGinnis Deed"). A true and correct copy of the Deed is attached hereto as Exhibit J.

**B. Plaintiffs' Justifiable Reliance on the Builders' Misrepresentations About the Home and the Development.**

51.     In addition to the aforementioned written marketing materials and advertisements, prior to and during construction, Plaintiffs had numerous conversations with Bonenberger who made verbal representations about the high quality and superior construction, workmanship and design of the Home to induce the Plaintiffs to purchase the Home.

52.     Plaintiffs relied on the representations of Bonenberger.

53.     On or about October 12, 2003, Defendant W.B. Homes, provided the Plaintiffs with a Builder's Limited Warranty. (the "McGinnis Limited Warranty"). A true and correct copy of the McGinnis Limited Warranty is attached hereto as Exhibit K.

54.     The McGinnis Limited Warranty represents as follows: "W.B. Home, Inc. has strived to construct your new home carefully and in full accordance with accepted home building

9

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

practices. We have performed continuous inspections along its development and where required, your home has been certified by local building inspectors." *See id.*

55.     Plaintiffs justifiably relied upon the McGinnis Limited Warranty as additional evidence that the Home had been constructed properly and in compliance with the building code, local ordinance, and industry standards.

56.     Relying on the representations of the W.B. Homes Entities as to the quality of the Home being built as advertised and relying upon the assurances and representations made by Bonenberger, Plaintiffs believed they were purchasing a well-constructed, luxury home.

### C. Plaintiffs' Notification to the Builder Defendants and the Builder Defendants' Refusal to Make Repairs.

57.     In or around the early part of 2018, Plaintiffs considered selling their Home.

58.     Because of stucco issues in neighboring developments, the Plaintiffs decided to have a stucco evaluation performed.

59.     Plaintiffs hired Rob Lunny from Lunny Building Diagnostics ("Lunny") to perform a Building Moisture Survey of the Home on March 23, 2018 (the "Lunny Report"). A true and correct copy of the Lunny Report is attached hereto as Exhibit L.

60.     Lunny preliminarily found numerous construction defects with respect to the Home, including, but not limited to:

    a.  Inadequate or missing flashing around windows, doors and penetrations of the building envelope;

    b.  Gaps in Sills;

    c.  Exposed wood under right and left side of front patio;

    d.  A provision for drainage or "weep screed" was not installed;

    e.  Inadequate kickout flashing in roof/wall intersections;

    f.  Control joints were not installed at floor lines;

    g.  Inadequate window head flashing;

10

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

    h.   Casing beads not installed around windows and doors;

    i.    System extends over foundation;

    j.    Lack of flashing detail at stone/stucco intersections;

    k.   Lack of drainage in FD stone system; and

    l.    Lack of sealing around light fixture attachments.

*See id.* at 27.

61.    Lunny found preliminary evidence of the following damage to the McGinnis Home as a direct and proximate cause of the above-referenced construction defects, which include:

    a.   Failed substrate;

    b.   Elevated moisture readings;

    c.   Areas of no resistance of the sheathing; and

    d.   Moisture damage to windows and doors.

*See id.* at 26.

**D.  Plaintiffs' Good Faith Claim to Defendant W.B. Homes.**

62.    On or about April 6, 2018, the Plaintiffs notified Defendant Bonenberger about the reported construction defects and requested that the Defendants remediate the construction defects to the Home.

63.    Bonenberger and/or representatives of W.B. Homes' engaged in correspondence with Plaintiffs and participated in a meeting in an attempt to resolve the defects and resulting damage to the Plaintiffs' Home.

64.    During one of these correspondences, Bonenberger told Plaintiff, William McGinnis, that he (Bonenberger) was aware of stucco issues in other W.B. Homes' developments.

65.    The parties were unable to resolve the Plaintiffs' concerns about their Home.

66.     On or about April 27, 2018, Bonenberger and W. B. Homes provided the Plaintiffs with a proposal from Exterior Options, Inc., a stucco subcontractor, to perform remediation work at the Plaintiffs' expense.

67.     Plaintiffs subsequently retained counsel to seek relief against the W.B. Homes Entities.

68.     On or about June 1, 2018, through counsel, Plaintiffs made a demand upon the Defendants to remediate the construction defects. *See* Exhibit G.

69.     To date, the Defendants have refused to remediate the Plaintiffs' Home.

**E. The Plaintiffs Have Sustained and Continue to Sustain Damages.**

70.     The Plaintiffs anticipate that to fully remediate the Home it will cost in excess of $150,000.00. In addition, Plaintiffs anticipate that they will incur other damages arising from the Home's defective construction and its remediation.

71.     The Plaintiffs have sustained damages in excess of $150,000.00 as a direct and proximate result of the Defendants' unlawful, fraudulent, negligent, unfair, deceptive, and/or misleading actions and/or inactions.

72.     The Plaintiffs have sustained or will continue to sustain damages other than damage to the originally constructed Home, which include, but are not limited to: (i) two patios; (ii) two sets of stone steps; (iii) landscaping, landscape lighting, and driveway ;  (iv) replacement of window tinting on all windows that will be replaced; (v) repainting walls that have been painted after closing; (vi) damage to the finished basement; (vii) the air quality within the Home that is contaminated with mold and/or will be contaminated with mold when the exterior envelope is repaired; and (viii) removal and replacement of the alarm system.

12

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

73.     In addition, the Plaintiffs have sustained the other following damages:   (i) interruption of full use and enjoyment of the Home, (ii) diminution of value of the Home due to the existence of defects with the Home and the same kind of construction defects neighborhood wide, decreasing the willingness of potential buyers to purchase a home within the Development and the marketability and market value of the Home;  (iii) such other costs and **damages** that may be incurred during remediation and repair of construction defects and damages that cannot be fully known until the remediation project has commenced; and/or (iv) **continued** costs associated with maintaining the Home and paying taxes and mortgage on the Home, which the Homeowners cannot sell due to damage to the Home and the stigma of a stucco property.

74.     The Plaintiffs have satisfied all conditions precedent to filing this action.

75.     The Plaintiffs filed a Writ of Summons against the Defendants on or about July 31, 2018.

## IV.   **FACTS RELATING TO THE OMNIA GROUP DEFENDANTS.**

76.     Upon information and belief, Omnia were the architects that designed the Plaintiffs' Home.

77.     Upon information and belief, Bonenberger and/or the W.B. Homes Entities entered into a written contract with Omnia (the "Omnia Design Contract") to serve as the design professional architect for the Plaintiffs' Home.  Pursuant to Pa.R.C.P. 1019(i), the Plaintiffs were not in privity of contract with Omnia and are not in possession of the Omnia Design Contract. Plaintiffs expect to obtain true and correct copies of the same during the discovery phase of this litigation.

78.     Upon information and belief, the Omnia Design Contract established a professional relationship between Bonenberger and/or the W.B. Homes Entities and Omnia.

13

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

79.    Upon information and belief, in accordance with the Omnia Design Contract, Omnia prepared design plans to be used for obtaining the necessary permits and for construction of the Plaintiffs' Home.

80.    Upon information and belief, Omnia supplied the designed plans, specifications, and information necessary to construct the Plaintiffs' Home.

81.    Bonenberger and W.B. Homes Entities promised the Plaintiffs that their home would be designed and constructed in compliance with, and pursuant to, industry standards and applicable codes and regulations, and free from defects.

82.    Omnia owed a duty to the public, and particularly to the residents of the Home, to adhere to the standards of professional conduct expected of architects in the Commonwealth of Pennsylvania.

83.    Omnia's duties as set forth in 49 Pa. ADC §9.151(1)-(3), included the duty to "exercise due regard for the safety, life and health of the public . . . or other individual who may be affected by the professional work for which [the Architect] is responsible." *See* 49 Pa. ADC §9.151(1)-(3).

84.    Omnia also had the duty to "perform their work and produce designs that comply with all relevant State and municipal building laws and regulations." *See id.*

85.    By submitting their design plans and specifications to Bonenberger and/or W.B. Homes Entities, to be used in the construction of the Home, Omnia represented that the **information** they supplied would permit the Bonenberger and W.B. Homes Entities to construct the Plaintiffs' Home in accordance with all relevant building laws and regulations.

86.    Omnia represented that the **information** they supplied pursuant to the design plans and specifications for the construction of the Plaintiffs' Home, if followed during construction,

14

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

would result in residential structures that were habitable and free from water and moisture infiltration.

87.     Ultimately, the information, *vis a vis* the design plans and specifications, and other information provided, by Omnia were false, defective, and deficient.

88.     Omnia's provision of deficient and defective design plans and specifications constitute a breach of the Omnia Design Contract.

89.     Omnia further breached the standard of care required of professional architects in the Commonwealth of Pennsylvania.

90.     Omnia's false, deficient, and defective design plans and specification resulted in the construction of defective exterior envelopes and stucco systems and caused significant water and moisture infiltration into the Plaintiffs' Home thereby causing significant and serious damage requiring remediation and repair.

### V. FACTS RELATING TO THE DEFENDANTS' VIOLATION OF BUILDING CODE

91.     The defects identified in Lunny Report demonstrate that construction of the Plaintiffs' Home did not comport with then-existing requirements in the applicable building codes and standards and/or local ordinances.

92.     The COO issued by the local code enforcement office identifies the building code applicable to the construction of the Home to be the International Residential Code 2003 ("IRC 2003" or the "Applicable Building Code").

93.     As such, upon information and belief, IRC 2003 was the building code applicable to the construction and design of the Plaintiffs' Home and/or Development.

94.     The allegations herein concerning violations of building code and local ordinance are made at any early stage of litigation and are subject to discovery confirming the Applicable

15

Building Code and the existence of additional building code violations in the design and/or construction of the Home.

95.    Plaintiffs intend to supplement, modify, and/or further develop allegations and averments relating to or concerning the existence of building code violations during the course of and at the conclusion of discovery.

96.    Plaintiffs further intend to conduct destructive testing of the Home and produce expert report(s) for the purpose of developing evidence substantiating the existence of building code violations.

97.    The Defendants knew or should have known that the Home was constructed in violation of the Applicable Building Code and local ordinance.

98.    Upon information and belief, the Defendants willfully, knowingly, intentionally, recklessly, and/or negligently unlawfully constructed the Home in violation of Applicable Building Code and local ordinance.

99.    Upon information and belief, the Defendants willfully, knowingly, intentionally, recklessly, and/or negligently marketed, advertised, and represented that the Home was of quality construction and built pursuant to the Applicable Building Code, when they knew or should have known that the Home was unlawfully constructed in violation of Applicable Building Code and local ordinance.

100.    Upon information and belief, the Defendants, individually, willfully, knowingly, intentionally, recklessly, and/or negligently failed to supervise, oversee, and/or inspect the implementation of the design during the construction of the Home.

101.    Upon information and belief, the Defendants, individually, willfully, knowingly,

16

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently then non-confidential information and documents.

5/26/2020, 11:57 AM

intentionally, recklessly, and/or negligently failed to supervise, oversee, and/or inspect the construction of the Home with regard for compliance with the Applicable Building Code and local ordinance.

102.   Upon information and belief, the Defendants, individually, willfully, knowingly, intentionally, recklessly, and/or negligently warranted the Home when they knew, or should have known, that the Home was not adequately and properly inspected for compliance with the Applicable Building Code and the Home's construction did not comply with Applicable Building Code and local ordinance.

103.   Upon information and belief, the Defendants, individually, willfully, knowingly, intentionally, recklessly, and/or negligently sold the Home when they knew or should have known that the Home was not adequately and properly inspected for compliance with the Applicable Building Code and the Home's construction and/or design did not comply with Applicable Building Code and local ordinance.

104.   As such, the construction and/or design of the Home was unlawful because the Home was designed and constructed in violation of Applicable Building Code and local ordinance.

## COUNT I
## BREACH OF CONTRACT
## PLAINTIFFS
### v.
## BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY

105.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth at length herein.

106.   Plaintiffs purchased the Home from Bonenberger and W.B. Homes Entities pursuant to the Agreement of Sale, whereby Bonenberger and W.B. Homes, Entities agreed to

17

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

construct and sell a home that was properly constructed in a reasonably workmanlike manner, properly supervised, free of construction defects and that was habitable, in compliance with industry standards and local building code requirements and inspected by W. B. Homes' trained personnel prior to delivery.

107.   Bonenberger, personally and individually, specifically and directly promised and assured the Plaintiffs that their Home would be constructed with high quality materials, built with a high level of custom workmanship, and built in compliance with all building codes.

108.   Bonenberger, personally and individually, held himself out in advertising and promotional materials as the designer and builder of the Homes in the Development.

109.   By making representations to the Plaintiffs, Bonenberger guaranteed that the Plaintiffs' Home would defect-free and is personally liable to them for breach of contract.

110.   In light of the facts alleged herein, Bonenberger is liable for breach of contract, in his individual capacity.

111.   To the extent that the Agreement of Sale was entered into by and between the Plaintiffs and W.B. Homes, and not directly with Bonenberger, Penn Gwyn, and Thornby Development, these parties are properly named as Defendants in connection with the cause of action in this Count, and should be held jointly and severally liable with W.B. Homes, because all of these Defendants were "alter egos" or mere instrumentalities of one another, and/or acted as a common business enterprise and/or single entity in all aspects of their business, and the corporate and business structure of Bonenberger, Penn Gwyn, Thornby, and W. B. Homes are intertwined in such a way that they share common ownership and/or commons owners, principals and/or officers and directors, have a relationship as parent and subsidiary and/or affiliates, such that and

18

that piercing of their respective corporate veils is appropriate to hold them jointly and severally liable to the Plaintiffs.

112.   The Home, in fact, was not properly constructed in compliance with industry standards or local building code requirements and the Uniform Planned Community Act.

113.   Nor, is the Home habitable, free of construction defects, and built in a reasonably workmanlike manner.

114.   Bonenberger, W.B. Homes, Penn Gwyn, and Thornby have materially breached the Plaintiffs' Agreement.

115.   As a direct and proximate result of Bonenberger, W.B. Homes, Penn Gwyn, and Thornby's material breach of the Agreement, the Plaintiffs have incurred, and will continue to incur, substantial damages and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Homes and other related costs.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgement in their favor and against Defendants W.B. Homes, Penn Gwyn, Thornby, and William Bonenberger for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as the Court may deem proper and necessary.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**PLAINTIFFS**
**v.**
**BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY**

116.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth at length herein.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

117.    Upon information and belief, Plaintiffs' Agreement of Sale incorporated a Limited Warranty Program, which is applicable to Plaintiffs' Home.

118.    Plaintiffs reasonably relied on the express representations in the Limited Warranty Program and the Agreement of Sale.

119.    Bonenberger, personally and individually, specifically and directly promised and assured the Plaintiffs that their Home would be constructed in compliance with an express warranty, with high quality materials, built with a high level of custom workmanship, and built in compliance with all building codes.

120.    Bonenberger and W.B. Homes Entities' certifications and representations in the Agreement of Sale and Limited Warranty Program constituted express warranties that the Plaintiffs' Home had been built in compliance with industry standards, and that a Certificate of Occupancy had been issued indicating that the Home was built in accordance with the applicable building code, was habitable and built in a good, workmanlike manner, properly supervised during construction, and inspected by Defendants' trained personnel prior to delivery.

121.    Plaintiffs reasonably relied upon the express warranty and representations made by Bonenberger and W.B. Homes Entities in the Agreement of Sale and Limited Warranty Program, as a material inducement for purchasing the Home.

122.    Bonenberger and W.B. Homes Entities materially breached the express warranty extended to the Plaintiffs in the Agreement of Sale and the Limited Warranty Program by failing to build the Home in strict compliance with the applicable building codes and industry standards, failing to build the Home in a habitable and good workmanlike manner, failing to properly supervise construction of the Development, and failing to inspect the Home using trained personnel prior to delivery.

20

123.   To the extent that the Plaintiffs' Limited Warranty was entered into by and between the Plaintiffs and W.B. Homes, and not directly with Bonenberger, Penn Gwyn, and Thornby Development, these parties are properly named as Defendants in connection with the cause of action in this Count, and should be held jointly and severally liable with W.B. Homes, because all of these Defendants were "alter egos" or mere instrumentalities of one another, and/or acted as a common business enterprise and/or single entity in all aspects of their business, and the corporate and business structure of Bonenberger, Penn Gwyn, Thornby, and W. B. Homes are intertwined in such a way that they share common ownership and/or commons owners, principals and/or officers and directors, have a relationship as parent and subsidiary and/or affiliates, such that and that piercing of their respective corporate veils is appropriate to hold them jointly and severally liable to the Plaintiffs.

124.   As a direct and proximate result of Bonenberger and W.B. Homes Entities' material breaches of the Agreement of Sale, the Plaintiffs have incurred, and will continue to incur, substantial damages and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Homes, and other costs and damages.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn, and Thornby for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as the Court may deem proper and necessary.

21

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF HABITABILITY
## PLAINTIFFS
### v.
## BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY

125.    Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

126.    The various components comprising the exterior envelope of the Plaintiffs' Home, consisting, *inter alia*, of framing, sheathing, weather barrier, windows, doors and other fenestrations, flashing, stucco, manufactured stone, and field stone, were designed and installed by Bonenberger and W.B. Homes Entities and/or its agents, with the intent that they serve as protection to the occupants of the Plaintiffs' Home, including the Plaintiffs, against the elements of weather, including heat, cold, wind, and precipitation.

127.    However, as set forth above, the various elements of the exterior envelope of the Plaintiffs' Home were defectively constructed and improperly installed.

128.    Bonenberger and W.B. Homes Entities impliedly warranted that the Plaintiffs' Home, which Bonenberger and W.B. Homes Entities marketed, constructed, supervised construction, and sold, would be constructed in a reasonable workmanlike manner, free of construction defects and suitable for habitation.

129.    Bonenberger and W.B. Homes Entities knew, or should have known, that the Plaintiffs would rely upon this implied warranty.

The Plaintiffs did in fact rely upon this implied warranty and their reliance was reasonable.

22

130.    Bonenberger and W.B. Homes Entities' defective construction directly and proximately caused numerous construction defects to the Plaintiffs' Home.

131.    The damage to the Plaintiffs' Home, which was caused by the Builder Defendants' acts and/or omissions, render the Plaintiffs' Home uninhabitable.

132.    Bonenberger and W.B. Homes Entities breached the implied warranty of habitability by failing to properly construct the Plaintiffs' Home in a reasonable workmanlike manner and free of defects, thereby rendering the Plaintiffs' Home uninhabitable.

133.    Each of the WB Entities are properly named as Defendants in connection with the cause of action in this Count, and should be held jointly and severally liable with W.B. Homes, because all of these Defendants were "alter egos" or mere instrumentalities of one another, and/or acted as a common business enterprise and/or single entity in all aspects of their business, and the corporate and business structure of Bonenberger, Penn Gwyn, Thornby, and W. B. Homes are intertwined in such a way that they share common ownership and/or commons owners, principals and/or officers and directors, have a relationship as parent and subsidiary and/or affiliates, such that and that piercing of their respective corporate veils is appropriate to hold them jointly and severally liable to the Plaintiffs.

134.    As a direct and proximate result of Bonenberger and W.B. Homes Entities material breaches of the Agreement of Sale, the Plaintiffs have incurred, and will continue to incur, substantial damages and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Home, as well as other costs and damages.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn,

23

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

5/26/2020, 11:59 AM

and Thornby for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as the Court may deem proper and necessary.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF WORKMANLIKE CONSTRUCTION
## PLAINTIFFS
## v.
## BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY

135.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth at length herein.

136.   Bonenberger and W.B. Homes Entities, who marketed, developed, constructed, and sold the Home, implied warranted, as a matter of law, that the Home would be built in a reasonably workmanlike manner and free of construction defects.

137.   Bonenberger, personally and individually, specifically and directly promised and assured the Plaintiffs that their Home would be constructed with high quality materials, built with a high level of custom workmanship, built in compliance with all building codes.

138.   Bonenberger, personally and individually, held himself out in advertising and promotional materials as the designer and builder of the Home.

139.   The Plaintiffs reasonably and justifiably relied upon this implied warranty.

140.   Bonenberger and W.B. Homes Entities knew that the Plaintiffs would reasonably and justifiably rely upon this implied warranty.

141.   The Plaintiffs' Home, as built and sold by Bonenberger and W.B. Homes Entities, exhibit construction defects and was not built to the applicable building codes, industry standards

24

nor the contemporary community standards, and does not meet the definition of reasonable workmanship under Pennsylvania law.

142.    As a result, Bonenberger and W.B. Homes Entities have materially breached the implied warranty of workmanlike construction.

143.    Bonenberger, Penn Gwyn, and Thornby are properly named defendants in this action in connection with the cause of action, and should be held jointly and severally liable with W.B. Homes, because all of these Defendants were "alter egos" or mere instrumentalities of one another, and/or acted as a common business enterprise and/or single entity in all aspects of their business, and the corporate and business structure of Bonenberger, Penn Gwyn, Thornby, and W. B. Homes are intertwined in such a way that they share common ownership and/or commons owners, principals and/or officers and directors, have a relationship as parent and subsidiary and/or affiliates, such that and that piercing of their respective corporate veils is appropriate to hold them jointly and severally liable to the Plaintiffs.

144.    As a direct and proximate result of the Bonenberger and W.B. Homes Entities material breaches of the implied warranty, the Plaintiffs have incurred, and will continue to incur, substantial damages and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Homes, as well as other costs and damages.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn, and Thornby for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as the Court may deem proper and necessary.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the United Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT V
## GENERAL NEGLIGENCE
## PLAINTIFFS
### v.
## BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY

145.    Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

146.    The various components comprising the exterior envelope of the Plaintiffs' Home, consisting, *inter alia*, of framing, sheathing, weather barrier, windows, doors and other fenestrations, flashing, stucco, were designed and/or installed by Bonenberger and W.B. Homes Entities, and/or their subcontractors, with the intent that the exterior envelope of the Home would serve as protection to the occupants of the Home, including the Plaintiffs, against the elements of weather, including heat, cold, wind, and precipitation.

However, as set forth above, the various elements of the exterior envelope of the Plaintiffs' Home were negligently designed and/or negligently installed.

147.    Bonenberger and W.B. Homes Entities had duties to the Plaintiffs under common law, and statutorily through the Applicable Building Code.

148.    Bonenberger and W.B. Homes Entities owed a duty to the Plaintiffs to construct, supervise construction, and sell a Home that were constructed in a reasonable workmanlike manner, free of construction defects and suitable for habitation.

149.    Bonenberger and W.B. Homes Entities further owed a duty to warn the Plaintiffs of any latent defects in the Home at all times, including during the design and construction of the Plaintiffs' Home, prior to the sale of the Home, at closing and settlement, and at all times since, including the times when Bonenberger and W.B. Homes Entities discovered the defects in the building envelope and stucco systems in other homes located in the Development and/or

26

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

remediated the Plaintiffs' neighbors' homes, which had the same architect/designers, construction managers, site managers, subcontractors, oversight and supervision, suppliers, and manufacturers.

150.    Bonenberger, personally and individually, specifically and directly promised and assured the Plaintiffs that their Home would be constructed properly and that repairs would be performed promptly and adequately.

151.    Upon information and belief, Bonenberger and W.B. Homes Entities subcontracted various aspects of the construction of the Home to subcontractors.

152.    The Bonenberger and W.B. Homes Entities subcontractors owed a duty to the Plaintiffs to construct the Homes in a reasonable workmanlike manner, free of construction defects and suitable for habitation.

153.    Bonenberger and W.B. Homes Entities and all subcontractors were responsible for installing, and did install, aspects or parts of the exterior envelope of the Home.

154.    As a direct and proximate result of Bonenberger and W.B. Homes Entities' and/or any subcontractors' defective, careless, and negligent performance in constructing the Plaintiffs' Home, the Plaintiffs have experienced attendant property damage and damage to non-defectively constructed components of the Home.

155.    The damages sustained by Plaintiffs were caused by the negligent and careless acts and/or omissions of the Bonenberger and W.B. Homes Entities and/or subcontractors, in installing and performing their work in a defective manner as set forth above.

156.    As a direct and proximate result of  Bonenberger and W.B. Homes Entities' negligence and unlawful construction and sale of the Home, the Plaintiffs  have sustained or will continue to sustain damages other than damage to the originally constructed Home, which include, but are not limited to: (i) two patios; (ii) two sets of stone steps; (iii) landscaping, landscape

lighting, and driveway ; (iv) replacement of window **tinting** on all windows that will be replaced; (v) repainting walls that have been painted after closing; (vi) damage to the finished basement; (vii) the air quality within the Home that is contaminated with mold and/or will be contaminated with mold when the exterior envelope is repaired; and (viii) removal and replacement of the alarm system.

157. As a direct and proximate result of the Bonenberger and W.B. Homes Entities negligence the Plaintiffs have incurred, and will continue to incur, substantial **damage**s and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Home, as well as other costs and damages.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby **demand** judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn, and Thornby Development for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, **diminut**ion in market value of the Home, and for such relief as the Court may deem proper and necessary.

## COUNT VI
### NEGLIGENT MISREPRESENTATION
### PLAINTIFFS
### v.
### BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY

158. Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

159. The Bonenberger and W.B. Homes Entities and/or their representatives made material misstatements and misrepresentations to the Plaintiffs about the quality features and construction of W.B. Homes' homes, and specifically the Plaintiffs' Home.

160. Bonenberger and W.B. Homes Entities made these negligent misrepresentations in writing, including in advertising and marketing materials and on their website.

28

161.    Bonenberger and W.B. Homes Entities, and/or their representatives, also made these negligent misrepresentations orally during face-to-face meetings with the Plaintiffs.

162.    Bonenberger and W.B. Homes' representatives, made material misstatements and misrepresentations to the Plaintiffs about the quality features and construction of W.B. Homes, and specifically the Plaintiffs' Home.

163.    Bonenberger made these negligent representations orally during face-to-face meetings with the Plaintiffs.

164.    As such, Bonenberger is personally liable to the Plaintiffs for negligent misrepresentations.

165.    Bonenberger and W.B. Homes Entities are joint and severally liable for negligent misrepresentations as they were "alter egos" of one another and/or acted as a common business enterprise and/or single entity and that in order to avoid injustice, it is necessary to pierce the respective corporate veils of Bonenberger and W.B. Homes Entities and/or hold them jointly and severally liable for their above stated individual and collective actions in connection with the Plaintiffs' Home and/or the Development.

166.    Bonenberger and W.B. Homes Entities made material misrepresentations of fact under circumstances in which they knew or should have known that their material statements and representations were inaccurate, incorrect, untrue, and/or false.

167.    Bonenberger and W.B. Homes Entities made material misrepresentations of fact under circumstances in which they failed to make a reasonable investigation of the truth or veracity of their statements and representations.

168.    Bonenberger and W.B. Homes Entities made material misrepresentations of fact with the intent to induce the Plaintiffs to the buy the Home.

29

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

169.   The Plaintiffs justifiably relied upon Bonenberger and W.B. Homes Entities' misrepresentations when entering the Agreement of Sale and closing on the Home.

170.   The Plaintiffs materially and reasonably relied upon Bonenberger and W.B. Homes Entities' misrepresentations when they (a) received, reviewed, and relied upon the written **marketing** and advertising materials for the Homes, and (b) relied on communications and misrepresentations made by an agent or representative of the Bonenberger and W.B. Homes Entities when the Plaintiffs toured model homes.

171.   As a direct and proximate result of Bonenberger and W.B. Homes Entities' negligent misrepresentations and unlawful construction and sale of the Home, the Plaintiffs have sustained or will continue to sustain damages other than damage to the originally constructed Home, which include, but are not limited to: (i) two patios; (ii) two sets of stone steps; (iii) landscaping, landscape **lighting,** and driveway; (iv) replacement of window tinting on all windows that will be replaced; (v) repainting walls that have been painted after closing; (vi) da**mage** to the finished basement; (vii) the air quality within the Home that is con**taminat**ed with mold and/or will be contaminated with mold when the exterior envelope is repaired; and (viii) removal and replacement of the alarm system.

172.   As a direct and proximate result of Bonenberger and W.B. Homes Entities negligence, the Plaintiffs have incurred, and will continue to incur, substantial **damages** and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Home, as well as others costs and **damages**.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn, and Thornby Development for all compensatory, consequential and incidental

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

damages, in an amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as the Court may deem proper and necessary.

## COUNT VII
## NEGLIGENCE *PER SE*
## PLAINTIFFS
### v.
## BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY

173.   Plaintiffs incorporate the preceding paragraph as if set forth at length herein.

174.   Bonenberger and W.B. Homes Entities had statutory duties to the Plaintiffs to adhere to and fully comply with the Applicable Building Code and local ordinance.

175.   By applying for Certificates of Occupancy on the Homes, the Bonenberger and W.B. Homes Entities owed a statutory duty of care to the Plaintiffs, as occupants of the Home

176.   Bonenberger and W.B. Homes Entities owed a statutory duty to the Plaintiffs to construct the Home in accordance with the Applicable Building Code and local ordinance.

177.   Bonenberger, personally and individually, specifically and directly promised and assured the Plaintiffs that their Home would be constructed properly and that repairs would be performed promptly and adequately.

178.   It was specifically foreseeable by Bonenberger and W.B. Homes Entities that the Plaintiffs would justifiably rely upon Bonenberger and W.B. Homes Entities' representations and statutory obligations to comply with the Applicable Building Code and local ordinance.

31

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

179.   The Plaintiffs justifiably relied upon Bonenberger and W.B. Homes Entities'
representations that the Home was designed and constructed in compliance with the Applicable
Building Code and local ordinance.

180.   Bonenberger and W.B. Homes Entities had a statutory duty of care to the Plaintiffs
as the developer, marketer, builder and seller of the Home.

181.   Bonenberger and W.B. Homes Entities owed a statutory duty pursuant to the
Applicable Building Code and local **ordinance** to construct the Home in compliance with minimum
regulations that are essential to ensure that the structures are safe, sanitary and fit for occupation
and use.

182.   Bonenberger and W.B. Homes Entities had a statutory duty of care to the Plaintiffs
as the entity that constructed and warranted the Home and was obligated to properly construct the
Home in compliance with the Applicable Building Code and local ordinance.

183.   Bonenberger and W.B. Homes Entities owed a duty to the Plaintiffs to construct,
supervise construction, and sell Home that were constructed in a reasonable workmanlike matter,
free of construction defects and suitable for habitation.

184.   The Plaintiffs, as foreseeable owners, occupants, and inhabitants of the Home is a
part of the class contemplated to be protected by the Applicable Building Code.

185.   Bonenberger and W.B. Homes Entities breached their statutory duty by negligently
(a) constructing the Home by using subpar materials, inadequate methods, inexperienced and
unskilled contractors and subcontractors, (b) failing to construct the Home within minimum
regulations, Applicable Building Code, and local ordinances that are essential to ensure that the
structures are safe, sanitary and fit for occupation and use, and/or (c) selling the negligently
constructed Home.

32

Firefox

https://courtsapp.nedctopp.org/psfv/detail/Case/201155661

186.   As found by Lunny, the Home exhibits material construction defects. *See* Exhibit K.

187.   As averred in Section V, averments that are fully incorporated herein, Bonenberger and W.B. Homes Entities failed to construct the Home pursuant to the Applicable Building Code and local ordinance.

188.   As a direct and proximate result of these (and other) defective construction practices and violations of the Applicable Building Code and local ordinance, the Plaintiffs have sustained damages to their Home and other property as averred above. As such, under Pennsylvania law, Bonenberger and W.B. Homes Entities have committed negligence *per se* by violating the specific provisions of the Applicable Building Code governing their conduct and breaching their duty to the Plaintiffs, who are part of the protected class of persons specifically contemplated by the Applicable Building Code, and directly and proximately causing Plaintiffs' injuries and property damages.

189.   As a direct and proximate result of Bonenberger and W.B. Homes Entities' negligence and unlawful construction and sale of the Home, the Plaintiffs have sustained or will continue to sustain damages other than damage to the originally constructed Home, which include, but are not limited to: (i) two patios; (ii) two sets of stone steps; (iii) landscaping, landscape lighting, and driveway ; (iv) replacement of window tinting on all windows that will be replaced; (v) repainting walls that have been painted after closing; (vi) damage to the finished basement; (vii) the air quality within the Home that is contaminated with mold and/or will be contaminated with mold when the exterior envelope is repaired; and (viii) removal and replacement of the alarm system.

33

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

190.   As a direct and proximate result of the Bonenberger and W.B. Homes Entities negligence the Plaintiffs have incurred, and will **continue** to incur, substantial damages and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Home, as well as other costs and **damages**.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn, and Thornby Development for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Homes, and for such relief as the Court may deem proper and necessary.

**COUNT VIII**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW (73 P.S. § 201-1 *et. seq.*)**
**PLAINTIFFS**
**v.**
**BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY**

191.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

192.   The Pennsylvania Unfair Trade and Consumer Protection Law, codified at 73 Pa.C.S.A. §§ 201-1 *et seq.* ("UTPCPL") provides for a private right of action for anyone who suffers any ascertainable loss of money or property as a result of any method, act or practice deemed unlawful by the UTPCPL.

193.   The UTPCPL provides that unfair methods, acts or practices include:

   a.   Causing likelihood of confusion or of misunderstanding as to the source, sponsorship; approval or certification of goods or services (*see* 73 Pa.C.S.A. § 201-2(4)(ii));

34

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

b.  Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by another (*see* 73 Pa.C.S.A. § 201-2(4)(iii));

c.  Representing that goods or services have characteristics, uses, benefits or qualities that they do not have (see 73 Pa.C.S.A. § 201-2(4)(v));

d.  Representing that goods or services are of a particular standard, quality or grade, if they are of another (see 73 Pa.C.S.A. § 201-2(4)(vii)); and

e.  **Engaging** in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding (see 73 Pa.C.S.A. § 201-2(4)(xxi)).

194.  Bonenberger and W.B. Homes Entities have violated the UTPCPL, in that they have:

a.  Caused confusion and/or misunderstanding as to the source corporate entity responsible for and/or obligated pursuant to the Agreement of Sale and Warranties;

b.  Represented that the Plaintiffs' Home has characteristics, uses, and/or benefits that it does not have;

c.  Represented that the Builders' goods or services are of a particular standard, quality or grade when they are of another; and

d.  **Engaged** in fraudulent and/or deceptive conduct creating the likelihood of confusion or misunderstanding.

195.  Bonenberger and W.B. Homes Entities violated 73 Pa.C.S.A. § 201-2(4)(v) by making misrepresentations in marketing and advertising materials, on their website, in their

warranty, and in other documents provided to, and, upon information and belief, relied upon by, the Plaintiffs that Bonenberger and W.B. Homes Entities' homes and services have characteristics, uses, benefits, and qualities, when the Builders' were (a) reckless and knew or should have known that the representations were untrue, (b) acted in conscious ignorance of the truth or falsity of its misrepresentations, and/or (c) suppressed the truth of the misrepresentations.  (*See* Sections III, IV, and V, including exhibits referenced therein.).

196.     Bonenberger and W.B. Homes Entities violated 73 Pa.C.S.A. § 201-2(4)(vii) by making misrepresentations in **marketing** and advertising materials, their warranty, and on their website that the homes (including by implication the Home) and/or construction services were of a particular standard, quality or grade, when in fact the homes and construction services provided, marketed and/or sold by Bonenberger and W.B. Homes Entities were of an inferior and defective standard, quality or grade. (*See* Sections III, IV, and V, including exhibits referenced therein.)

197.     The Plaintiffs justifiably relied upon the Bonenberger and W.B. Homes Entities' misrepresentations in **marketing** and advertising materials and in other documents and representations made to or provided to the Plaintiffs that the Homes were free from material defects and designed and constructed in accordance with Applicable Building Code and worth the purchase price.

198.     The Plaintiffs justifiably and reasonably relied upon Bonenberger and W.B. Homes Entities' (mis)representations in its marketing literature about the **character**istics, uses, benefits, standard, quality, and grade of W.B. Homes and services.

199.     In justifiable and reasonable reliance on the Bonenberger and W.B. Homes Entities' misrepresentations about the characteristics, uses, benefits, standards, quality and grade of Bonenberger and W.B. Homes Entities' homes, including specifically their Home, contained in

36

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

marketing materials, Plaintiffs expected, by way of example only, a high-quality, code-compliant home that they could use for a lifetime.

200.    Bonenberger and W.B. Homes Entities violated 73 Pa.C.S.A. § 201-2(4)(xxi) by engaging in fraudulent or deceptive conduct which creates a likelihood of confusion and/or misunderstanding.

201.    Specifically, Bonenberger and W.B. Homes Entities are liable for the following fraudulent and/or deceptive conduct:

a. Engaging in fraudulent and/or deceptive conduct which created the likelihood of confusion and misunderstanding as to the relationships between W.B. Homes, Penn Gwyn, and Thornby and their actual roles in the marketing, sale, construction, and warrantying of the Home;

b. Bonenberger and W.B. Homes Entities are liable for fraudulently or deceptively selling the Home, which was not sold in a condition that satisfied Applicable Building Code, local ordinances, industry standards, and acceptable building practices and standards;

c. Bonenberger and W.B. Homes Entities are liable for fraudulently or deceptively constructing the Home when they knew or should have known, and/or suppressed the truth that, it failed to properly construct the Home in compliance with the Applicable Building Code, local ordinances, industry standards, and acceptable building practices and standards;

d. Bonenberger and W.B. Homes Entities are liable for fraudulent and/or deceptive conduct by failing to advise, warn or otherwise notify, and/or suppressing the truth that the Home was incurring, or was expected to incur, water infiltration

damage, when Bonenberger and W.B. Homes Entities knew or should have known that their construction processes, violations of the Applicable Building Code, materials and/or methods were the cause of said damage to the Home; and

e.  Bonenberger and W.B. Homes Entities are liable for fraudulent and/or deceptive conduct by **denying** the Plaintiffs' claims and refusing to repair the Home when Bonenberger and W.B. Homes Entities knew or should have known, and had a duty to warn the Plaintiffs years before the Plaintiffs submitted a claim, that the Home was incurring, or was expected to incur, water infiltration damage because of the Builders' acts and/or omissions, failures to comply with the Applicable Building Codes, local ordinance, and industry standards, failures to properly and adequately supervise and oversee the construction of the Home, and failures to properly inspect the construction of the Homes to ensure that it complied with the design drawings for the Home and the Applicable Building Code; and

f.  Bonenberger and W.B. Homes Entities are liable for **marketing,** warrantying, and any other proffered misrepresentations, which caused the Plaintiffs to believe that the Home was of the highest quality on the market, when, in actuality, the Bonenberger and W.B. Homes Entities knew or should have known that the Home was not even built to the minimum standard required by the Applicable Building Code.

202.  The Plaintiffs justifiably relied upon their reasonable belief that Bonenberger and W.B. Homes Entities acted in good faith and did not engage in deceptive and/or fraudulent conduct with respect to the Home.

38

203. As a direct and proximate result of Bonenberger and W.B. Homes Entities' unlawful acts and practices, the Plaintiffs have sustained damages in excess of $150,000.00, the cost to repair the exterior and interior of their Home, related costs and damages, engineering and consulting fees, and legal costs.

204. In addition, as a direct and proximate result of the Builders' unlawful acts and practices, the Plaintiffs have sustained, and will continue to sustain, **damages** in the form of loss of use and enjoyment of their Homes.

205. Plaintiffs, through their counsel, asked Bonenberger and W.B. Homes Entities to remediate their Home. *See* Exhibit G.

206. In spite of the construction defects and Bonenberger and W.B. Homes Entities' unfair trade practices, Bonenberger and W.B. Homes Entities have denied Plaintiffs' demands and refused to make adequate and complete repairs to the Home.

207. As a direct and proximate result of the Builders' violations of the UTPCPL, unfair and deceptive business practices, and unlawful design, construction, and sale of the Plaintiffs' Home, the Plaintiffs have sustained or will continue to sustain damages other than damage to the originally constructed Home, which include, but are not limited to: (i) two patios; (ii) two sets of stone steps; (iii) landscaping, landscape lighting, and driveway ; (iv) replacement of window tinting on all windows that will be replaced; (v) repainting walls that have been painted after closing; (vi) damage to the finished basement; (vii) the air quality within the Home that is **contaminated** with mold and/or will be contaminated with mold when the exterior envelope is repaired; and (viii) removal and replacement of the alarm system.

208. As a direct and proximate Bonenberger and W.B. Homes Entities' violations of the UTPCPL, unfair and deceptive business practices, and unlawful design, construction, and sale of

39

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the Plaintiffs' Home, the Plaintiffs have incurred, and will continue to incur, substantial damages and costs, which include, but are not limited to, costs of repair and remediation and related costs and Plaintiff incorporates the preceding paragraphs as if set forth at length herein.

209.   As a direct and proximate result of the Bonenberger and W.B. Homes Entities violation of the UTPCPL, the Plaintiffs have incurred, and will continue to incur, substantial damages and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Home, as well as engineering fees, consultant fees and legal fees.

**WHEREFORE,** Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby **demand** judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn, and Thornby Development for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, statutory damages, treble damages, costs and fees, and for such relief as the Court may deem proper and necessary.

**COUNT IX**
**BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)**
**PLAINTIFFS**
**v.**
**PENN GWYN AND THORNBY**

210.   Plaintiffs hereby incorporate the preceding paragraphs as if set forth at length herein.

211.   Upon information and belief, Penn Gwyn, Thornby, W.B. Homes, and/or Bonenberger entered into a contract for the sale of the land ("Penn Gwyn Land Contract") that Penn Gwyn conveyed to the Plaintiffs by deed. Pursuant to Pa.R.C.P. 1019(i), the Plaintiffs were not parties to the Penn Gwyn Land Contract. Plaintiffs expect to obtain true and correct copies of the same during the discovery phase of this litigation.

40

212.   Upon information and belief, the Penn Gwyn Land Contract required that Penn Gwyn supply the land and that W.B. Homes build the Plaintiffs' Home on the land as evident by the $902,530.75 that the Plaintiffs paid as consideration for the deed. *See* Exhibit J.

213.   Upon information and belief, Penn Gwyn, Thornby, and W. B. Homes are essentially the same entity and they knew and intended to build a home to be marketed and sold to the Plaintiffs free from defects and compliant with all local building codes.

214.   At the time the Penn Gwyn Land Contact was entered into, it was Penn Gwyn, Thornby, W.B. Homes, and/or Bonenberger's intent that the Plaintiffs benefit from the contractual obligations of each party to the Penn Gwyn Land Contract.

215.   Penn Gwyn and Thornby knew or should have known that Plaintiffs would rely on and benefit from their agreement with Bonenberger and/or W.B. Homes to build the Home correctly and without defects.

216.   Thus, Penn Gwyn and Thornby knew, could not have been unaware of, and intended that the Plaintiffs were intended third-party beneficiaries of the Penn Gwyn Land Contract.

217.   Penn Gwyn and Thornby breached their duties to the Plaintiffs by delivering the land/home when they knew, or should have known, that the Home was not built in complaint with the local building codes.

218.   Plaintiffs intend to support this allegation with facts developed during the course of discovery.

219.   As a result of Penn Gwyn and Thornby failures to deliver and/or construct the Home free from defects and in accordance with the applicable local building codes, the Plaintiffs have been damaged in a total amount in excess of $150,000.00, representing the estimated cost to

41

replace and repair the damaged exterior and interior of the Plaintiffs' Home, remedy defective conditions, and **prevent** further damage and unsafe conditions.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgment in their favor and against Defendants, Penn Gwyn and Thornby, for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as the Court may deem proper and necessary.

**COUNT X**
**CORPORATE VEIL**
**PLAINTIFFS**
**v.**
**BONENBERGER, W.B. HOMES, PENN GWYN, AND THORNBY**

220.    Upon information and belief, W.B. Homes, is the associate and/or parent company of each of the other named W.B. Homes Entities, which includes Thornby. *See* Exhibit "A."

221.    Upon information and belief, Penn Gwyn and Thornby acted in concert with W.B. Homes to acquire and develop land, construct the Development and homes, and sell homes to buyers, including the Plaintiffs.

222.    Bonenberger is a principal of W.B. Homes and Thornby.

223.    Thornby is the general partner of Penn Gwyn.

224.    Upon information and belief, W.B. Homes is the limited partner of Penn Gwyn.

225.    Upon information and belief, Bonenberger is the owner, primary shareholder, and/or officer of each W.B. Homes Entity.

226.    It is believed and therefore averred, at all times relevant hereto, that with respect to the Home, W.B. Homes and the other W.B. Homes Entities acted together for the purpose of purchasing land, **obtaining** zoning approvals, installing improvements and infrastructure, **marketing,** advertising, developing, constructing, obtaining township approval of the construction,

42

selling, and delivering Plaintiffs' Homes, and all other homes in the Development, such that the W.B. Entities were "alter egos" and/or mere instrumentalities of one another and/or acted as a common business enterprise and/or single entity and that in order to avoid injustice, it is necessary to pierce the respective corporate veils of each company and/or hold each company jointly and severally liable for their above stated individual and collective actions in connection with the Development.

227.    The W.B. Homes' website and marketing materials contain representations by the W.B. Homes Entities that "W.B. Homes" is the designer, developer, builder, and seller of "luxury homes" and does not contain obvious and easily attainable or apparent information and explanation of the rules and identities of any of the other W.B. Homes Entities.

228.    The W.B. Homes Entities all participated in and benefited from the development, construction, marketing, and sale of Plaintiffs' Home.

229.    Bonenberger, as an agent and principal of the W.B. Homes Entities, participated in, controlled, and benefited from the construction, sale, and marketing of Plaintiffs' Home.

230.    Upon information and belief, the owners, shareholders, officers, and other agents or representatives of each of the W.B. Homes Entities, operate each of the other W.B. Homes Entities in substantially the same role, title, and/or office, with no obvious, easily attainable, or apparent distinction between the identity of which of the W.B. Homes Entity's behalf the agent is operating under.

231.    Bonenberger and the W.B. Homes Entities disregarded corporate form and operated as "alter egos" and/or as mere instrumentalities of one another to defraud and mislead the Plaintiffs, as set forth above.

43

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

232.   As the general partner of Penn Gwyn, Thornby is liable for its actions on behalf of the Penn Gwyn.

233.   The W.B. Homes Entities were corporate vehicles used by Bonenberger, to commit the violations set forth herein and to defraud and mislead the Plaintiffs.

234.   W.B. Homes is liable to the Plaintiffs in its own capacity as the entity holding itself out to the public, and to Plaintiffs, as the designer, builder, and seller of the Home and the Development.

235.   Accordingly, it is just and proper to pierce the corporate veil of each of the W.B. Homes Entities arising from their unfair trade practices and negligent misrepresentations and to hold the other W.B. Homes Entities and Bonenberger liable.

236.   As a direct and proximate result of the Defendants' negligence and unlawful design, construction, and sale of the Home, the Plaintiffs have incurred, continue to incur and/or will incur damage to other property. *See* Sections C-E, above.

237.   As a direct and proximate result of the Defendants' negligence and unlawful design and construction of the Home, the Plaintiffs have incurred, and will continue to incur, substantial damages and costs, which include, but are not limited to, costs of repair and remediation and related costs and damages in excess of $150,000.00, diminution in value of the Home, as well as engineering fees, consultant fees and legal fees.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn, and Thornby Development for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, statutory damages, costs, and for such relief as the Court may deem proper and necessary.

44

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

**COUNT XI**
**SUCCESSOR LIABILITY**

**PLAINTIFFS v. W.B. HOMES DEVELOPMENT CO., INC.**

238.    Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

239.    Upon information and belief, Defendant W.B. Development was incorporated on or about July 12, 2018.

240.    Upon information and belief, in or around the same time when W.B. Development was incorporated, W.B. Homes ceased or is in the process of ending some or all of its business operations.

241.    Upon information and belief, the following characteristics apply to the transaction between W.B. Homes and W.B. Development:

     (a)    W.B. Homes and W.B. Development utilize the same business address and facilities;

     (b)    W.B. Homes and W.B. Development share the same corporate officers and employees;

     (c)    W.B. Homes and W.B. Development are/were involved in substantially the same business;

     (d)    W.B. Development assumed and/or acquired some or all of W.B. Homes' assets; and

     (e)    W.B. Development continued the business of W.B. Homes uninterrupted and assumed the outstanding liabilities W.B. Homes necessary to continue business.

242.    Upon information and belief, at the time when W.B. Development acquired W.B. Homes, W.B. Homes and W.B. Development and their owners and agents, including Bonenberger, were aware of concerns, reports, and potential reports of moisture intrusion and construction

45

defects with regard to homes in other W.B Homes' developments and the possible exposure and/or legal liabilities arising from said defects.

243.    Upon information and belief, at the time when W.B. Development acquired W.B. Homes, W.B. Homes had recently received notice of Plaintiffs' claims and the threat of litigation.

244.    For the foregoing reasons, W.B. Development is liable to Plaintiffs under one or more theories of successor liability, including:

    (a)    *De facto* merger;

    (b)    Continuation of the prior **enterprise**; and

    (c)    Fraudulent transaction to escape liability.

**WHEREFORE,** Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgement in their favor and against Defendants William Bonenberger, W.B. Homes, Penn Gwyn, and Thornby Development for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, statutory damages, costs, and for such relief as the Court may deem proper and necessary.

**COUNT XII**
**BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)**
**PLAINTIFFS**
**v.**
**THE OMNIA GROUP, INC., and**
**OMNIA GROUP ARCHITECTS LLC**

245.    Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

246.    Upon information and belief, Bonenberger and/or W.B. Homes Entities and Omnia entered into a contract (Omnia Design Contract), whereby Omnia were to prepare and supply design plans and specifications for some or all of the Homes in the Development, including the Plaintiffs' Home. Plaintiffs are not in possession of the Omnia Design Contract and will seek same in discovery.

46

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

247.   Upon information and belief, the Omnia Design Contract required that Omnia supply design plans and specifications for the construction of some or all of the Homes built in the Development, including the Plaintiffs' Home.

248.   At the time the Omnia Design Contract was entered into, it was the Bonenberger and/or W.B. Homes Entities and Omnia's intent that the purchasers of the homes in the Development benefit from the design plans and specifications supplied in accordance with the Omnia Design Contract.

249.   As the seller and builder of homes in the Development, including the Plaintiffs' Home, Bonenberger and W.B. Homes Entities knew, and intended for, the design plans and specifications supplied pursuant to the Omnia Design Contract to benefit all purchasers of Homes in the Development, including but not limited to the Plaintiffs' Home and the Plaintiffs.

250.   Similarly, Omnia knew and intended that purchasers of the homes in the Development benefit from the design of the Homes, which were to be built by Bonenberger and W.B. Homes Entities in accordance with the design plans and specifications supplied by Omnia.

251.   After all, Omnia knew, or should have known, that the design plans and specifications were being used to build numerous homes, including the Plaintiffs' Home, that were to be marketed, sold, and lived-in by homeowners, including the Plaintiffs.

252.   Omnia knew, or should have known, that homeowners of the homes being built in the Development, including the Plaintiffs, would rely upon Omnia's contractual obligations to Bonenberger and W.B. Homes Entities to design the homes, including the Plaintiffs' Home, correctly and within the professional standards governing the practice of architecture in the Commonwealth of Pennsylvania.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

253.   Thus, Omnia knew, could not have been unaware of, and intended that the Plaintiffs were intended third-party beneficiaries of the Omnia Design Contract between Bonenberger and W.B. Homes Entities and Omnia.

254.   Omnia breached the Omnia Design Contract when they failed to perform all of their design work within the professional standard(s) governing the practice of architecture in the Commonwealth of Pennsylvania.

255.   Omnia breached the Omnia Design Contract because their design plans and specifications were defective and deficient as they related to the stucco systems, flashing, and window installation work performed on the Plaintiffs' Home, and did not **adequate**ly or properly design the Plaintiffs' Home to adequately protect from water **infiltrat**ion into the exterior envelopes of the Home.

256.   Plaintiffs intend to support this allegation with facts developed during the course of discovery, and expert reports to be produced during the course of the litigation.

257.   As a result of Omnia's false, defective, and deficient information contained in the design plans and specifications, and Omnia's failure to exercise reasonable care, the Plaintiffs have been damaged in a total amount in excess of $150,000.00, representing the estimated cost to replace and repair the damaged exterior and interior of the Plaintiffs' Home, remedy defective conditions, and prevent further damage and unsafe conditions.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby demand judgment in their favor and against Defendants The Omnia Group, Inc., and Omnia Group Architects LLC, for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as the Court may deem proper and necessary.

48

**COUNT XIII**
**PROFESSIONAL NEGLIGENCE (THIRD PARTY BENEFICIARY)**
**PLAINTIFFS**
**v.**
**THE OMNIA GROUP, INC., and**
**OMNIA GROUP ARCHITECTS LLC**

258.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

259.   Upon information and belief, Bonenberger and/or W.B. Homes Entities entered into the Omnia Design Contract with Omnia as the architects and/or designers, to prepare and supply design plans and specifications for the Development, including the Plaintiffs' Home.

260.   Upon information and belief, the Omnia Design Contract created a professional relationship between Bonenberger and W.B. Homes Entities and Omnia.

261.   At the time the Omnia Design Contract was entered into, it was Bonenberger and W.B. Homes Entities and Omnia's intentions that the purchasers of the homes in the Development, including, but not limited to, the Plaintiffs, benefit from the design plans and specifications supplied in accordance with the Omnia Design Contract.

262.   As the seller and builder of homes in the Development, including the Plaintiffs' Home, Bonenberger and W.B. Homes Entities knew, and intended for, the design plans and specifications supplied pursuant to the Omnia Design Contract to benefit all purchasers of Homes in the Development, including, but not limited to, the Plaintiffs' Home.

263.   Similarly, Omnia knew and intended that purchasers of the Homes in the Development benefit from the construction of the homes, which were to be built by Bonenberger and W.B. Homes Entities in accordance with the design plans and specifications supplied by Omnia.

49

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

264. After all, Omnia knew, or should have known, that their design plans and specifications were being used to build numerous homes, including the Plaintiffs' Home, that were to be marketed, sold, and lived-in by homeowners, including the Plaintiffs.

265. Omnia knew, or should have known, that homeowners of the Homes being built in the Development, including the Plaintiffs, would rely upon Omnia's contractual obligations to Bonenberger and W.B. Homes Entities to design the Home correctly and within the professional standards governing the practice of architecture in the Commonwealth of Pennsylvania.

266. Plaintiffs relied upon Omnia to satisfy its contractual obligations to Bonenberger and W.B. Homes Entities to design the Home correctly and within the professional standards governing the practice of architecture in the Commonwealth of Pennsylvania.

267. Omnia knew, could not have been unaware of, and intended the Plaintiffs to be intended third-party beneficiaries of the Omnia Design Contract between the Bonenberger and W.B. Homes Entities and Omnia.

268. The Plaintiffs are the intended third-party beneficiaries of the Omnia Design Contract between Bonenberger and W.B. Homes Entities and Omnia.

269. Omnia owed a duty to all purchasers of the Homes in the Development, including, but not limited to, the Plaintiffs, to adhere to the standards of professional conduct expected of architects in the Commonwealth of Pennsylvania.

270. Since Omnia held themselves out as an architect, Omnia's duties, as set forth in 49 Pa. ADC § 9.151(1)-(3), included the duty to "exercise due regard for the safety, life and health of the public or other individual who may be affected by the professional work for which [the Architects are] responsible."

50

271.   Omnia also had the duty to "perform their work and produce designs that comply with all relevant State and municipal building laws and regulations." *See* 49 Pa. ADC § 9.151(1)-(3).

272.   In contravention of the applicable standard of care, Omnia's design plans and specifications were defective and deficient, and did not comply with applicable laws and regulations, as the design plans and specifications related to the stucco systems, flashing, and window installation work performed on the Plaintiffs' Home, and did not adequately design the Home to protect from water infiltration into the exterior envelope of the Plaintiffs' Home.

273.   Plaintiffs intend to support this allegation with facts developed during the course of discovery, and expert reports to be produced during the course of the litigation.

274.   Thus, Omnia breached the standard of care required of professional architects in Pennsylvania.

275.   Further, Omnia breached the required standard of care when it held itself out as an architect in Pennsylvania.

276.   As a direct and proximate result of the Omnia's negligent misrepresentations and unlawful design of the Home, the Plaintiffs have suffered damages because:

a.   remediation of the damages to their Home, will cost the Plaintiffs in excess of $150,000.00;

b.   the value of the Home has diminished, and will continue to diminish;

c.   the Plaintiffs' abilities to sell their Home, for the same or similar value that they paid, has been and continues to be significantly limited; and

d.   the Plaintiffs have been, and will continue to be, denied the full use and enjoyment of their Home.

51

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

5/26/2020, 12:05 PM

Firefox    https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

277.    Plaintiffs have been damaged in an amount in excess of $150,000.00, representing the cost to replace and repair the damaged exterior and interior of their Home, remedy defective conditions, and prevent further damage and unsafe conditions.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby **demand** judgment in their favor and against Defendants The Omnia Group, Inc., and Omnia Group Architects LLC, for all compensatory, consequential and incidental damages, in an amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as the Court may deem proper and necessary.

## COUNT XIV

### NEGLIGENT MISREPRESENTATION UNDER BILT-RITE/RESTATEMENT OF TORTS (SECOND) SECTION 552
### PLAINTIFFS
### v.
### THE OMNIA GROUP, INC., and
### OMNIA GROUP ARCHITECTS LLC

278.    Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

279.    Upon information and belief, Omnia were the architects, and/or held themselves out as the architect and/or designer of the Homes in the Development, including, but not limited to, the Plaintiffs' Home.

280.    As defined by the Restatement (Second) of Torts, Section 522, and applied in *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 480, 866 A.2d 270, 286 (Pa. 2005), Omnia, as a professional architecture firm, or holding itself out as such, is in the business of supplying information for the guidance of others.

281.    Omnia knew, could not have been unaware of, and intended the Plaintiffs to be intended third-party beneficiaries of the Omnia Design Contract between Bonenberger and W.B. Homes Entities and Omnia.

52

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

282.  Omnia supplied the design plans, specifications, and other information to the Bonenberger and W.B. Homes Entities pursuant to a transaction in which Omnia had a pecuniary interest.

283.  Omnia had a duty to exercise due regard for the safety, life, and health of the intended homeowners, and to perform its work and produce designs in compliance with all relevant laws, regulations, codes, and industry standards.

284.  Under *Bilt-Rite*, in supplying design plans, specifications, and other information, Omnia represented that the design plans and specifications were free from deficiencies and defects.

285.  In supplying the information, Omnia also represented that the design plans, specifications, and other information were sufficient to permit Bonenberger and W.B. Homes Entities to construct all homes in the Development, including, but not limited to, the Plaintiffs' Home, in accordance with all relevant laws, regulations, codes, and industry standards, and would be habitable and free from water infiltration.

286.  Omnia made its representations with respect to the design plans and specifications being correct, complete, and free from defects or deficiencies, with the intent to induce others, including Bonenberger and W.B. Homes Entities and purchasers of the Homes in the Development, including, but not limited to, the Plaintiffs, to act on that information in constructing and/or purchasing the homes within the Development.

287.  The Plaintiffs, as the purchasers and residents of a home within the Development, justifiably relied upon Omnia, and were made to believe that their Home were designed by competent architects and were safe, habitable, and free from defects.

288.  Thus, the Plaintiffs justifiably relied upon Omnia's representations with respect to the design plans and specifications being correct, complete, and free from defects or deficiencies.

53

289. Omnia, as the architects and/or designers of the Plaintiffs' Home, knew, or should have known, that the design plans, specifications, and other information they provided to Bonenberger and W.B. Homes Entities were false, incomplete, deficient, and defective.

290. However, Omnia failed to exercise reasonable care to determine whether their design plans, specifications, and/or other information, were accurate and in accordance with the applicable laws and regulations.

291. Plaintiffs intend to support this allegation with facts developed during the course of discovery, and expert reports to be produced during the course of the litigation.

292. Thus, Omnia is liable to the Plaintiffs for its negligent misrepresentations with respect to the design plans and specifications being correct, complete, and free from defects or deficiencies, pursuant to the Restatement (Second) of Torts, Section 552, and as elucidated in *Bilt-Rite Contractors, Inc. v. The Architectural Studio.*

293. As a direct and proximate result of the Defendants' negligent misrepresentations and unlawful design and construction of the Home, the Plaintiffs have suffered damages because:

   a. remediation of the damages to their Home will cost the Plaintiffs in excess of $150,000.00;

   b. the value of the Home has diminished, and will continue to diminish;

   c. the Plaintiffs' abilities to sell their Home, for the same or similar value that their paid, has been and continues to be significantly limited; and

   d. the Plaintiffs have been, and will continue to be, denied the full use and enjoyment of their Home.

54

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

294.   Plaintiffs have been damaged in an amount in excess of $150,000.00, representing

the cost to replace and repair the damaged exterior and interior of their Home, remedy defective

conditions, and prevent further damage and unsafe conditions.

**WHEREFORE**, Plaintiffs, William McGinnis and Rose Marie McGinnis, hereby

demand judgment in their favor and against Defendants The Omnia Group, Inc., and Omnia

Group Architects LLC, for all compensatory, consequential and incidental damages, in an

amount in excess of $50,000.00, diminution in market value of the Home, and for such relief as

the Court may deem proper and necessary.

**HORN WILLIAMSON LLC**

Dated:  August 24, 2018

/s/Kathleen J. Seligman
Jennifer M. Horn, Esquire
Kathleen J. Seligman, Esquire

55

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-19272-10 Docketed at Montgomery County Prothonotary on 08/24/2018 3:31 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, William McGinnis, being duly authorized, have read the foregoing document, and verify that the statements made therein, as they relate to my Home and my legal claims, are true and correct to the best of my knowledge, information and belief. I understand that this Verification is made subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities, which may subject me to criminal penalties if I make a false statement which I do not believe to be true.

8/23/2018
Date

William McGinnis

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 06/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-19272-10 Docketed at Montgomery County Prothonotary on 08/24/2018 3:31 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## <u>VERIFICATION</u>

I, Rose Marie McGinnis, being duly ~~authorized~~, have read the foregoing document, and verify that the statements made therein, as they relate to my Home and my legal claims, are true and correct to the best of my knowledge, information and belief. I understand that this Verification is made subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to ~~authorit~~ies, which may subject me to criminal penalties if I make a false statement which I do not believe to be true.

8·23·2018
Date

Rose Marie McGinnis

Firefox

# EXHIBIT A



Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661



Case 2018-19127-0 Montgomery County Prothonotary on 05/27/2020 4:45 PM. Filed pursuant to the provisions with the provisions / Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Firefox



## Order Business Documents

**Business Name History**

TICKNEY DEVELOPMENT CORP.

**Business Entity Details**

**Officers**

| | |
|---|---|
| Name | TICKNEY DEVELOPMENT CORP. |
| Entity Number | 7278008 |
| Entity Type | Business Corporation |
| Status | Active |
| Citizenship | Domestic |
| Entity Creation Date | 10/14/1997 |
| Effective Date | 10/14/1997 |
| State Of Inc | PA |
| Address | SHAMBERG, RUMM, MULLIN & MAXWELL, CORPORATION SERVICE INC MONTGOMERY |
| Name | WILLIAM BOHUENFELDER |
| Title | PRESIDENT |
| Address | 404 N SUNNEYTOWN PIKE NORTH WALES PA 10434-2527 |
| Name | WILLIAM J BOHUENFELDER |
| Title | TREASURER |
| Address | 404 SUNNEYTOWN PIKE SU NORTH WALES PA 10434-66 |

**Filed Documents**

**Certified Documents**

| Select | Date | Document | Pages | Quantity# | Price | Line Total |
|---|---|---|---|---|---|---|
| ☐ | 08/24/2018 | Subsistence Certificate | 3 | 1 | $40.00 | |
| ☐ | 08/24/2018 | Index and Docketing Report | | 1 | $15.00 | |
| ☐ | 08/24/2018 | Index and Docketing Certified Report | 3 | 1 | $55.00 | |

Order Total :

Case# 2018-19272 - Civil Docketed & Judgment - Montgomery County Prothonotary

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Firefox

**EXHIBIT B**

5/26/2020, 12:08 PM



**Find Your New Home**









We would like to thank you for all that you have done to help us in creating the perfect home for our family. We appreciate your design expertise and the thoughtful way in which you explained each step of the selection process to us. We are thoroughly pleased with all the fixtures, cabinets, and colors you helped us to select.

– David and Diana, Telford

This Year's Most Popular

## This Year's Most Popular
### Kitchen Trends

At W.B. Homes, we know kitchens and we are happy to share a few of our favorites to inspire you in creating your perfect kitchen. Trends are showing the kitchens are "white" hot and feature hidden appliances and a mix of finishes to make quick, casual dining a snap.

read more

## Meet Donna, Your Trusted
## New Home Advisor

As a helpful resource, Donna's here for you. She knows all about the neighborhoods in which we build and will help guide you towards making the best decisions about your perfect W.B. home.



# EXHIBIT C

Case# 2018-19272- Sold Ga is defined relating to any County Courts. Each part is allied on a Guide. The Decisions Made. Units differ with the provisions with the providence t
Unified Judicial System of Pennsylvania. Case Records of The Courts but may not reflect all documents differently than non-con

File: *f:wpfiles\bethkroll.SK
last revised 04.21.03 by Jsk

## AGREEMENT OF SALE

AGREEMENT made this 12th day of October, 2003 by and between W. B. HOMES, INC.
(hereinafter called "Seller"), whose address is 404 Sumneytown Pike, Suite 200, North Wales,
Pennsylvania 19454, and William & Rose Marie McGinnis (hereinafter called "Buyer), whose
address is 2231 Locust Drive Lansdale, PA.  19446 who agrees to buy the following lot and
house to be constructed thereon:

| | | |
|---|---|---|
| Community: | Bethel Kroll | Buyers phone numbers: |
| Model: | Newbury CountryManor | (H) 610-584-5259 |
| Lot Number: | 5 | (W)_____ |
| Township: | Worcester | (W)_____ |
| County/State: | Montgomery County, PA | (W-FAX)_____ |
| Street Address: | TBD Muirfield Way | |
| | Lansdale, PA 19446 | |

### WITNESSETH:

1. **PURCHASE/PROPERTY:** Seller, as the Equitable Owner, agrees to sell and convey to
Buyer, and Buyer agrees to purchase from Seller, all that certain lot or piece of ground,
together with improvements and house to be constructed hereon (hereinafter collectively
referred to as the "Premises") known and designated as stated above.

2. **PRICE:** The base price for the Premises is:

| | |
|---|---|
| Lot Premium | $676,999.00 $ 25,500.00 |
| Additional Item: Total for Extras - Exh.C #1: | $126,559.25 |
| Additional Item: Builder's Incentive | $( 12,500.00) |
| (Discount on Lot Premium) | |
| **TOTAL:** | $814,049.25 |

which shall be payable as follows:

| | |
|---|---|
| Cash or plain check at signing this agreement: | $ 81,405.00 |
| Add'l Payment: Due on or before_____: | $_____ |
| Add'l Payment: Due on or before_____: | $_____ |
| CASH or CERTIFIED CHECK at settlement: | $732,644.25 |
| **TOTAL:** | $814,049.25 |

Case# 2018-19272-13 Docketed at Montgomery County Prothonotary on 08/24/2018 3:51 PM, Fee = $0.00. The fee certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial
System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1

The amount paid at the signing hereof shall be paid directly to the Listing Broker, Coldwell Banker Realty Corp., and shall be placed in an interest bearing escrow account until settlement; interest to be paid to the Buyer. However, any subsequent deposits for options purchased hereafter shall be paid to W.B. Homes, Inc.

3. **MORTGAGE APPLICATION:** This sale and settlement hereunder are not conditional or contingent in any manner upon the sale or settlement of any other real estate nor subject to any mortgage or financing except as hereunder provided:

a. Term and amount of mortgage loan required by Buyer/30 years; $222,000.00

b. Type of mortgage Conventional Interest rate required: 6.0% HOWEVER, BUYER AGREES TO ACCEPT THE INTEREST RATE AS MAY BE COMMITTED BY THE MORTGAGE LENDER, not to exceed a maximum interest rate of 7.5%

c. Commitment date for approval of the mortgage 11/12/2003.

d. Mortgage loan application shall be made by the Buyer, and if said mortgage loan cannot be obtained by the date in Paragraph 3(c), this Agreement shall become NULL and VOID and all deposit monies shall be returned to Buyer on or before date for settlement as provided herein, subject however, to the provisions of paragraph 3 (e) and (f).

e. Buyer shall make a completed application, in writing, for a responsible mortgage lending institution for the aforementioned mortgage loan within ten (10) days of the date of Seller's approval of this Agreement. Should the Buyer fail to make such completed application within the specified ten (10) days, fail to make any additional payments as specified in Paragraph #2 of this Agreement, furnish false or incomplete information to the Seller, the Seller's Agent, or the mortgage lender, constituting Buyer's legal or financial status, fail to execute in the possession of the mortgage loan application which sites would result in the failure to obtain the approval of a mortgage loan commitment, or if the mortgage loan commitment is not valid until the date of settlement or lapses prior to settlement, it shall be at the option of the Seller, within five (5) days thereafter be (1) declare this Agreement NULL and VOID, at which time all money paid on account will be forfeited to Seller, as liquidated damages, or (2) in the absence of written notice to the Buyer, by the Seller, declaring this Agreement NULL and VOID, the conditions and contingency herein provided for in Paragraph 3 (a) through (g) shall no longer prevail, and this Agreement shall remain effective according to its term in the same manner as if the condition and contingency were not a part hereof.

f. Seller or Agent must receive a written commitment, valid until the date of settlement, for the mortgage loan, on or before the date specified in Paragraph 3 (c). **IN THE EVENT THAT BUYER SHOULD RECEIVE A COMMITMENT CONTINGENT ON THE SALE OF ANY OTHER PROPERTY, IT SHALL BE DEEMED A COMMITMENT FOR THE PURPOSE OF THIS AGREEMENT, EVEN IF SAID PROPERTY IS NOT SOLD PRIOR TO THE DATE OF SETTLEMENT CALLED FOR UNDER THE TERMS OF THIS AGREEMENT.** If said commitment is not furnished with the terms as specified herein, or on other terms accepted in writing by the Buyer on or before the specified date, Seller shall have the option, at that date, or any other time thereafter during the term of this Agreement until, but not beyond the date of receipt of the written commitment by the Seller or Agent, to declare this Agreement NULL and VOID by written notice to the Buyer of his decision in cancel, at which time all deposit monies paid on account shall be returned to the Buyer.

Buyer agrees to timely and expeditiously comply with all terms and conditions of the mortgage contingencies (if any) and subsequent mortgage commitment and such stipulated commitment conditions as may require compliance by Buyer to timely secure said loan.

g. It is understood and agreed between parties hereto that the Seller's Agent is authorized to communicate with the lender for the purpose of assisting the loan approval process however, the Seller is under no obligation whatsoever to secure a mortgage for Buyer. However, if Buyer is unable to obtain a valid mortgage commitment on their own, both parties agree that Seller and Listing Broker shall have the option to attempt to obtain a mortgage for Buyer from a reputable mortgage lending institution or bank in accordance with the terms in Paragraph 3(a) through 3(f) and Buyer agrees to cooperate fully with Seller through this process.

4. **EQUITABLE OWNER:** Buyer acknowledges that W.B Homes, Inc. is the equitable owner of the tract of ground, which is the subject of this Agreement of Sale. Buyer further acknowledges that at settlement, the deed to Buyer will be from the legal owner of the property but that Buyer's dealings and contractual relationships have solely been with Seller, and Buyer agrees to look solely to Seller for performance of this Agreement and agrees to indemnify and hold harmless the legal owner from any claim or cause of action arising out of the construction of the home contemplated herein.

If for any reason W.B. Homes is unable to complete settlement with the legal owner, then Buyer agrees that upon refund of all downpayment money, neither party shall have any further claims against the other, and this Agreement shall be null and void. Seller warrants that Seller has a legal and binding Agreement of Sale with the legal owner of said property and that the legal owner consents to this Agreement of Sale.

Case 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2
3

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 08/07/2020 4:42 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

5. **TITLE:** Seller, at the time of settlement, shall grant and convey to Buyer by delivery of a special warranty deed, good and marketable title to the Premises and such as will be insured at regular rates by a responsible title insurance company doing business in this area free and clear of all liens, encumbrances, easements and restrictions except the following:

a. Easements, servitudes, restrictions, or covenants now of record or apparent from an inspection of the Premises.

b. Laws, ordinances, requirements, rules and regulations of any governmental, and/or quasi-governmental body, or Community Home Owner's Association having jurisdiction.

c. Easements of roads, privileges, and rights of public and private utilities.

d. Easements with respect to public or private storm sewers or service water course.

e. Agreements & easements with telephone, gas, water, electric, T.V. cable, and other public utility companies.

f. Zoning ordinance and any other act, ordinance, or regulations affecting the use of the Premises.

g. Department of Transportation issuance of a highway occupancy permit, if required, to access a public road.

h. The following restrictions, covenants, agreements and conditions, all of which shall survive settlement, at the option of Seller may be set forth and recited in the deed from Seller to Buyer hereunder or be placed upon the property by separate Declaration. It is further agreed that regardless of whether or not Seller recites these restrictions in the Deed from Buyer to Seller or by separate Declaration, Buyer will abide by them completely as though they had been recorded.

  1. Buyer shall not, without the prior written consent of Seller, display or permit to be displayed on the Premises any sign, including but not limited to, a real estate for sale sign, poster, display, billboard, or other advertising device, for a period of two (2) years from the date of settlement, or when last found in substitution settlement, whichever shall occur last.

  2. In the event of any violation by Buyer of the covenants, restrictions, conditions, and agreements set forth in above subparagraph #9, (h), (l through 2), inclusive, either prior to or following settlement, the Seller is hereby irrevocably authorized

... and empowered by Buyer to enter upon the Premises and with or without process of law forthwith terminate any such violation. Buyer shall be responsible for any and all damages suffered by the Seller as a result thereof and the Seller, in addition to any and all other remedies available to it, shall have the right to obtain an injunction restraining such activity or violation.

6. **AGENTS OF SELLER:** IT IS UNDERSTOOD THAT THE LISTING BROKER, COLDWELL BANKER REALTY CORP. ASSOCIATES AND/OR ANY OF ITS DESIGNATED LICENSEES WORKING WITH SELLER ARE THE AGENTS OF THE SELLER ONLY AND WILL IN NO CASE BE LIABLE TO EITHER PARTY FOR THE PERFORMANCE OF ANY OF THE TERMS OR COVENANTS OF THIS AGREEMENT OR FOR DAMAGES FOR NON-PERFORMANCE THEREOF. FURTHER, NO AGENT OF SELLER HAS ANY AUTHORITY TO MAKE ANY REPRESENTATIONS, COVENANTS, AGREEMENTS, OR THE LIKE WITH RESPECT TO THE PREMISES. WHEN THE LISTING BROKER AND SELLING BROKER ARE THE SAME, THE BROKER IS A DUAL AGENT, WHICH APPLIES TO ALL LICENSEES UNLESS THERE ARE DESIGNATED SELLER AND DESIGNATED BUYER AGENTS. THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN PARTIES, AND IT MAY BE CHANGED ONLY BY A WRITING EXECUTED BY ALL PARTIES HERETO. THE LEGISLATURE HAS ESTABLISHED A REAL ESTATE RECOVERY FUND. THE PURPOSE OF THE FUND IS TO COMPENSATE PERSONS WHO OBTAIN A JUDGEMENT IN A COMPETENT COURT OF LAW BECAUSE OF FRAUD, MISREPRESENTATION OR DECEIT OF ANY AGENT. FOR FURTHER INFORMATION, CALL (717)783-3658.

7. **AUTHORIZATION TO ORDER TITLE INSURANCE:** Buyer hereby authorizes Seller to order, on behalf of Buyer, title insurance from North Penn Abstract Title insurance company, provided Seller has not been notified by Buyer, in writing, within ten (10) days of the date of this Agreement, of his election to revoke this authorization. In addition, Seller's sales agent may perform services for Buyer in conjunction with financing, insurance and document preparation. Buyer further authorizes Seller's sales agent to prepare documents and obtain conveyancing services for settlement.

8. **POSSESSION:** Possession of the premises shall be delivered by Seller to Buyer at Settlement thereafter by delivery of said special warranty deed and key. The terms of the Limited Warranty of the Seller shall survive Settlement.

Because of dangers involved in construction areas, Buyer agrees not to enter upon the premises or into any portion of the dwelling to be constructed thereon or at any time to interfere in any manner with construction upon the premises unless and until accompanied by a representative of the Seller. Buyer shall, in advance, contact Seller or ...

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Seller's representative at Seller's office or such selection or location as Seller may designate in order to arrange any inspection of the premises or the dwelling to be constructed during normal business hours (Monday through Friday, 8:30 a.m. to 4:00 p.m. and excluding holidays). Seller shall not be responsible for any physical injury or damage to property caused by any unauthorized entry by Buyer; and Buyer hereby relieves Seller and Seller's agents, employees, or workmen of and holds Seller and Seller's agents, employees and workmen harmless from any and all liability or claims arising out of any unauthorized entry.

9.  **WAIVER:** Formal tender of Deed and tender of monies are hereby waived.

10. **SETTLEMENT:** Settlement hereunder shall be held on a date which is ten (10) days after the Seller shall supply Buyer with a notice of Settlement. However, at the time of settlement, the house and premises shall have been substantially completed. In no event shall settlement be held unless Seller can provide at settlement a "Use & Occupancy Permit" from the municipality. Settlement shall be held at either (a) the offices of Coldwell Banker Equity Corp., or (b) the offices of the Seller, during normal business hours. Time is of the essence in this agreement and of the performance of each and every term and condition hereof.

In an effort to assist Buyer in formalizing future plans, it is anticipated that the settlement date will be ___ D 2014. However, Seller reserves the right to delay commencement and/or completion of construction until Buyer has received a valid mortgage commitment in accordance with Paragraph #3. Additionally, if commencement of construction, completion and/or settlement are delayed due to inclement weather, strikes, delays in issuance of permits, unavailability of labor or materials for any reason beyond Seller's control, such items and settlement hereunder shall be automatically extended accordingly.

11. **SETTLEMENT COSTS, TAXES:** The Seller, at Seller's expense, shall prepare the special warranty deed to the Premises. Seller and Buyer shall each pay one-half (1/2) of any state or local realty transfer taxes. Buyer shall pay all title insurance charges, hazard insurance, recording charges, and charges in connection with Buyer's mortgage, if any. Real estate taxes, water and sewer rentals, and any other periodic government or municipal charges affecting the premises shall be apportioned between the Buyer and Seller as of the date of Settlement.

12. **RISK OF LOSS:** The risk of loss or damage to the house and to any personal property and fixtures being sold hereunder, whether by fire, other casualty or any other cause whatsoever, shall be on the Seller from the date hereof to the date of Settlement. In the event of fire or other casualty, settlement will be postponed until Seller is able to restore or rebuild the house.

13. **DEFAULT BY SELLER:** If Seller shall default hereunder, Buyer shall have the option of (a) being repaid the amounts heretofore paid by Buyer on account of the purchase price and of being reimbursed for reasonable title insurance company charges

and reasonable mortgage application fees heretofore incurred, in which event this Agreement shall terminate and neither of the parties shall have any further rights or obligations hereunder, provided, however, that if such default shall consist solely of Seller being unable or disinclined to convey title as and to the extent set forth in Paragraph 4 hereof, Buyer shall have the option of taking such title the Seller can give without abatement of price, or (b) a suit for specific performance.

14. **DEFAULT BY BUYER:** Should Buyer violate or fail to fulfill any of the terms and conditions of this Agreement, all amounts heretofore paid by Buyer on account shall be retained by Seller (a) on account of the purchase price with a balance being recovered through a suit for specific performance, or (b) as liquidated damages for such breach, or (c) as partial damages in the event Seller should elect to resell the property and claim against Buyer the amount of damages which Seller has incurred as a result of Buyer's break. Seller shall have the option to elect any of the above remedies.

15. **BUYER'S SELECTION OR OPTIONS:** Seller will offer to Buyer a specific list of changes or additions (Options) to the Plans. Buyer may request such options only by submitting to Seller, on Seller's form, (Exhibit "C") a written authorization of Seller for such options. Seller promises to convey as part of the dwelling, such extras as shall be scheduled and agreed upon by the parties herein as shown on Exhibit "C", which is attached hereto and made a part hereof. Except for the inclusion of the enumerated extras as fully set forth, no changes in construction or in completion ordered by Buyer will be made unless authorized, in writing, by Buyer at a cost agreed upon and approved by Seller in writing. In the event Buyer desires to select any additional extras or to make any other changes after the Agreement of Sale and Original Extras Agreement (Exhibit "C" #1) have been signed by both parties, they may do so under the following conditions:

a.  Buyer will immediately pay to Seller up to 50% of the cost of such changes or extras with the balance of the extras due at settlement. In the event that the Seller does not obtain said monies, the extras or changes will not become part of the Agreement.

b.  In the event that settlement is not held under the terms of this Agreement for any reason other than default by Seller, any monies paid to Seller for extras ordered shall in no instance be refunded.

c.  Seller's responsibility for omission of any option purchased after the Agreement of Sale and the first "Extras Agreement" (Ex. C #1) have been signed shall be limited to the cost paid by Buyer therefore, and any such options shall not invalidate the Agreement.

16. **COLOR SELECTION:** Buyer shall make all the necessary color selections within ten (10) days of notice from Seller allowing Buyer to do so. In the absence of such selection by Buyer, within the aforementioned time period, Seller is hereby irrevocably

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

authorized to proceed with the installation of material of a color and design selected by Seller.

17. **VEGETATION EXISTING PRIOR TO CONSTRUCTION/WOODED AREAS:** Seller will attempt to preserve as many of the existing trees or shrubs as reasonably possible during the construction of the improvements and house on the premises. It is expressly agreed, however, the Seller does not guarantee or warrant the survival of any of the trees or shrubs existing on the premises prior to the said construction. Any existing trees or shrubs on Buyer's lot that may die after settlement are the sole responsibility of Buyer. The Seller shall be responsible to grade and seed the disturbed areas of the lot only. As to the quality or quantity of growth of grass, it is Buyer's sole responsibility to water, fertilize and reseed as necessary.

Any soil washouts from rain or melting snow or hurricane due to drought after settlement are the sole responsibility of the Buyer, unless caused by improper grading.

18. **SELLER'S SUBDIVISION PLAN:** Buyer acknowledges that Buyer has reviewed the final subdivision plan as approved by the Township. Seller reserves the right to make minor adjustments and modifications to accommodate site conditions and/or at the request of Governmental authorities.

19. **PROPERTY CORNERS:** Buyer agrees to reimburse Seller $250 at settlement for having a registered surveyor install four pins at all property corners.

20. **DELAYS IN CONSTRUCTION:** In the event that completion of construction of the premises is delayed due to inclement weather, strikes, governmental regulations, delays in obtaining or issuance of permits or mortgage commitments or approvals or inspection or any act of God, storm, wind, or fire damage delays by reasons of inability or failure of Seller's subcontractors to perform despite Seller's best efforts at either performance, or for any other reason which is beyond the control of the Seller, Seller may extend the date of Settlement until such time as completion of the house may require or the Buyer may elect to complete Settlement and take possession of the premises in which case all monies due under this Agreement, together with costs due for options or extras shall be paid in full by the Buyer at Settlement, provided Seller shall furnish buyer with a letter guaranteeing completion of any incomplete work within a reasonable time at weather conditions and availability of material permits. Seller is not responsible for and is hereby released from any loss, liability, expense, costs or incidental or consequential damages which may result by reason of delay.

21. **DELAYS IN COMPLETION OF EXTERIOR ITEMS:** Buyer hereby acknowledges that due to inclement weather, grading and seeding, exterior painting and/or staining, exterior concrete walks/sidewalks, and driveway may cost and not be complete at the time of Settlement. Buyer acknowledges and agrees that no monies or funds shall be placed in an escrow account or withheld from the Seller at the time of Settlement to compensate for such incomplete items. However, upon request by Buyer, Seller shall

furnish Buyer a letter of settlement guaranteeing completion of any incomplete work within a reasonable amount of time.

22. **OUTSIDE CONTRACTORS:** It is hereby understood by the Buyer that the Seller may from time to time during the construction of the house employ outside contractors and/or suppliers. Said outside contractors and suppliers are directly employed by the Seller. It is further acknowledged and agreed by the Buyer that said contractors has taken place, the Buyer will not employ any outside contractors or suppliers to work on the premises.

23. **LIMITED WARRANTY:** Seller agrees to provide to Buyer at settlement a five (5) year limited warranty. For the purposes of this Agreement the five (5) year limited warranty shall be referred to as Exhibit "A". BUYER ACKNOWLEDGES THAT HE HAS REVIEWED SAID "LIMITED WARRANTY", A COPY OF WHICH IS AVAILABLE AT SALES OFFICE AND AT BUILDER'S OFFICE [494 SUMNEYTOWN PIKE, NORTH WALES, PA]. BUYER ACKNOWLEDGES AND AGREES THAT SAID "LIMITED WARRANTY" (EXHIBIT "A") SHALL BE THE SOLE AND EXCLUSIVE WARRANTY CONCERNING THE CONSTRUCTION OF THE SUBJECT HOUSE AND PREMISES, AND ALL OF THE RIGHTS, REMEDIES AND OBLIGATIONS WITH RESPECT TO ANY WARRANTY CONCERNING SAID CONSTRUCTION SHALL BE AS SET FORTH IN EXHIBIT "A". NO IMPLIED WARRANTY (WHETHER OF MERCHANTABILITY, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE) IS GIVEN ON PORTIONS OF THE PREMISES OTHER THAN CONSUMER PRODUCTS. THE MAXIMUM LIABILITY OF SELLER UNDER THIS WARRANTY SHALL BE THE REPLACEMENT COST OF THE DEFECTIVE PORTION OF THE UNIT. IN NO EVENT SHALL SELLER BE RESPONSIBLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES OR PERSONAL INJURIES ARISING FROM ANY BREACH OF THIS WARRANTY.

24. **MOLD:** Mold is found in both the indoor and outdoor environment, including houses. Mold growth is highly dependent on the presence of moisture. When a mold spore comes into contact with a wet or damp surface indoors, the mold begins to grow. Mold spores will not grow unless there is moisture present in your home. Therefore, as a homeowner, whether or not you experience mold growth depends to a large extent on how you manage and maintain your home, and whether there is a source of moisture present in your home. As a homebuilder our responsibility as builder is limited to things that we can control, and which are provided for in our "LIMITED WARRANTY". By executing this Agreement of Sale you as Buyer agree that as a homebuilder we as Seller are not responsible for any damages caused by mold, including but not limited to, property damage, personal injury, loss of income, emotional distress, loss of use, loss of value, adverse health effects, or any other effects.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 03/17/2020 4:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

25. **RADON:** Seller has installed a Radon Stack from the underside of the basement ceiling up into the unfinished attic area. This radon stack does not guarantee that radon gas will not be present in the unit. If done, however, provide a safe and cost effective way for Buyer to mitigate any radon gas that may be present.

Seller has advised to Buyer as an optional extra a system to ventilate any radon gas that may be present after the construction of the dwelling contemplated herein. ("Radon Mitigation System") is listed and described in Seller's Option Menu) Buyer has elected/not to select this option and Buyer recognizes that any testing or collection of radon gas after completion of the dwelling unit will be Buyer's sole responsibility and this provision for ventilation, therefore, shall be at Buyer's sole cost without any liability on the part of the Seller.

26. **NOTICE OF INSULATION:** Insulation and R-Values in the house are indicated on Exhibit "B" attached hereto.

27. **ACT 222:** Seller warrants to Buyer that the house referred to in this agreement shall be constructed in accordance with the provisions of the Act of December 15, 1980, No. 222, known as the "Building Energy Conservation Act". This law provides building standards to make your home energy efficient.

28. **CONSTRUCTION OF THE HOUSE:** The house shall be completed substantially similar to the sample house which is situated at No model house selected and is in accordance with the "Standard Features" list attached hereto and made a part hereof, except to the extent, if any, modified by an Exhibit "C", which has been executed by the parties and which is attached hereto and made a part hereof. It is expressly understood and agreed that any options, landscaping, sod, deposits, security systems, optional lighting, furnishings, wallpaper, upgraded floor coverings or back fixtures, or other decorative features or extra cost items, as shown in or about any model house, are for display purposes only and are not considered a selected part of the premises being sold under the Agreement of Sale unless specifically itemized on Seller's option order form (Exhibit "C").

If the house to be constructed herein is not similar to the sample house or if no sample house exists, same will be constructed substantially similar to the floor plans and elevations shown on the sales brochure for the applicable model and shall also be in accordance with the "Standard Features" list, both of which are attached hereto and made a part hereof, except to the extent, if any, modified by an Exhibit "C" which has been executed by the parties and which is attached hereto and made a part hereof.

Prior to commencement of construction, Seller shall prepare Buyer with a set of architectural "working drawings" of the house, with the applicable options which Buyer has purchased shown on the working drawings. (This does not apply to houses started prior to being purchased by Buyer). Upon Buyer's review and sign off on the architectural working drawings, these working drawings shall become part of this

10

Agreement of Sale by reference. If there are any discrepancies between "Brochure Plans/Standard Features" and the Architectural Working Drawings, the Architectural Working Drawings shall prevail.

SELLER HAS THE RIGHT, AT SELLER'S SOLE DISCRETION, TO MAKE SUBSTITUTIONS OF MATERIAL OF SUBSTANTIALLY EQUAL OR BETTER QUALITY WHENEVER SELLER SHALL FIND IT NECESSARY OR EXPEDIENT TO DO SO, AND SELLER SHALL HAVE THE RIGHT TO MAKE ANY CHANGE OR CHANGES IN THE CONSTRUCTION OF THE SAID PREMISES THAT SELLER MAY FIND NECESSARY IN THE COURSE OF CONSTRUCTION OR WHICH ARE REQUIRED BY GOVERNMENT REGULATION.

Buyer hereby acknowledges that the house which he has selected will be constructed as a left hand house (i.e., a house having a front elevation with the garage to the left when looking at house from the front).

29. **BUYER INSPECTION OF PREMISES:** The Buyer is purchasing the premises upon the basis of the Buyer's own investigation and without regard to any representations, statements, promises, or the like made by the Seller or any agent or representative of Seller, except as specifically set forth in this Agreement of Sale.

30. **APPROVAL OF OFFICE:** This Agreement of Sale is not valid and is not binding upon Seller unless and until this Agreement of Sale is executed by an authorized representative of the Seller.

31. **GOVERNING LAW:** This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania and shall inure to the benefit of and bind Seller and Buyer and their respective heirs, executors, administrators, successors and assigns, provided that neither this Agreement nor any interest therein shall be assignable in whole or in part by Buyer, except with the prior written consent of Seller.

32. **NOTICES:** Notices hereunder shall be given registered or certified (mail, postpaid, return receipt requested, addressed to Seller at the address on page one hereof and if to Buyer at the address on page one hereof.

33. **RECORDING:** This Agreement shall not be recorded.

34. **HEADINGS:** The headings in this Agreement are for convenience of reference only and shall not affect the construction hereof.

35. **NO REPRESENTATIONS:** This Agreement contains the whole Agreement between the Seller and Buyer and there are no other terms, obligations, covenants, representations, statements, or conditions, oral or otherwise of any kind whatsoever, except such addendums, which may be attached to this Agreement.

11

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 03/17/2020 4:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1 of 1

5/26/2020, 12:09 PM

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

36. ZONING: The zoning classification of the property being sold is R-175. This statement is required to be made by law; otherwise, the Agreement of Sale would be rendered void and the deposits tendered by Buyer would be repaid to Buyer without the supplement of court action. Additionally, access to a public road may require issuance of a highway occupancy permit from the Dept. of Transportation. Seller has arranged all necessary highway occupancy permits.

37. ARBITRATION: Any and all claims, disputes and controversies by or between the Homeowner, and the Builder arising from or related to the previously referenced "LIMITED WARRANTY", to the subject Home, to any defect in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealing, shall be submitted to arbitration by and pursuant to the rules of Construction Arbitration Services, Inc. (hereinafter "CAS") in effect at the time of the request for arbitration, or by such other arbitration service as both parties shall mutually agree to, and pursuant to the rules of that arbitration service in effect at the time of the request for arbitration.

This arbitration agreement shall inure to the benefit of, and be enforceable by, the Builder's subcontractors, agents, vendors, suppliers, design professionals, insurers and any other person whom the Homeowner asserts a claim responsible for any defect in or to that subject Home or the real property on which the subject Home is situated. Any party shall be entitled to recover reasonable attorney's fees and costs incurred in enforcing this arbitration agreement, and the arbitrator shall have sole authority to award such fees and costs. The decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction.

This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any dispute concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator.

The initiation of or participation by any party in any judicial proceeding concerning this arbitration agreement or any matter arbitrable hereunder shall not be deemed a waiver of the right to enforce this arbitration agreement, and notwithstanding any provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this arbitration agreement.

Any party who shall commence a judicial proceeding concerning a dispute, which is arbitrable hereunder, shall also be deemed to be a party requesting arbitration within the meaning of this arbitration agreement.

---

The administrative fee charged by the arbitration service shall be borne equally between the Homeowner and the Builder. The arbitrator's compensation fee shall be borne equally by the arbitrating parties for single-arbitrator arbitration. Additional fees may be assessed in accordance with the arbitration rules and fees.

No arbitration proceeding shall involve more than one (1) single-family attached or detached dwelling.

If any provision of this arbitration agreement shall be determined by the arbitrator or by any court to be unenforceable or to have been waived, the remaining provisions shall be deemed to be severable therefrom and enforceable according to their terms.

38. RESIDENTIAL DISCLOSURE STATEMENT: Seller desires to provide Buyer with information regarding the property to be sold. This information is intended to benefit the BUYER by clearly defining the nature of the property, inclusive of any restrictions or conditions that may affect it's desirability, suitability, and/or current or future value. BUYER acknowledges that (a) Seller has provided Buyer with a "RESIDENTIAL DISCLOSURE STATEMENT", (a copy of which is attached hereto and made a part of this Agreement); (b) that Seller has reviewed the document and pertinent back-up information with Buyer, and (c) that Buyer has reviewed the "RESIDENTIAL DISCLOSURE STATEMENT" prior to executing this Agreement of Sale.

This Agreement may be executed in any number of counterparts, each of which will be deemed "an original".

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have hereunto set their hands and seals, the day and year first above written.

BUYER _William Hom_____ DATE _10/13/03_

BUYER _Kirthana M. Harvie_____ DATE _10/13/03_

WITNESS _____ DATE _____

SELLER _Jacob Engle - VanPara_ DATE _10/14/03_

SELLER _____ DATE _____

WITNESS _____ DATE _____

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

RESIDENTIAL DISCLOSURE STATEMENT

SUB-DIVISION: **REVERE KNOLL**

LOT #:2

BUYERS NAME(S): Sean & Rose Marie McGinnis

**THIS DOCUMENT IS FOR YOUR PROTECTION.
READ IT CAREFULLY BEFORE SIGNING.**

SELLER desires to provided BUYER with information regarding the property to be sold. This information is intended to benefit the BUYER by clearly defining the nature of that property, inclusive of any restrictions or conditions that may affect its desirability, suitability, and/or current or future value. It is your obligation to evaluate the information and to consider its implications relative to your situation. The importance of understanding the material presented to you cannot be overstressed.

If you have any questions, you are advised that the SELLER or the SELLER'S agent(s) may not be qualified to render explanations or interpretations of the information supplied to be disclosed. You are advised to seek the assistance of an unbiased professional prior to signing the Agreement of Sale.

The SELLER will make available the current information, required by this document, in effect as of the date of the subdivision or land development approval, and to thereafter update the required disclosures so that at all times the information is made available, the information is current.

14



Case 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

unified for sanitary sewer, storm water, domestic water, gas, electric, telephone, cable or any other utility.

* a.) All permanent Easements (exclusive of electric /telephone and cable) are clearly shown on Page 1 of 14 of the Engineering Plans. The permanent Easements include:
  1. Drainage Easements – Lot #6, Lot #8, Lot #1 and Lot #9.
  2. Storm Drainage Easement (Basin) Lot #3.
  3. Sign Easement Lot #1.
  b) Additionally, although not shown on plans, the Electric, Gas (if applicable) and Cable T.V. providers are granted permanent Easements to provide service to each lot.



(5) All current dimensional requirements for the primary use on each lot, such as setback requirements, building coverage, impervious coverage, and height limitations.

* a) Please refer to "Zoning Data" as shown on page 1 of 14 of the full Engineering Plans.
  b) Maximum allowable building coverage is 15%.
  c) Maximum allowable impervious coverage is 10%.
  d) Maximum allowable height is 35'-0".



(7) All current dimensional requirements for all accessory uses (decks, pools, sheds, etc.) such as also setback requirements, and height limitations.

* a) Please refer to Section #150-17, pages 15137 through 15139 of the Zoning Ordinance for all dimensional requirements on the above. (copies attached)

(8) The location of all areas which are classified as wetlands, Waters of the Commonwealth, Waters of the United States, floodplains, or other resources conservation areas by current law. The use and development of these areas may be severely restricted. The BUYER understands substantial penalties exist for violations of these restrictions;



* a.) All regulated Conservation Areas are clearly indicated on the "Existing Features Plan", page(s) 2 of 14 of the Final Engineering Plans. There are no Wetlands, or Waters of the United States on any lots. There are areas of "Waters of the Commonwealth" present on the following lots:
  1. #8
  2. #7
  3. #8
  4. #9



(9) The location within the development and on each lot of flood plain area.
There are no Flood Plains on the Bethel Knoll subdivision.



(10) The location of all storm water management facilities, including detention/retention basins, storm water management easements, defined swales, and the ownership and maintenance responsibilities for each.

* Please refer to the "Site Improvement Plan", pages 3 of 14 of the full Engineering Plans. These pages clearly show the location of all storm inlets, detention basin(s), defined swales, and other storm water management appurtenances, the grading of each lot, and the path of storm water runoff.

  * All storm sewer and appurtenances within R.O.W. of Birchfield Court are to be dedicated to the municipality and will be owned and maintained by Worcester Township.
  * All storm sewer and appurtenances located on an individual lot will be owned and maintained by lot owner.
  * The detention basin will be owned and maintained by the owner of Lot #3.



(11) The zoning of the development and abutting properties as shown in the municipality's most current Zoning Map.

* The properties on the easterly side of the Bethel Knoll subdivision are zoned E-180. Refer to Section 150-80 through 150-78, pages 15082 through 15081 for permitted uses within this district. The adjoining properties to the south and southwest are situated within the R-175 Zoning District. The permitted uses within this Zoning District are specified in Section 150-34 through 150-41, pages 15048 through 15063 (attached).



(12) Proposed new and right-of-ways, temporary cul-de-sac(s), etc. within or adjacent to the development, shown on the official map of the municipality, if any exists.

* The only new road Right-of-Way within or adjacent to this development is the new road Right-of-Way of Birchfield Court. This R.O.W. will be dedicated to Worcester Township.



(13) Buyer is aware that sewage and water facilities for this community will be provided as follows:
* a.) Sewer: By the Upper Gwynedd Townsanain Authority.
  b.) Water: By North Penn Water Authority.

14

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 09/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(14) The Buyer is aware that all lots that are serviced by gravity flow public sewer.

(15) Buyer is aware of any proposed fences to be installed within the community.
*There are not any fences proposed to be installed within this community by the Developer.

(16) Buyer is aware of the "Declaration of Covenants, Easements and Restrictions" that will be placed by Developer on each lot within this community. This document contains certain restrictions on the use of each lot. (copy attached)

(17) Buyer of Lot #1 is aware that Developer will be constructing and installing entrance signage and landscaping announcing the name of the Development on the front corner of lot #1. The lot owner shall be responsible for the permanent maintenance of this sign and landscaping as more fully described in the "Declaration of Easement" (copy attached).

(18) The BUYER is aware of all lots that are serviced by a "Common Driveway" and the ownership and maintenance responsibilities associated with the Common Driveway.
There are no lots in the Bethel Knoll subdivision that have a common driveway.

(19) The BUYER has seen and reviewed any known environmental surveys, studies or reports done on the property.
* Attached, for your review, is a copy of the Phase I Environmental Assessment as prepared by Boucher & James, Inc., dated April 10, 2002.

(20) BUYER is aware and acknowledges that upon completion of the Community, Owner will offer the following road rights-of-way for dedication to the following entity:

**Road Right-of-Way**          **Entity Dedicated to**
1.  Any road frontage along      PennDot
    Bethel Road
2.  Muxfield Court               Worcester Township

Upon the Township and/or PennDOT accepting these road Rights-of-Way they will then be responsible for all the maintenance of the roads, storm sewer, etc., (including snow plowing) within these road Rights-of-Way. In addition, the following utilities will also be dedicated to the appropriate authority:
a.) Public Water: Dedicated to North Penn Water Authority

18

b.) Public Sewer:  Dedicated to Upper Gwynedd Towamencin Sewer Authority.

I/We, the undersigned, acknowledge that I/We have had the opportunity to review the complete set of Subdivision and/or Land Development Engineering Plans and related material referenced in this document from the Seller and understand and agree to the constraints imposed therein with regard to any/our property.  I/We also understand that signing this Disclosure Statement does not relieve me/us from meeting requirements of any of the Codes of the municipality.

WITNESS: _____          _____
                                  Owner or Authorized Agent
Purchaser

_____
Purchaser

_____
Date

_____
Date

I:\RepDisc\public\scale\Rdisclosure.BK.doc
Rev. 05.11.09

19

Firefox

Case# 2018-19272-100 Docketed at Montgomery County County Prothonotary on 05/07/2020 4:43 PM, Fee =$0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

EXHIBIT "B"

INSULATION AND "R" VALUES

PROJECT: Bethel Knoll

SELLER: W.B. HOMES, INC.
LOT #
BUYER: Systian & Kaye Marie McGinnIs

Seller represents that as a minimum, insulation will be installed as follows: exterior walls in heated areas will be insulated with fiberglass batts having a thickness of 3 1/2" which, according to the manufacturer, will yield an R-Value of 13. The total wall system will yield an R-Value of 16, including the value of siding, insulation, sheathing, and the interior wall. Ceilings in heated areas that adjoin unheated areas will be insulated to yield of R-Value of 30.

BUYER: _____ DATE: 10/24/03

BUYER: _____ DATE: 10/24/2003

SELLER: _____ DATE: 10/24/03

SELLER: _____ DATE:



## BETHEL KNOLL

*"Enlarges the Ordinary"*
W. B. Professional Amenities Featured In Every Home

**QUALITY CONSTRUCTION DETAILS OF W.B. HOMES:**




COLDWELL BANKER   REALTY CORP. ASSOCIATES

Case# 2018-19272-100 Docketed at Montgomery County County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

## EXCEPTIONALLY EQUIPPED GOURMET KITCHEN

## LUXURIOUS BATHROOM FEATURES

## GRACIOUS EXTERIOR APPOINTMENTS

## ENERGY EFFICIENT DESIGN AND MAINTENANCE FREE EXTERIOR

## PHASE II RADON PROTECTION PROCEDURE

## SITE IMPROVEMENTS

## WARRANTY AND SERVICE

## OPTIONS AND CUSTOMIZING







COLDWELL BANKER
REALTY CORP. ASSOCIATES

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661





Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661



Rear Elevation

Preliminary Plans for
The McGinnes Residence
WB Homes Inc.



Side Elevation

Preliminary Plans for
The McGinnes Residence
WB Homes Inc.

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661



Side Elevation

Version 5 - 4754 Total Square feet
October 6, 2020
Preliminary Plans for
The Mc Ginnis Residence
WB Homes Inc.

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Appellate and Trial Court Rules of the Pennsylvania Case Records Public Access Policy that require filing confidential information and documents differently than non-confidential information and documents. Unified Judicial System of Pennsylvania



First Floor Plan

Add 4' Storage

Version 5 - 4754 Total Square feet
October 6, 2020
Preliminary Plans for
The Mc Ginnis Residence
WB Homes Inc.

Received and Filed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. This filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania.

1 of 1

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661



Second Floor Plan

Basement Plan

Version 5 - 4754 Total Square feet
October 6, 2008
Preliminary Plans for
The Mc Ginnis Residence
WB Homes Inc.

# EXHIBIT D



Firefox



**EXHIBIT E**

Firefox   https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Case# 2018-19272-00 Docketed at Montgomery County Prothonotary on 09/21/2020 4:45 PM. Fees $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



BETHEL KNOLL

*A Single Family Estate New Home Community Built by WB Homes, Inc.*

## "Escape the Ordinary"
### W.B. Trademark Amenities Featured In Every Home

### QUALITY CONSTRUCTION DETAILS OF W.B. HOMES

- Three (3) car side entry garage standard on all models with three (3) ceiling outlets for future garage door openers
- 9'0" 1st floor ceilings with 42" high wall cabinets
- 10" thick monolithically poured concrete basements with asphalt damp proofing
- Steel I-beam beam construction in basement
- 3/4" tongue and groove plywood sub-flooring, glued and nailed
- Floating basement slab construction with sump pit/liner, sump pump, and 6" to 8" stone bedding under basement slab
- Certainteed "Shangle" architectural dimensional shingles with a 25 year warranty
- "Ridge vent" attic ventilating system
- 200 AMP electric service with circuit breaker panel in basement *
- U.L. Approved electric wired smoke detectors; one (1) on each floor plus one (1) in each bedroom
- Three (3) carbon monoxide detectors; one (1) on each floor
- Two (2) outside electrical outlets, one (1) front and one (1) rear
- Electric door chimes at front door
- Pre-wiring for six (6) telephones and six (6) cable T.V. outlets
- Recessed toilets throughout
- Two (2) Exterior hose bibs; one (1) on each side of home
- Laundry facilities complete with washer/dryer hookup, dryer vent, laundry tub, and shelf above

### DESIGNER INTERIORS FOR GRACIOUS LIVING

Two story models complimented by:

- Four (4) bedrooms, three (3) full baths (in most models) and powder room; dual powder room and opt. 5th bedroom available on selected models
- Owner's suite with walk-in closet(s), private bath and sitting room *
- Dramatic and spacious "volume ceilings" are standard in Family Room and Owner's Suite
- Wood burning fireplace in family room with glass doors, stucco chimney, and (3) piece marble surround with flush marble hearth and Mt. Vernon wood mantle surround
- Front and secondary staircase
- Dramatic two (2) story entry foyer with 3/4" polyurethane finished oak hardwood flooring *
- Custom built foyer staircase with stained oak risers, treads, railing and newel posts, painted balusters
- Traditional custom W.B. Homes millwork including:

1/4

- "Roman" - raised two (2) panel arched top smooth interior doors
- Distinctive brass escutcheon plates on selected interior doors
- Three (3) piece chair rail molding in dining room and octagonal tray ceiling above with detail and crown moldings
- Bold three (3) piece crown moldings in foyer, second floor hallway, and living room
- Distinguished millwork treatment accenting selected wood round openings in foyer
- Rounded drywall corners throughout
- Vinyl covered ventilated wire shelving in closets
- Quality wall to wall carpeting in an array of colors with "Scotchgard Stain Release" protection and a "Five Year Wear Date" guarantee *

* In Selected Models

## EXCEPTIONALLY EQUIPPED GOURMET KITCHEN

Layouts and features for family and gourmet's delight:

- 42" high kitchen wall cabinets with crown molding
- Jenn-Air Appliances including:
  - Double built-in electric wall oven; both ovens self cleaning
  - Natural gas built-in cooktop with sealed burners
  - Microwave above cooktop with exhaust fan vented to outside, and light
  - "Six Tier" wash system dishwasher
- Pantry closets providing additional storage
- Extensive choices of Kitchen cabinets featuring cherry, oak, maple, or painted; all with adjustable shelves, slide out trays, selection of stains, door styles and hardware
- "Corian" kitchen countertops with integral Corian double bowl sink and Corian back splash with with "Kohler Coralais" single pull out spray faucet
- Polyurethane finished oak hardwood in standard areas of kitchen/ breakfast area
- Recessed high hat lighting above kitchen sink with six (6) additional high hats in kitchen
- Ice maker line to refrigerator space

## LUXURIOUS BATHROOM FEATURES

- Luxurious two (2) person whirlpool tub complimented by a ceramic tile platform is standard in Owner's bath
- Separate ceramic stall shower in Owner's bath
- Owner's bath with "Volume ceiling" and skylight *
- "Wet bed" means tile floors laid diagonally in all Baths; 6" x 6" ceramic tile on all walls of tub & shower surrounds
- Custom cherry, oak or maple vanities; drawers in Owner's bath with hardware
- Beautiful one (1) piece cultured marble vanity tops and sinks
- Decorator styled recessed medicine cabinets in all baths *
- Pedestal sink in powder room(s) with oval beveled edge mirror above; polyurethane finished hardwood on floor; brass finished plumbing fixtures in formal powder room only
- Moen single lever washerless faucets
- Moen post-lamp anti-scald fixtures for all tubs/showers

* In Selected Models

## GRACIOUS EXTERIOR APPOINTMENTS

- Wide selection of exterior brick, siding, stucco, stone and paint colors allow your home to reflect "YOU"

2/4

Firefox

New Home Construction Montgomery County PA, Pa Real estate New Home Builders Montgomery County Pennsylvania Home Builders ...

## ENERGY EFFICIENT DESIGN AND MAINTENANCE FREE EXTERIOR

- Keystone Energy Technicians "CAULK AND SEAL PROGRAM" virtually eliminates air infiltration and assures each homeowner maximum comfort and economy
- Insulation values of R-30 at ceilings and R-16 at exterior walls (except garage)
- "Warm and Efficient" Natural Gas heat, hot water and cooking
- "York" 80+ efficiency natural gas hot air heat with central air; two zone systems standard on selected models
- 75 gallon natural gas hot water heater
- Insulated and weather-stripped exterior doors with adjustable thresholds on selected doors
- Insulated supply trunk lines on heating system
- "Andersen" vinyl clad, double hung wood windows featured with high performance "Low E" glass; screens and grills on all windows
- "Andersen" Perma-shield sliding patio doors with screen and grill standard
- Custom oversized, beaded vinyl siding for that "Authentic Colonial Williamsburg" look
- Vinyl shutters - paneled on first floor and second floor with selected models featuring louvered on second floor
- Pre-finished metal raised panel garage doors never need painting

## PHASE II RADON PROTECTION PROCEDURE

- Crushed stone base (6"-8") under basement slab
- Plastic vapor barrier between basement slab and stone base
- Sump pit bucket with lid
- 3" P.V.C. stack beneath basement slab through attic and extending through the main house roof for venting if radon is detected after home is built

## SITE IMPROVEMENTS

- Large "Estate Lots" on private cul-de-sac with tree lined perimeter
- Underground utilities, concrete rolled curb and gutter
- Public water and natural gas
- Mainfield Way to be dedicated to and be maintained by Worcester Township
- Street trees along Mainfield Way

## WARRANTY AND SERVICE

- Full pre-settlement demonstration and inspection prior to settlement with W.B. Homes representative
- Post settlement service inspection
- W.B. Homes, Inc. 2 Year Builder Warranty

## OPTIONS AND CUSTOMIZING

- We realize the importance of customizing our plans to make our house into your "DREAM HOME". We offer a complete list of standard options in our Option Manual. We will also consider your own customizing idea.
- At W.B. Homes, we also realize every decision you make regarding your "DREAM HOUSE" is an important one. That's why your "color selection process" will be done directly with our

Subject to errors, omissions and changes without notice

## Community Links

### Bethel Knoll Homepage • Home Models • Contact Us For Info



All information is deemed reliable but is not guaranteed. Properties that are shown are subject to change, prior sale or withdrawal. Neither listing brokers nor information providers shall be responsible for any typographical errors, misinformation, or misprints, and shall be held totally harmless.





Case# 2018-19272-0, Docketed at Montgomery County Prothonotary on 08/07/2018 3:44 PM, Fee = $0.00, The Annexed or attached document(s) complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information differently than non-confidential information.

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

# EXHIBIT F



**About W.B. Homes**

"Our goal is to make the new home experience for our customers one of the most pleasurable and exciting experiences of their lives." In 1986, with this very simple and straight forward concept on which to build, W.B. Homes was formed. In the years since then, W.B. Homes has worked hard to earn a very successful and enviable reputation in the home building industry. With a resume that includes more than 45 completed communities and over 1000 satisfied customers, co-owners William Bonenberger and John Breitmayer have built this reputation by caring deeply about the same things our homebuyers care about. Our total commitment to the following five objectives has been, and will continue to be, crucial to our company's success.

- OFFER MODERN, SPACIOUS, FUNCTIONAL HOME DESIGNS FOR TODAY'S CHANGING LIFESTYLES
- BUILD COMMUNITIES IN HIGHLY DESIRABLE LOCATIONS WITH EASY ACCESSIBILITY TO SCHOOLS, SHOPPING AND MAJOR HIGHWAYS
- PROVIDE THE HIGHEST LEVEL OF QUALITY WORKMANSHIP
- PROVIDE "VALUE" BY INCLUDING FEATURES THAT ARE CONSIDERED UPGRADES AT OTHER COMMUNITIES
- ENSURE TOTAL CUSTOMER SATISFACTION

Each of our homes is as unique as the client we build it for. Each step and detail of the building process is carefully checked to assure that each home meets our high standards of excellence. This attention to detail ensures a finished product that both the new homeowner and W.B. Homes can be proud of. At W.B. Homes we welcome "Customizing." We offer an extensive list of Options in our "Option Manual," and we'll be glad to consider your own customizing ideas. The purchase of one of our homes includes the services of our Professional Staff to assist you in making color selections, choosing cabinets, countertops, flooring, and much more. In the end, we want to be sure that your new home is personalized and reflects who "YOU" are.



**Click here** for information about Montgomery County, Pennsylvania.

# EXHIBIT G

Firefox

**HW HORN WILLIAMSON**

Jennifer M. Horn
Managing Member

June 15, 2018

**VIA ELECTRONIC MAIL**
Mark C. Clemm, Esquire
Law Offices of Clemm and Associates LLC
488 Norristown Road, Suite 140
Blue Bell, PA 19422

Re:   William McGinnis and Rose Marie McGinnis
      2573 Muirfield Way, Lansdale, Pennsylvania

Dear Mr. Clemm:

We received and reviewed your letter dated June 14, 2018. First, Pennsylvania's Statute of Repose does not bar the McGinnis Family's claims. We reject your interpretation to the contrary and refer you to the language of the Statute of Repose, which provides:

(a) General rule.—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:
(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
(2) Injury to property, real or personal, arising out of any such deficiency.
(3) Injury to the person or for wrongful death arising out of any such deficiency.
(4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3)

(b) Exceptions.—
(1) If an injury or wrongful death shall occur more than ten and within 12 years after completion of the improvement a civil action or proceeding within the scope of subsection (a) may be commenced within the time otherwise limited by this subchapter, but not later than 14 years after completion of construction of such improvement.

Horn Williamson, LLC
Attorneys at Law
2 Penn Center | Suite 1700
1500 JFK Boulevard
Philadelphia, PA 19102
tel 215-987-3800
www.hornwilliamson.com

---

**HW HORN WILLIAMSON**

Mark C. Clemm, Esquire
Page 2 of 2

Here, in light of the Statute of Repose exception, which applies to real property, as well as the fact that the McGinnis House was not constructed in accordance with the applicable building code (thus taking them out of the protection of the Statute of Repose), we are confident in the merits of the claims.

Second, we do not reject the Builder's attempts to tender performance. Rather, the scope of work provided is incomplete and does not address all systemic building code violations. We welcome a discussion in this regard and invite you to submit a complete scope of work.

Finally, you failed to answer the question as to whether the Omnia Group consents to arbitration. What is your position in this regard? If we cannot achieve resolution, the dispute resolution provision that your client drafted compelling arbitration applies and we will proceed accordingly. The McGinnis Family reserves all rights and waives none.

Kind regards.

HORN WILLIAMSON LLC

Jennifer M. Horn



Firefox

# EXHIBIT H

Case# 2018-19272- Verified Complaint for the Montgomery County Unified Judicial System

EXHIBIT "C"

Exhibit No.: 1

Project: **Bethel Knoll**

Model: **Northbury Country Manor**

Lot No.: **5**

Garage to be built on: Left Hand

The AGREEMENT OF SALE made the 12th day of October, 2011, A.D. between W.B. HOMES, INC. and William & Rose Marie McDaniel BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction change orders are subject to final approval of the SELLER. SELLER'S responsibility for execution of any option shall be limited to the cost paid by BUYER, and any such variation shall not invalidate the Agreement.

| DESCRIPTION | AMOUNT |
|---|---|
| 1. The first floor walls will be 9'-0" high with 42" high wall cabinets | $ N/C |
| 2. Incorporate the kitchen, breakfast area and family room layout of the Birmingham Collection. This option will add 4,495 square feet of living space between the first floor and second floor of the home. On the second floor, the placement of bedroom #3 and the high volume ceiling area of the family room will be switched. The second floor hall bath will connect between bedroom #3 and the family room high volume ceiling. The width of the second floor hallway overlooking the family room will be broadened to 6'-6" width and will feature a cantilevered balcony with painted poplar balusters and a stained oak railing. The family room ceiling will be a flat 18'-2" high ceiling continuous with the second floor ceiling. Additional floor space will be provided at the back stair intermediate landing featuring a window seat, a triple Andersen window with fielding operable casement windows and a center fixed picture window and ½ circle top window above. This option provides the same kitchen cabinet layout as the Birmingham model as was discussed, this option increases the width of the family room from 17'-8" to 19'-5". The exterior windows in these rooms (kitchen, breakfast area, family room and bedroom #3) will be the standard size and style windows utilized on the Birmingham Collection. | $54,225.00 |
| 3. Bump-out the rear wall of the family room by 2'-0", including a full basement foundation. This option adds 48 square feet of additional living space to the home. The family room is 6'-19'-0" x ±2'-0"; 3'-0" deeper than the family room in the Greenbrier Estate model home. | $ 4,060.00 |

1

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

18. Add a stupt water table with a bibcrate sill on the front wall of the garage only. This includes the 2"-0" return wall at the partial front wall bump out. The return will between the front wall of the garage and the house shall receive vinyl siding. $ 3,225.00

19. High Efficiency Furnace; converts the standard 80% gas furnace to "High Efficiency" direct vent 92+ gas furnace and converts the standard gas hot water heater to a direct vent model. This will eliminate the need for the standard vertical 'B' vent chimney for the furnace and water heater. Both furnace and hot water heater will be vented through a horizontal p.v.c. pipe through the band joist. $ 3,775.00

20. Substitute pre-finished oak hardwood strip flooring, Bruce Dundee (Natural, Gunstock, Fruitwood, Cherry) with polyurethane finish in the first floor hallway (between the foyer and the laundry room) in lieu of the standard carpeting. $ 2,150.00

21. Paint Package - custom paint colors: one (1) color for the walls, one (1) color for ceilings and one (1) color for trim. Buyer will choose from one of the paint schemes noted in the Bethel Knoll option manual. All colors selected from the "Sherwin-Williams" color chart, option price based on Buyer's selection of all upgrades noted above. Total square footage of house is 4,254 square feet. $ 4,715.00

22. Sentry back-up sump pump system with marine battery (Zoller #505-005) in lieu of the standard sump pump. $ 975.00

23. Substitute Andersen AR31 awning windows with hardsted glass, grids and screens in lieu of the standard wood printed awning windows. Window rough opening is 3'-1/2" wide by 1'-5 ¼" high. In accordance with the grading plan there will be approximately 2'-0" of the exposed basement foundation wall. Providing an awning window higher in height may require the need to install window wells. We try to avoid the use of window wells. Three (3) windows at $ 395.00 each. $ 1,185.00

※ 24. "Buyer shall receive a 5% discount on all options purchased through Seller". Options (#1 - #23) listed above totaling $121,115.00 X 5% = $6,055.75 $(6,055.75)

---

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED BY BUYER SHALL BE CREDITED AT ONLY 95% OF THE ORIGINAL COST."

For the total cost of : One Hundred Twenty Four Thousand Five Hundred Fifty Nine Dollars and Twenty Five Cents

| | |
|---|---|
| Cash or Buyer's Check at Signing of this Exhibit C: | $124,559.25 |
| Cash or Buyer's Certified Check at Settlement: | $ 0.00 |
| | $124,559.25 |

BUYER: _____     DATE: 10/14/03

BUYER: _____     DATE: 10/13/03

SELLER: _____     DATE: 10/14/03

SELLER: _____     DATE:

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Making a change to Kitchen
welding with Century     should be done
                         7/21

EXHIBIT "C"

Project: Bethel Knoll                    Exhibit No.: 2

Lot No.: 5                               Model: Newbury Country Manor

The AGREEMENT OF SALE made the 11th day of October, 1981, A.D. between W.B. HOMES, INC., and William A. Rose Marie McGlinch, BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction change orders are subject to final approval of the SELLER. SELLER'S responsibility for omission of any option shall be limited to the cost paid by BUYER; and any such omission shall not invalidate the Agreement.

| DESCRIPTION | AMOUNT |
|---|---|
| 1. Vinyl shutters on second floor front elevation to be painted in lieu of the standard louvered shutters. Color to be #122 Midnight Green. | N/C |
| 2. Marble threshold in all full bathrooms (master bath, hall bath and bedroom #3 (hall accessible bath #2) and bedroom #4 (bath #2) shall be "Bone Travertine." | N/C |
| 3. Pre-finished oak hardwood flooring strip flooring in the dining room. Bruce "Double." Color to be Gunstock. | $ 2,875.00 |
| 4. Pre-finished oak hardwood strip flooring in the living room. Hardwood shall be Bruce "Double", color to be Gunstock. | $ 2,850.00 |
| 5. Interior subwork to the basement shall be finished to the same standards as the remainder of the main house living space. Status to be fully carpeted. | N/C |
| 6. Main foyer stairs between the first floor and second floor shall receive painted risers in Cabinetry White #SW1927 (semi-gloss). Stair risers shall be composed of yellow pine; treads shall remain white grade oak. | $ 325.00 |
| 7. Install two (2) 2" diameter p.v.c. conduits from basement to attic space for future wiring. One (1) on each side of the house. Two (2) conditions at $225.00/each. | $ 490.00 |
| 8. Exterior floodlight package includes two (2) double head floodlights on rear aspect of main house controlled by a 3-way switch at the rear door of the morning and master bedroom. Also includes one (1) set of double head floodlights above the garage with a switch at the door between the garage and main house. Refer to the Buyer's electrical plan for desired locations. | $ 595.00 |
| 9. Add two (1) double head floodlights on the side of the main house opposite the garage (floodlight accessible from the master bath side window). Floodlight shall be on the same 3-way switch as the interior floodlight package. | $ 145.00 |
| 10. Add a motion detector to the set of double head floodlights above the garage doors. | $ 95.00 |
| Note: In conformance with Worcester Township ordinances for Bethel Knoll, the double head floodlights mounted to the house cannot be placed in excess of 13'-6" above the first floor elevation. | |
| 11. Add a door bell at the side laundry room door that is tied in with the front door chime, but has a different ringing tone than the door bell at the front door. | $ 100.00 |
| 12. Gas line to the clothes dryer in lieu of the standard 220 volt electric line. | $ 295.00 |
| 13. Two (2) electronic digital programmable thermostats. Two (2) conditions at $375.00/each. | $ 750.00 |
| 14. Arched painted wood ceilings between the foyer/living room and foyer/ living room. Each opening 8'-0" x 3'-4" with 6½" finger jointed jamb, flat ¾ Atlantic head with 5/4" x 8" MDF (medium density fiberboard) border, finger joint ¾ Atlantic legs with 5/4" x 6" MDF border. No keystone at the head of the flat arched opening. Pitch blend at the transition joint where the vertical stand-up legs meet the arched ceiling. Two (2) conditions at $1,000.00/each. | $ 2,000.00 |
| 15. Arched painted wood casing between the foyer and stair staircase. This 10'-3" arched head, 12" deep will be fabricated at Doylestown Lumber, scribed and installed on-site by trimmer. | $ 1,275.00 |
| 16. Insulate and drywall all exterior walls of the garage, not commonly drywalled. Does not include window or door wood casings, nor paint. | $ 1,325.00 |
| 17. Thermostatically-controlled attic fan. | $ 550.00 |

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

18. Fireplace high hat package includes two (2) eyeball high hats over the fireplace with a switch. High hats placed a minimum of 3'-0" from the rear wall of the family room. Refer to the Buyer's electrical plan for desired locations.          $ 325.00

19. Recessed high hat above showerbath with switch in the following locations:
    • Master bath
    • Bath #2
    • Bath #3
    These (3) conditions at $175.00/each. Refer to the Buyer's electrical plan for desired locations.          $ 525.00

20. Paddle fan and speed control wiring with brace in the family room. Installation of fan and speed control switch purchased by Buyer included. Refer to the Buyer's electrical plan for desired location.          $ 210.00

21. Add a high hat package consisting of four (4) high hats with a switch in the family room. Refer to the Buyer's electrical plan for desired locations.          $ 550.00

22. Add a switch at the front door to a junction box in the basement for future landscape lighting. Refer to the Buyer's electrical plan for desired location.          $ 150.00

23. Add a switch at the rear door of the morning room to a junction box in the basement for future landscape or deck/patio lighting. Refer to the Buyer's electrical plan for desired location.          $ 150.00

24. Two (2) switches in the kitchen (both to the right of the main sink, beneath kitchen window inside looking out) to two (2) junction boxes; one (1) for future lighting (hard wired) under kitchen wall cabinets and one (1) for future lighting (hard wired) above kitchen wall cabinets. Refer to the Buyer's electrical plan for desired location.          $ 300.00

25. Orientation of the wall switches to the right of the primary kitchen sink shall be;
    • Garbage disposal, high hat above sink, fixture under cabinet lighting, fixture above wall cabinet lighting.          N/C

26. Wall sconce wiring, includes pre-wiring and switch to two (2) wall mounted fixture boxes (54" in from wall, 36" down from ceiling) for future wall sconces in dining room. Buyer will pay the cost of the fixture; Seller's electrician will wire and install. Refer to the Buyer's electrical plan for desired location.          $ 225.00

27. One (1) recessed high hat with switch in living room. High hat to be placed a minimum of 6'-0" from side wall, in alignment with right side of fireplace facing (inside looking out). Refer to the Buyer's electrical plan for desired location.          $ 200.00

---

28. Substitute 12" x 18" Gres Artisan; Carrel (laid diagonally) with #109 Sand Beige grout; 1/16" wide grout lines in the kitchen, morning room and pantry closet in lieu of the standard Bruce "Dundee" pre-finished hardwood flooring.          $ 5,185.00

29. Substitute 12" x 12" marble – Crhma Marfil (laid diagonally), grout color to be determined by Buyer; 1/16" wide grout lines in the foyer, formal powder room and hall closet adjacent to library in lieu of the standard Bruce "Dundee" pre-finished hardwood flooring.          $ 5,935.00

30. Substitute stucco on the sides and rear of the main house and garage.

    Notes: All walls of the optional daylight basement foundation stairwell shall receive stucco. Stucco shall be applied on exterior walls down to finish grade. Quantity and square feet price confirmed, adjusting credit for the standard vinyl siding.          $ 16,500.00

31. Add a gas line terminating inside each fireplace firebox for future gas logs. Two (2) conditions at $250.00 each.          $ 500.00

32. Add a switch at the rear foyer door to junction box in the basement for future landscape or deck/patio lighting. Refer to the Buyer's electrical plan for desired location.          $ 150.00

33. Holiday lighting package includes adding up to eleven (11) outlets (total) directly under each window on the front elevation of the house and garage. All of these outlets will be tied together and energized by a single switch located in the master bedroom.          $ 925.00

34. Seven (7) additional outlets wired to the holiday lighting package. All windows on the front elevation of main house and garage, including garage return wall. Seller to provide an unfinished wood sill at windows located in cold storage space, roof drawers, garage and secondary staircase cold-loading windows. Seven (7) outlets at $75.00/each.          $ 525.00

35. Drywall instead openings between the family room and kitchen/morning room shall receive 54" high half-walls with wood cap and apron.          N/C

36. Underslab plumbing rough-in for a future powder room in the basement. Price includes all underslab plumbing required for toilet and vanity. Also includes the rough-in pit for the sleeper ejector system with piping. Does not include pump or finish plumbing.          $ 3,495.00

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 03/07/2020 4:43 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Firefox

37. Buyer elects to delete the standard vinyl shelving from the areas designated:

- Master bedroom walk-in closet     (72")
- Bedroom #3 wall closet     (7')
- Bedroom #4 walk-in closet     (42")
- Laundry room     (72)

Total linear feet of shelving deleted:     (128") at $ 2.40/l.f.

CREDIT     ($ 308.00)

*Notes: Vinyl shelf above washer/dryer hook-up in the laundry room will remain. Buyer's disccount of 3% will not apply at this option.*

38. Three (3) flush mount ceiling light fixtures to be converted to recessed high hats in the first floor rear hall and alongside main stairwell. Three (3) conditions at $60.00/each. High hats will be wired in 3-way-switches. Refer to the Buyer's electrical plan for desired locations.     $ 180.00

39. Add one (1) wall outlet above each fireplace mantel. Outlet shall be mounted horizontally in wall, maximum of 2" above the mantel. Refer to the Buyer's electrical plan for desired location.

- Living room fireplace: 59" above the subfloor
- Family room fireplace: 72" above the subfloor with an extra 12" loop of wires so the receptacle may be set in the stone veneer (above mantel) by stone mason.     $ 150.00

40. Add one (1) wall outlet in first floor foyer across from stairs to basement. Refer to the Buyer's electrical plan for desired location.     $ 75.00

41. Add one (1) wall outlet in second floor hallway to the left of the master bedroom doors. Refer to the Buyer's electrical plan for desired location.     $ 75.00

42. Add one (1) wall outlet in library (side wall). Refer to the Buyer's electrical plan for desired location.     $ 75.00

43. Add one (1) wall outlet in laundry room (same wall as washer/dryer hook-ups). Refer to the Buyer's electrical plan for desired location.     $ 75.00

44. Add three (3) high hats with a switch in the library. Refer to the Buyer's electrical plan for desired locations.     $ 475.00

45. Add two (2) exterior carriage light fixtures on not to exceed either of overhead garage doors. Switch shall be placed in main foyer. This option does not include the cost of the fixtures themselves. Buyer will pay the cost of the fixtures; Seller's electrician will wire and install. Refer to the Buyer's electrical plan for desired locations.     $ 225.00

46. Add two (2) G.F.I. wall outlets in the garage. Outlets to be placed a minimum of 42" above the garage slab. Refer to the Buyer's electrical plan for desired locations. Two (2) conditions at $ 125.00/each.     $ 250.00

47. Provide three (3) recessed high hats with a switch in lieu of one (1) ceiling light supplied by Buyer installed by Seller's electrician in the laundry room. Refer to the Buyer's electrical plan for desired locations.     $ 260.00

48. All cabinet is kitchen, baths and dressing area in bedroom #4 shall receive doorkicker hardware.     N/C

49. Add six (6) additional recessed high hats in the kitchen, totaling thirteen (13) high hats. Allowance is for a total of seven (7) high hats.

- One (1) high hat with switch above kitchen sink at kitchen window.
- Four (4) high hats with switch above island.
- Eight (8) high hats with switch above kitchen perimeter countertop.

Six (6) conditions at $112.50 each. Refer to the Buyer's electrical plan for desired locations.     $ 675.00

50. Custom heavy glass frameless shower enclosure 34"x 48" x 75" height, 90" corner unit with buttress wall. Chrome Geneva hinges and 6" deco pull in lieu of standard chrome framed shower enclosure. Refer to the attached sheet.     $ 2,950.00

*Note: This option price does not include converting the remaining chrome/brass hardware to plumbing fixtures to polished nickel.*

51. Nutone built-in ironing center; #AVD50N with white door. Rough opening shall be 14 1/8"x 49 ½" x 3 7/8" deep. Wall opening above the floor will be 22" providing a working height ironing board of 13"-33"-37". Ironing center to be placed in the laundry room. Refer to the attached sheet.     $ 895.00

52. Buyer requests for the kitchen ceiling H.V.A.C. diffuser closest to the cooktop to be deleted.     N/C

53. Doorsets previously selected on Exhibit C; Exhibit #1; Item #14 shall receive chrome veneer (sides and front) with an fluted pilaster on the front.     N/C

54. Front entrance door and sidelites shall be a stained entry door system. Price of option will be determined. Buyer specifying to Seller, door manufacturer, model number, glazing style and stain color. Seller will not be responsible for the weathered, faded appearance, a common characteristic of a stained simulated wood grain door. Price of option will include a door blank purchased by Seller and installed during construction. Wood door to be installed and outlined at the final stage of house construction.     TBD

1 of 1     5/26/2020, 12:14 PM

Firefox

Case 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | | |
|---|---|---|
| 55. | The return wall between the front wall of the garage and the house shall receive stucco and not vinyl siding as previously referenced on Exhibit C; Exhibit #1; Item #18. | N/C |
| 56. | Aluminum railing color for optional daylight basement referenced on Exhibit C; Exhibit #1; Item #13 shall be Bronze. | N/C |
| 57. | Plumbing fixture color for powder room (formal and secondary), master bath, including whirlpool tub shall be Biscuit. | N/C |
| 58. | Optional Version II stone family room fireplace facing (previously selected on Exhibit C; Exhibit #1; Item #7) shall receive an 18" raised bluestone hearth. | N/C |
| 59. | Triple window height on the rear wall of the morning room shall be 6' – 11 3/8". | N/C |
| 60. | Morning room sliding patio door shall be an Andersen FSGR, 6'-0" x 6'-8" with grids as per the Greenbriar Estates model home. | N/C |
| 61. | Reference Exhibit C; Exhibit #1; Item #21 calling for custom paint package. Buyer has selected the following colors: | |

| | | | |
|---|---|---|---|
| | • Walls: | Believable Buff | #SW6120   (flat) |
| | • Ceilings: | Collector's White | #SW1907 (flat) |
| | • Trim: | Collector's White | #SW1907 (semi-gloss) | N/C |

| | | |
|---|---|---|
| 62. | Delete the soap dish in the master bath shower. | N/C |
| 63. | Custom kitchen "Ultimate Gourmet Package". Cabinet selection shall be the Century Line; Carriage House; Windstone; Pearled Mocha. Countertop shall be a granite; "Dakran Mahogany"; level II with an "ogee" nosing on the island and "full bullnose" on the perimeter countertop in lieu of the standard Corian level IV. | $ 20,385.00 |

Below is an illustration of the upgraded features.

1. Oversized wall cabinet above refrigerator space.
2. Custom refrigerator door panels.
3. Full length filler on each side of refrigerator; one (1) with end panel to provide that built-in and greater appearance.
4. Base cabinet for cooking pans.
5. Custom ice maker door panel.
6. Additional SB30 sink base with tilt down tray for secondary kitchen sink.
7. 39" wall cabinet above sink featuring mullion glass doors. The interior skin of cabinets with glass doors need to receive the same finish as the exterior of the cabinets.
8. Custom wine cooler door panel, which Buyer chose to delete.

9. Wall corner cabinet with mullion glass doors.
10. Ramp end wall cabinets (by 3") flanking wall mounted Grohs. This requires additional custom for crown and bottom trim moldings on cabinets.
11. Wall-mounted Oxygenia is a knock down unit, which requires on-site assembly of a dozen components.
12. SB36I base drawer unit housing a trashbag. This unit will be banged out from the face of the flanking base cabinets and featuring fluted balusters on each side.
13. Angled wall cabinet WBFC3042 flanking the left side of the kitchen window.
14. Dual trash can base cabinet.
15. Sink base cabinet with tilt tray banged out from the face of the flanking base cabinets and featuring fluted balusters on each side.
16. Custom dishwasher door panel.
17. Angled base cabinet to the right of the dishwasher.
18. Angled wall cabinet WBC2442R flanking the right side of the kitchen window.
19. Angled wall cabinet WB48X2842L flanking the wall cabinet above the angled base cabinet to the right of the dishwasher with mullion glass door panel.
20. Under counter single oven and microwave requiring the construction of shelf platforms to support the appliances.
21. Fluted end panel fillers.
22. Bead board veneer panels.
23. Sculptured under counter supports.
24. BTBM1 beaded top bottom molding added to the two front horizontal rails of the wall cabinets.

*Note:  Seller shall reduce the system price of option #62 from $24,640.00 to $ 20,385.00 This reduction includes the deletion of a door panel for the wine cooler supplied "by others". This reduced option price includes the 3% discount extended to the Buyer from the Seller.*

| | | |
|---|---|---|
| 64. | Substitute an Elkay ELUHS2112L double bowl stainless steel undermount kitchen sink in lieu of the standard Corian ST72 undermount bowl. | $ 745.00 |
| 65. | Substitute one Grohe 33759SDO holy hot plus kitchen faucet in stainless in lieu of the standard Kohler "Cordale" 6K15160 faucet in standard color. | $ 315.00 |
| 66. | Rough and finish plumbing for a Moen #22351 Exupelet single bowl undermount stainless steel sink (14 x 16) with a grommet faucet. | $ 985.00 |
| 67. | One (1) Grohe #28751SDO deluxe extra long soap dispenser in stainless steel. | $ 325.00 |

Case 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Firefox

Case# 2015-19272-10 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

68. One (1) Everpure 6EH30 cold water dispenser and filter system.                                  $   450.00

69. Project Coordinator, Patrick Shire, shall notify the Buyer at the time
    of releasing the work order to MacLaren Fabrication, Inc. Buyer will                             N/C
    be selecting the granite slab at MacLaren Fabrication, Inc.

70. Buyer shall mark on the subfloor of the breakfast area the desired location
    for the hanging breakfast area ceiling light. This must be done upon                            N/C
    completion of the rough framing of the house, prior to commencement of
    the rough wiring.

71. The kitchen island shall receive two (2) outlets – one (1) on each end,
    placed horizontally and as high as possible in the cabinet beneath the                          N/C
    underside of the island granite countertop.

72. Buyer chose a pre-wire package for telephone from IM Resources.
    Seller shall credit Buyer for the six (6) standard telephone jacks                      CREDIT  ($  145.00)
    provided by Seller's electrician.

    Note: Buyer's discount of 5% will not apply to this option.

73. Buyer chose to delete the standard appliances. Buyer will supply the
    appliances, Seller will install. Buyer acknowledges that Seller will
    not be responsible for the theft, damage (dings, dings, dents) missing
    parts, operation of, and all warranties associated with appliances supplied
    by Buyer. Additional kitchen appliances supplied by Buyer; wine cooler,
    refrigerator, and ice maker may have specific electrical requirements.
    Upon receiving model numbers and cut sheets of appliances from Buyer,
    Seller will determine the additional electrical requirements.

    Oven:           Jenn-Air #JJW8630 CAB (black on black);            ($972.00)
                    double electric oven
    Microwave:      Jenn-Air #JVM2196AAB                               ($300.00)
    Dishwasher:     Jenn-Air #JDB3610 (black on black)                 ($255.00)
    Cooktop:        Jenn-Air #JGC8430ADB (black on black) cooktop      ($375.00)
    Garbage Disposal: Jenn-Air #LC20-C disposal with stand            ($ 35.00)
                                                                      CREDIT   ($ 1,990.00)

    Note: Buyer's discount of 5% will not apply to this option.

74. Buyer shall receive a 5% discount on all options purchased through Seller.
    Options (#1 - #73) except option #69 previously discounted and options #77,
    #72 and #73 which are credits. Option total (except options #37, #63, #72 & #73)  CREDIT  ($ 2,933.00)
    is $58,650.00 x 5% = $2,933.80

---

Case# 2015-19272-10 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED
BY THE BUYER SHALL BE CREDITED AT ONLY 85% OF THE ORIGINAL COST."**

For the total Sum of: Seventy Four Thousand Two Hundred Thirty Nine Dollars        $74,239.00

Cash or Buyer's Check at Signing of this Exhibit C:                                      0.00

Cash or Buyer's Certified Check at Settlement:                                     $74,239.00

BUYER: _____                      DATE: 7/11/04

BUYER: _____                      DATE: 7/11/04

SELLER: _____                      DATE: 7/14/04

SELLER: _____                      DATE: 7/15/04

1 of 1                                                                         5/26/2020, 12:14 PM

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 03/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.





Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee =$0.00. The filer certifies that this filing complies with the provisions of the Unified Judicial System





Case 2018-19272-100 Docketed at Montgomery County Prohibitory on 05/07/2020 4:43 PM, Fee = $0.00. The filer certified that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Page 3

**Quote for Master Bathroom**

Customer: Bethel Kee / Lot 8          Job Reference: W.B. Homes

Refer To Option #50



# NuTone

## PressRite Built-in Ironing Center
### "Deluxe"
### MODEL AVD50N

Refer To Option #51

Firefox

https://courtsapp.montcopa.org/psi/7/detail/Case/201155661

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:45 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



Refer to Opti

EXHIBIT "C"

Project: Bethel Knoll                                          Exhibit No.: 3

Lot No.: 5                                          Model: Newbury Country Manor

The AGREEMENT OF SALE made the 17th day of October, 2003, A.D. between W.B. HOMES, INC. and William & Rose Maria McGinnis, BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction change orders are subject to final approval of the SELLER. SELLER'S responsibility for omission of any option shall be limited to the cost paid by BUYER; and any such omission shall not invalidate the Agreement.

| DESCRIPTION | AMOUNT |
|---|---|
| 1. Substitute the front entry door system: | |
| • a Therma-Tru 1'-2' x 3'-0" x 1'-2" x 6'-8", with SS210 with CS309FSL sidelights and a elliptical transom with a grill above with brick molding. | |
| to | |
| • a Therma-Tru Classic Craft Mahogany Embossed entry door 1'-0" x 3'-0" x 1'-0" x 6'-8" with CCM709 door with Avantia black nickel casning, CCM3309 sidelights and a CCM060T (mahogany) transom above with brick molding. Jamb thickness is 4 5/8". Includes mahogany jambs and a 3'-0" x 6'-8" door blank to be used during construction. | $ 6,950.00 |
| 2. Buyer shall receive a 5% discount on option; $ 6,950.00 x 5% = $ 347.50. CREDIT | ($ 347.50) |

"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED BY THE BUYER SHALL BE CREDITED AT ONLY 85% OF THE ORIGINAL COST."

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certified that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

For the total Sum of: Six Thousand Six Hundred Two Dollars Fifty Cents       $ 6,602.50

Cash or Buyer's Check at Signing of this Exhibit C:       0.00

Cash or Buyer's Certified Check at Settlement:       $ 6,602.50

BUYER: _____  DATE _7/11/__

BUYER: _____  DATE _7/11/04_

SELLER: _____  DATE _7/14/04_

SELLER: _____  DATE _7/15/04_





Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 09/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**EXHIBIT "C"**

Project: Bethel Knoll                    Exhibit No.: 4

Lot No.: 5                               Model: Newbury Country Manor

The AGREEMENT OF SALE made the 12th day of October, 2003, A.D. between W.B. HOMES, INC. and William & Sara Marie McGinnis, BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction change orders are subject to final approval of the SELLER. SELLER's responsibility for the omission of any option shall be limited to the cost paid by BUYER; and any such exclusion shall not invalidate the Agreement.

| DESCRIPTION | AMOUNT |
|---|---|
| 1.  Reference Exhibit C; Exhibit #3; Item #1 calling for a Therma-Tru Classic Craft Mahogany Embossed entry door. Buyer has selected Minwax "Dark Walnut" #2716 for the stain color. | N/C |

**"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED BY THE BUYER SHALL BE CREDITED AT ONLY 85% OF THE ORIGINAL COST."**

For the total Sum of: Zero Dollars                       $   0.00

Cash or Buyer's Check at Signing of this Exhibit C:      $   0.00

Cash or Buyer's Certified Check at Settlement:           $   0.00

BUYER: _____    DATE: 7-11-2004

BUYER: _____    DATE: _____

SELLER: _____    DATE: 7/14/04

SELLER: _____    DATE: 7/8/04

Case 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

RECEIVED AUG 1 1 2004          EXHIBIT "C"

Project: Brekel Knoll                                    Exhibit No.: 5

Lot No.: 5                                   Model: Newbury Country Manor

The AGREEMENT OF SALE made the 13th day of October, 2003, A.D. between W.B. HOMES, INC. and William & Rose Marie MacHenis, BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction changes orders are subject to final approval of the SELLER. SELLER'S responsibility for omission of any option shall be limited to the cost paid by BUYER; and any such omission shall not invalidate the Agreement.

| DESCRIPTION | | | AMOUNT |
|---|---|---|---|
| 1. Reference Exhibit C; Exhibit #2; Item #29 ceiling tile 12" x 12" Crème Marfil marble tile in the foyer, formal powder room and half closet. Buyer has selected Hydroment Class Stone #5187 with 1/16" grout joints. | | | N/C |
| 2. Revise bedroom #4 bath/closet layout. Refer to the architectural plans. Revisions made on architectural plans and in Buyers possession. | | | $ 200.00 |
| 3. Add one (1) 2-panel "Krama" pocket door in bedroom #4 at entry to closet. Refer to the architectural plans. | | | $ 475.00 |
| 4. Upgrade the master bath floor tile from standard 6" x 6" ceramic tile to Crema Laguna, laid diagonally to the floor only. | | | |
| • Floor tile: Crema Laguna (CCT19791) – 13" x 13" | | | |
| • Wall tile: Crema Laguna (CCT65005) – 8" x 13" | | | $ 2,625.00 |
| 5. Add the following "Accent Tile" to the master bath: | | | |

| | Tub Deck Face | Tub Splash | Shower Eye Level |
|---|---|---|---|
| • Listello (CCT65002) 2" x 6" | $ 550.00 | $ 400.00 | $ 250.00 |
| • Chair Rail (CCT65002) 2" x 13" | $ 660.00 | $ 480.00 | $ 305.00 |
| • Pencil (CCT65027) | $ 525.00 | $ 385.00 | $245.00 |

*Note: Please see attached drawing and photo for installation placement.*

                                                          $ 3,800.00

---

| | | AMOUNT |
|---|---|---|
| 6. Delete the soap dish in the master bath shower and replace with two (2) corner shelves. First shelf to be placed 11" down from the top corner of wall tile, the second shelf to be placed 18" down from the first shelf. | | $ 210.00 |
| 7. Move the electrical box for bathroom fixture in the larger vanity area of the master bath, to be centered on wall over vanity area. | | N/C |
| 8. Delete the kickplate on the front door. | | N/C |
| 9. Re-locate additional wall receptacle in the library/study to the outside wall, back corner, towards windows. | | N/C |
| 10. Buyer shall receive 5% discount on all options purchased through Seller. Option total (#1 - #9) is $ 7,310.00 x 5% = $ 365.50. | CREDIT | ($ 365.50) |

"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED BY THE BUYER SHALL BE CREDITED AT ONLY 85% OF THE ORIGINAL COST."

For the total Sum of: Six Thousand Nine Hundred Forty Four Dollars Fifty Cents

| | |
|---|---|
| Cash or Buyer's Check at Signing of this Exhibit C: | $ 6,944.50 |
| | $ 0.00 |
| Cash or Buyer's Certified Check at Settlement: | $ 6,944.50 |

BUYER: _[signature]_                    DATE: 8/10/04

BUYER: _[signature]_                    DATE: _____

SELLER: _[signature]_                   DATE: 8/12/04

SELLER: _John R. Gayl—Vesbo_           DATE: 8/14/04

---

5/26/2020, 12:16 PM

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions t Unified Judicial System of Pennsylvania Case Records...





Garden State 1-14 - Samitzer

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**RECEIVED AUG 1 7 2004**

EXHIBIT "C"

Project: Bethel Knoll                 Exhibit No.: 6

Lot No.: 5                            Model: Newbury Country Manor

The AGREEMENT OF SALE made the 12th day of October, 2003, A.D. between W.B. HOMES, INC. and William & Rose Marie McGinnis, BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction change orders are subject to final approval of the SELLER. SELLER's responsibility for omission of any option shall be limited to the cost paid by BUYER; and any such omission shall not invalidate the Agreement.

| DESCRIPTION | AMOUNT |
|---|---|
| 1. Reference Exhibit C, Exhibit #2: Item #13 deleting the standard appliances. Seller shall supply and install the standard garbage disposal, Insin-Air #1/26-G disposal with cord. | N/C |

**"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED BY THE BUYER SHALL BE CREDITED AT ONLY 85% OF THE ORIGINAL COST."**

| | |
|---|---|
| For the total Sum of: Zero Dollars | |
| Cash or Buyer's Check at Signing of this Exhibit C: | $ 0.00 |
| Cash or Buyer's Certified Check at Settlement: | $ 0.00 |

BUYER: _____   DATE: 8/16/04

BUYER: _____   DATE: 8/16/04

SELLER: _____   DATE: 8/17/04

SELLER: _____   DATE: 8/17/04

---

EXHIBIT "C"

Project: Bethel Knoll                 Exhibit No.: 7

Lot No.: 5                            Model: Newbury Country Manor

The AGREEMENT OF SALE made the 12th day of October, 2003, A.D. between W.B. HOMES, INC. and William & Rose Marie McGinnis, BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction change orders are subject to final approval of the SELLER. SELLER's responsibility for omission of any option shall be limited to the cost paid by BUYER; and any such omission shall not invalidate the Agreement.

| DESCRIPTION | AMOUNT |
|---|---|
| 1. Provide additional electrical outlets at the following locations for audio system being installed by World Wide Stereo. | |
| • Provide one (1) interior outlet in the corner of the kitchen for a future T.V. Location already marked in house. | $ 75.00 |
| • Provide a 20 amp dedicated outlet in the family room where audio components will be placed. Location already marked in house. | $ 150.00 |
| • Add one (1) outlet in the master bedroom closet for CATV box. Location to be determined by Buyer. | $ 75.00 |
| • Provide a 20 amp dedicated outlet on basement wall opposite service panel. Location already marked in house. | $ 150.00 |
| • Add one (1) CATV outlet in corner of the kitchen for a future T.V. Location already marked in house. | $ 75.00 |
| • Add one (1) CATV outlet in the master bedroom closet. Location to be determined by Buyer. | $ 75.00 |
| 2. Buyer shall receive a 5% discount on all option purchased through Seller. Option #1 total is $ 600.00 x 5% = $ 30.00. | ($ 30.00) CREDIT |

**"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED BY THE BUYER SHALL BE CREDITED AT ONLY 85% OF THE ORIGINAL COST."**

5/26/2020, 12:16 PM

For the total Sum of: Five Hundred Seventy Dollars          $   570.00

Cash or Buyer's Check at Signing of this Exhibit C:         $     0.00

Cash or Buyer's Certified Check at Settlement:              $   570.00

BUYER: _____  DATE: 9-16-2004

BUYER: _____  DATE: _____

SELLER: _____  DATE: 9/20/04

SELLER: _____  DATE: _____

Case#: 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

---

EXHIBIT "C"

Project: Bethel Knoll                           Exhibit No.: 8

Lot No.: 5                                       Model: Newbury Country Manor

The AGREEMENT OF SALE made the 11th day of October, 2003, A.D. between W.B. HOMES, INC. and William & Rose Marie McGinnis, BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction change orders are subject to final approval of the SELLER. SELLER's responsibility for execution of any option shall be limited to the cost paid by BUYER; and any such omission shall not invalidate the Agreement.

| DESCRIPTION | | AMOUNT |
|---|---|---|
| 1. | Install a 2"x 2" grid cast floor tile in the master bath shower floor. Color will be A34 Almond Proof by American Olean. | $ 450.00 |
| 2. | Buyer shall receive a 5% discount of all options purchased through Seller. Option #1 total is $ 450.00 x 5% = $ 22.50. | CREDIT ($ 22.50) |

"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED BY THE BUYER SHALL BE CREDITED AT ONLY 50% OF THE ORIGINAL COST."

For the total Sum of: Four Hundred Forty Five Dollars Fifty Cents       $   445.50

Cash or Buyer's Check at Signing of this Exhibit C:                     $     0.00

Cash or Buyer's Certified Check at Settlement:                          $   445.50

BUYER: _____  DATE: 9-1-2004

BUYER: _____  DATE: _____

SELLER: _____  DATE: 9/20/04

SELLER: _____  DATE: _____

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

EXHIBIT "C"

Project: Bethel Knoll                                    Exhibit No.: 9

Lot No.: 5                                               Model: Newbury Country Manor

The AGREEMENT OF SALE made the 12th day of October, 2003, A.D. between W.B. HOMES, INC. and William & Rose Marie McGinnis, BUYER, concerning the above-referenced lot and model is hereby modified as follows:

BUYER hereby authorizes and offers to SELLER the right to make the following construction changes and/or additions in and to the new home to be constructed for the BUYER on the captioned premises. All Exhibit "C" construction change orders are subject to final approval of the SELLER. SELLER'S responsibility for omission of any option shall be limited to the cost paid by BUYER; and any such omission shall not invalidate the Agreement.

| DESCRIPTION | AMOUNT |
|---|---|
| 1.  Delete Exhibit C; Exhibit #7; Items #1 and #2 calling for additional electrical outlets for audio system. These items have already been paid for, or are included in the standard features. | |
|     CREDIT | ($ 570.00) |

**"ANY OPTIONS WHICH ARE PURCHASED BY BUYER AND LATER DELETED BY THE BUYER SHALL BE CREDITED AT ONLY 85% OF THE ORIGINAL COST."**

| | |
|---|---|
| For the total Credit of: Five Hundred Seventy Dollars | ($  570.00) |
| Cash or Buyer's Check at Signing of this Exhibit C: | $    0.00 |
| Credit at Settlement: | ($  570.00) |

BUYER: _____    DATE: 9-15-2004

BUYER: _____    DATE: _____

SELLER: _____   DATE: 9/2/04

SELLER: _____   DATE: _____

# EXHIBIT I

1054

**RESIDENTIAL NEW**
**APPLICATION FOR A USE AND OCCUPANCY PERMIT**

PARCEL # 67-00-00825-04-5          BLDG PERMIT # 6485
BLOCK & LOT          UNIT # 624

Application is hereby made for a permit for the Use and Occupancy of a structure and/or premises or lot, as follows: (identify and describe premises and/or lot, use proposed, and its best use and approximate date):

SINGLE FAMILY DWELLING

LOCATION OF PROPERTY, OR STRUCTURE 2575 MUIRFIELD WAY

ELIJAH & ROSE McCONNON
LIST NAME OF NEW OWNER OF RECORD

( X )   PERMIT ISSUED WITH NO CONDITIONS

(   )   PERMIT ISSUED WITH CONDITIONS SEE ATTACHED SHEET

Owner and Applicant agree that if the permit is issued, not to hold the Township liable in any manner whatsoever in the Use and/or Occupancy of the above referenced matter.

DATE: 11/16/04          SIGNATURE OF APPLICANT:                          Leib Homes, INC.

**PERMIT**

The above requested Use and Occupancy seems to be substantially in conformance with alleged uses in the district in which it is located, or has been duly granted by the Zoning Hearing Board (ZHB), permission is hereby granted for the use and occupancy of the above, so long as pertinent State and Township regulations (including any conditions that might have been imposed by the regulatory authority) are complied with. Furthermore, this Permit is issued without assuming any liability in any manner whatsoever, on the part of the Township of Worcester, or its agents.

DATE: 11/17/04          (Authorized agent for Worcester Township)

Under Section 2604 and as amended by Ordinance No. 115 of the Zoning Ordinance: A Use and Occupancy permit shall be required prior to any of the following:

A.   Use and Occupancy of any building or other structure hereafter erected or altered.

B.   Changes in use of any building or structure.

C.   Use of land or change in use thereof, except that the placing of vacant land under cultivation shall not require a use and occupancy permit.

D.   Change in use or extension of a non-conforming use.

It shall be unlawful for any person to use or occupy any building or other structure or until a use and occupancy permit has been duly issued therefor.

# EXHIBIT J

Firefox

NORTH PENN ABSTRACT CO.

Filed 41467

Return To: North Penn Abstract Co.
35 Green Street, Lansdale, PA 19446

# This Indenture Made the 19th

day of _____
In the year of our Lord two thousand five (2005)

Between

Penn Gwyn, L.P., a PA Limited Partnership

(hereinafter called the Grantor(s), of the one part), and

William McGinnis and Rose Marie McGinnis, Husband and Wife

(hereinafter called the Grantee(s), of the other part);

Witnesseth That the said Grantor(s) for and in consideration of the sum of Three Hundred Nine Thousand Five Hundred Fifty County and No/100 (349,550.75) DOLLARS lawful money of the United States of America, unto them well and truly paid by the said Grantee(s), at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has/have granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these presents do/does grant, bargain, sell, alien, enfeoff, release and confirm unto the said Grantee(s) his/her/their Heirs and Assigns, as tenants by the entireties

Premises known as: 2573 Midsfield Way
Worcester Township, Montgomery County, PA

ALL THAT CERTAIN lot or piece of ground situate in the Township of Worcester, County of Montgomery and Commonwealth of Pennsylvania being bounded and described according to a Subdivision Plan of Bethel Koof made by Sidimore & Cassin, Consulting Engineers, Inc., dated 6/28/2002 and last revised 10/22/2002 and recorded in the Office of the Recorder of Deeds of Montgomery County at Norristown, Pennsylvania in Plan Book 22 page 173, as follows to wit:

BEGINNING at a point on the Southeasterly side of Midsfield Way cul-de-sac ... 

- Being Lot No. 5

Being County Parcel No. 67-00-00325-04-9

BEING PART OF THE SAME Premises which Robert P. Nestor and Diane L. Nestor, Husband and Wife by Indenture bearing date the 5th day of December, 2003 and recorded on the 16th day of January, 2004 in the Office of the Recorder of Deeds, in and for the County of Montgomery in Deed Book No. 5490 page 1563, granted and conveyed unto Penn Gwyn, L.P. a PA Limited Partnership, in fee.

BEING PART OF THE SAME Premises which Elmer R. Nestor and Eleorth Lee Nestor, Husband and Wife by Indenture bearing date the 5th day of December, 2003 and recorded on the 16th day of January, 2004 in the Office of the Recorder of Deeds, in and for the County of Montgomery in Deed Book No. 5490 page 1547, granted and conveyed unto Penn Gwyn, L.P. a PA Limited Partnership, in fee.

UNDER AND SUBJECT to Restrictions of Record.

1 of 1

5/26/2020, 12:17 PM

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

State of Pennsylvania }
County of Montgomery } ss.

DEED

Penn Oreyn, L.P. : a Pd Limited Partnership

TO

William McGinnis and Rose Maria McGinnis, Husband and Wife

**North Penn Abstract Co., Inc.**
**35 Green Street**
**P.O. Box 2**
**Lansdale, PA 19446**

Firefox

Case# 2018-19272-0 Docketed at Montgomery County Prothonotary on 08/14/2018 3:01 PM, Fee = $8.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT K

---

EXHIBIT "A"
HOMEOWNER'S SERVICE POLICY &
HOMEOWNER'S FIVE (5) YEAR WARRANTY

**HOMEOWNER'S SERVICE POLICY**

W.B. Homes, Inc. has strived to construct your new home carefully and in full accordance with accepted home building practices. We have performed continuous inspections along its development and, where required, your home has been certified by local building inspectors. However, as with any newly constructed product, your home may need some minor adjustments and corrections. Our philosophy is aimed at continuing to satisfy homeowners after settlement as well as before.

As with any efficiently run business, however, we find it necessary to adhere to specific rules and routines which will hopefully expedite our service and your satisfaction. Our process helps lessen the possibilities of errors or misunderstandings regarding our service policy. We, therefore, ask for your help. Please follow the procedures outlined below so that a coordinated and cooperative effort can be made in servicing your new home.

**SERVICE PROCEDURES:**

Your strict compliance with the following procedures are required for maximum benefits.

1.  PRE-SETTLEMENT WALK THRU: Just prior to possession of your home, we will meet you at our home for the purpose of introducing you to any of the important working elements, including appliances, plumbing, electrical, heating and cooling systems, and other interior and exterior features. You'll also learn about your carpeting, painting and movable parts such as windows and doors.

    During your Pre-Settlement Walk Thru, together we will pinpoint items/areas that may need additional attention and make arrangements to have them corrected. One of the main objectives of the Pre-Settlement Inspection is too call out any "scratches, marks or imperfections" in any finished materials such as cabinets, plumbing fixtures, countertops, flooring, etc., that exist prior to settlement. Unless there are "scratches, marks or imperfections" noted on Pre-Settlement Inspection Form, it will be assumed that none exist.

    At the conclusion of the "Walk Thru", you will be asked to sign a list acknowledging what items need additional attention. Every effort will be made to complete these repairs within thirty (30) days.

    At this time, we'll also answer any questions that you may have and make sure you understand the proper warranty procedure for covered components here and will correct all aspects of construction.

1

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

We're sure you will find your Pre-Settlement Walk Thru an informative experience. When we hand you your keys, we want you to feel as confident as we do that your new home will bring you many years of comfort and happiness.

2. **POST SETTLEMENT LIST (FINAL LIST):** After you move into your home, you may find some items that require additional attention. Instead of submitting individual request forms for each item, we ask that you wait until you've been in your home at least sixty (60) days, but no longer than 13 months. At any time within that 9 month window, but preferably after your home has gone thru one (1) complete heating season, please send us a single list of items that you believe require correction and are covered by your Warranty. It is important that you read your warranty thru prior to preparing your Post Settlement List to make sure the items you listed are covered by your warranty.

Please understand that the "POST SETTLEMENT LIST" is the final list we do. If you choose to send in your Post Settlement List sooner rather than waiting until the 11 months mark, your house may not be done settling and drying out. Therefore you may have additional settlement cracks, nail pops, etc. which will be your responsibility to correct. We strongly suggest waiting until your house has gone thru one complete heating season before sending us your Post Settlement List.

To ensure accurate communications and minimize misunderstandings, please submit all service requests in writing, not by telephone. With the exception of emergencies (see below), only written requests will be accepted.

Upon receipt of your "Post Settlement" list, (if necessary) we will make an appointment to examine the items on your post settlement list to determine the items that are covered by warranty and make an appointment to perform the necessary service. Please be sure that you have thoroughly read through your Warranty documents before preparing your "Post Settlement" list to confirm that the items you are listing are our responsibility under the Warranty. Upon completion of the service work, you will be asked to sign a "sign off" sheet acknowledging that the work has been completed to your satisfaction.

3. **IN CASE OF EMERGENCY:** Of course, emergency repairs takes full priority! These are conditions that either make the house unlivable or can cause further damage if not handled immediately.

At your Pre-Settlement Walk Thru, you will be provided with an "Emergency Contractor's List." Emergency calls should be reported directly to the W.B. Homes, Inc. office first. Only if you have not been able to contact a W.B. Homes representative should your calls be placed directly with the contractor's on the Emergency List. Miscellaneous warranty items should never be phoned in directly to contractors. If it is necessary for you to use the Emergency List, please make sure that W.B. Homes, Inc. is notified of all such emergency requests on the following business day.

4. **THIS WARRANTY IS NOT TRANSFERABLE.**

2

---

## HOMEOWNER'S FIVE (5) YEAR WARRANTY

W.B. HOMES, INC. agrees to correct any item in your home which does not meet the standards as indicated on the attached sheets.

**Please note that the Terms of this Warranty will last for five (5) years from the date you make "Final Settlement" for items under the category of "Major Structural Defects", as listed on pages #39 – #40. The term of the Warranty for all other topics within this Warranty is one (1) year from the date of "Final Settlement".**

TOPIC: Site Work

**SITEGRADING**

Possible Deficiency:

Setting of ground around foundation, utility trenches or other areas.

Performance Standard:

Settling of ground around foundation walls, utility trenches or other filled areas.

Responsibility:

Settlement can and often does occur around foundations and utility trenches after the first year. It is the Homeowner's responsibility to raise the grade in these areas periodically to maintain positive grade and water flow away from the home. Failure to do this can and often does affect the structure adversely.

**SITE DRAINAGE**

Possible Deficiency:

Improper drainage of the site.

Performance Standard:

The necessary grades and swales shall have been established by the Builder to insure proper drainage away from the home. Standing or ponding water shall not remain for extended periods in the immediate area of the home after a rain (generally no more than 24 hours), except that in swales which drain other areas, or in areas where sump pumps discharge may be wet and can be anticipated to remain wet for a longer period. The possibility of standing water after an

3

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

unusually heavy rainfall should be anticipated by the Homeowner. No grading determination shall be made while there is frost or snow on the ground, or while the ground is saturated.

Responsibility:

The Builder is responsible only for initially establishing the proper grades and swales. Owner is responsible for maintaining such grades and swales once they have been properly established by the Builder.

TOPIC: Shrubs, Trees, Grass, Plantings ███████████

LANDSCAPING

Possible Deficiency:

Shrubs, Trees, Plantings, Lawn die

Responsibility:

Builder will remove dead plantings and replace provided Homeowner has taken proper efforts to water and care for them.

Lawn Care:

It is the homeowners responsibility to water and propagate growth of lawn. The quality and quantity of growth is in direct proportion to the amount of effort of fertilizing, aerating, over seeding, and watering by the homeowner and is the homeowners responsibility.

TOPIC: Concrete ███████████

Discoloration of Stone or Brick:

Effervescence in brick and stone can cause staining or discoloration. The existing of effervescence is a natural process.

Responsibility:

Builder is not responsible for discoloration or staining of stone or brick

Discoloration of Concrete:

Responsibility:

Builder is not responsible for discoloration or staining of concrete. In the event of a repair builder can not be responsible for any color variation.

4

EXPANSION AND CONTRACTION JOINTS

Possible Deficiency:

Separation or movement of concrete slabs within the structure at expansion and contraction joints.

Performance Standard:

Concrete slabs within the structure where designed to move at expansion and contraction joints.

Responsibility:

None

CAST IN-PLACE CONCRETE

Possible Deficiency:

Cracks in sidewalk concrete. Sidewalk concrete cracks shall not exceed ¼" in width or ¼" in vertical displacement.

Responsibility:

Builder will repair or replace. Builder can not be responsible for color variation.

Possible Deficiency:

Basement or foundation wall cracks.

Performance Standard:

Shrinkage cracks are not unusual in concrete foundation walls. Such cracks greater than 1/8 inch in width shall be repaired.

Responsibility:

Builder will repair cracks in excess of 1/8 inch width.

Possible Deficiency:

Cracking of basement floor.

5

Firefox

Performance Standard:

Minor cracks in concrete basement floors are normal. Cracks exceeding 3/16 inch in width or 1/8 inch in vertical displacement shall be repaired.

Responsibility:

Builder will repair cracks exceeding maximum tolerance by surface patching or other methods as required.

Possible Deficiency:

Cracking of slab in attached garage.

Performance Standard:

Cracks in garage slabs in excess of 1/4 inch in width of 1/4 inch in vertical displacement shall be repaired.

Responsibility:

Builder will repair cracks exceeding maximum tolerance by surface patching or other methods as required.

Possible Deficiency:

Uneven concrete floor/slabs.

Performance Standard:

Except for basement floors or where a floor or portion of floor has been designed for specific drainage purpose, concrete floors in rooms designed for habitability shall not have pits, depressions or areas of unevenness exceeding 1/4 inch in 32 inches.

Responsibility:

Builder will correct or repair to meet the Performance Standard.

Possible Deficiency:

Cracks in concrete slab-on-grade floors with finish flooring.

6

Performance Standard:

Cracks which rupture the finish flooring material shall be repaired.

Responsibility:

Builder will repair cracks, as necessary, so as not to be readily apparent when the finish flooring material is in place (See also "Finishes.")

Possible Deficiency:

Pitting, scaling or spalling of concrete.

Performance Standard:

Concrete suppliers will not guarantee their product to us and we can not guarantee it to you. Any repairs and/or replacement of concrete due to scaling or pitting will be the responsibility of the Homeowner.

Responsibility:

None

Possible Deficiency:

Settling, heaving, or separating of stoops, sets, or garage floors.

Performance Standard:

Stoops, steps or garage floors shall not settle, heave, or separate in excess of 1 inch from the house structure.

Responsibility:

Builder will take whatever corrective action is required to meet the Performance Standard.

Possible Deficiency:

Standing water on stoops.

Performance Standard:

Water should drain from outdoor stoops and steps. The possibility of minor water standing on stoops for a short period after rain can be anticipated (generally no more than 24 hours).

7

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Responsibility:**

Builder shall take corrective action to assure drainage of steps and stoop.

**DRIVEWAY BLACK TOP:**

**Possible Deficiency:**

Black top surface damage.

**Responsibility:**

When black top is hot, surface damage can result from turning of wheel of vehicle and is the homeowners responsibility. Heavy vehicles on black top can result in depressions in driveway and is the homeowners responsibility. It is recommended that homeowners seal driveway within the first year.

**TOPIC: Masonry**

**UNIT MASONRY**

**Possible Deficiency:**

Basement of foundation wall cracks.

**Performance Standard:**

Small cracks not affecting structural stability are not unusual in mortar joints of masonry foundation walls. Cracks greater than 1/8 in width shall be repaired.

**Responsibility:**

Builder will repair cracks in excess of 1/8 inch by pointing or patching. These deficiencies shall be repaired and repairs made during the first year warranty period.

**Possible Deficiency:**

Cracks in masonry walls or veneer.

**Performance Standard:**

---

Small hairline cracks due to shrinkage are common in mortar joints in masonry construction. Cracks greater than 3/8 inch in width are considered excessive.

**Responsibility:**

Builder will repair cracks in excess of Performance Standard by pointing or patching. These repairs shall be made during the first year Warranty period. Builder will not be responsible for color variation between old and new mortar.

**TOPIC: Marble**          **COVERAGE: 1st Year Only**

**Possible Deficiency:**

Marble is not smooth and has veins in it.

**Responsibility:**

Marble is a natural product and will have veins running throughout, this will result in an uneven surface and is not considered a deficiency.

**Possible Deficiency:**

Cracks in marble

**Responsibility:**

Cracks not reported at closing are the homeowners responsibility.

**TOPIC: Wood and Plastic**

**ROUGH CARPENTRY**

**Possible Deficiency:**

Floor squeak or subfloor appears loose.

**Performance Standard:**

Floor squeaks and loose subfloor are often temporary conditions common to new home construction, and a squeak proof floor can not be guaranteed.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Responsibility:**

Builder will correct the problem only if caused by an underlying construction defect.

**Possible Deficiency:**

Uneven wood floors.

**Performance Standard:**

Floors shall not have more than 1/4 inch ridge or depression within any 32 inch measurement when measured parallel to the floor. Allowable floor and ceiling joist deflections are governed by the Approved building code.

**Responsibility:**

Builder will correct or repair to meet Performance Standard.

**Possible Deficiency:**

Bowed walls.

**Performance Standard:**

All interior and exterior walls have slight variances on their finished surfaces. Bowing of walls should not detract from or blemish the wall's finished surface. Walls should not bow more than 1/4 inch out of line within any 32 inch vertical measurement parallel to the stud.

**Responsibility:**

Builder will repair to meet Performance Standard.

**Possible Deficiency:**

Out-of-plumb walls.

**Performance Standard:**

Walls should not be more than 1/4 inch out of plumb for any 32 inch vertical measurement.

**Responsibility:**

Builder will repair to meet the Performance Standard.

10

---

**Wood Decks:** Wood decks made from pressure treated and cedar can and will check and crack. Homeowners must seal all decks; rail, stairs etc..., with an approved wood sealer.

**Builder Responsibility:** None

**FINISH CARPENTRY (INTERIOR)**

**Possible Deficiency:**

Railing becomes unstable

**Performance Standard:**

Hand railings are designed and installed for normal residential use by the occupants and guests. Excessive force or abuse such as shaking, hanging, stretching may cause certain railing parts to loosen and become unsafe over time.

**Responsibility:**

Builder will repair within first year only.

**Possible Deficiency:**

Poor quality of interior trim workmanship.

**Performance Standard:**

Joints in molding or joint between moldings and adjacent surface shall not result in open joints exceeding 1/8 inch in width.

**Responsibility:**

Builder will repair defective joints, as defined. Caulking is acceptable.

**FINISH CARPENTRY (EXTERIOR)**

**Possible Deficiency:**

Poor quality of exterior trim workmanship.

**Performance Standard:**

Joints between exterior trim elements, including siding and masonry, shall not result in open joints in excess of 3/8 inch. In all cases the exterior trim, masonry and siding shall be capable of performing its function to exclude the elements.

11

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 03/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-con...

Responsibility:

Builder will repair open joints, as defined. Caulking is acceptable. ▊▊▊▊▊▊

TOPIC: Thermal & Moisture Protection

SUMP PUMPS:

Sump pumps should be periodically checked to ensure proper operation. This is especially true during rainstorms and during periods of heavy snow melting. Sump pump can stick during normal operation and sometimes the float will stick. If not periodically checked by the homeowner. Areas of discharge can be expected to leave a wet area.

Responsibility:

It is the Homeowner responsibility to ensure proper operation of sump pumps and that floats operate without obstruction.

Possible Deficiency:

Water in the trough

Responsibility:

The trough is designed to carry water to the sump pump. Water can be anticipated in the trough and is not considered a deficiency.

WATERPROOFING

Possible Deficiency:

Leaks in basement.

Performance Standard:

Leaks resulting in actual trickling of water shall be repaired. Leaks caused by improper landscaping installed by Owner, or failure of Owner to maintain proper grades are not covered by the Warranty. Dampness of the walls or floors may occur in new construction and is not considered a deficiency.

Responsibility:

Builder will take such action as necessary to correct basement leaks except where the cause is determined to result from Owner action or negligence.

12

---

INSULATION

Possible Deficiency:

Insufficient Insulation.

Performance Standard:

Insulation shall be installed in accordance with applicable energy and building code requirements.

Responsibility:

Builder will install insulation in sufficient amounts to meet Performance Standard.

LOUVERS AND VENTS

Possible Deficiency:

Leaks due to snow or rain driven into the attic through louvers or vents.

Performance Standard:

Attic vents and/or louvers must be provided in order to properly ventilate your house.

Responsibility:

None.

ROOFING AND SIDING

Roofing and siding are designed to resist precipitation under NORMAL weather conditions. High and gusty winds can cause shingles and siding to become loose and remove them from their fasteners.

Possible Deficiency:

Shingles/Siding becomes unfastened.

Responsibility:

Shingles / Siding will be repaired within first year only.

13

Case 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Possible Deficiency:**

Ice build-up on roof.

**Performance Standard:**

During prolonged cold spells, ice build-up is likely to occur at the eaves of a roof. This condition occurs when snow and ice accumulate and gutters and downspouts freeze up.

**Responsibility:**

It is the Homeowners responsibility to remove snow and ice build-up that can cause ice damming. Prevention of ice build-up on the roof is an Owner maintenance item.

**Possible Deficiency:**

Roof or flashing leaks

**Performance Standard:**

Roof or flashing shall not leak under normally anticipated conditions, except where cause is determined to result from ice build-up or Owner actions or negligence.

**Responsibility:**

Builder will repair any verified roof or flashing leaks not caused by ice build-up or Owner actions or negligence.

**Possible Deficiency:**

Standing water on flat roof.

**Performance Standard:**

Water shall drain from flat roof except for minor ponding immediately following rainfall or when the roof is specifically designed for water retention.

**Responsibility:**

Builder will take corrective action to assure proper drainage of roof.

**Possible Deficiency:**

Delamination of veneer siding or joint separation.

14

**Performance Standard:**

All siding shall be installed according to the manufacturer's and industry's accepted standards. Separation and delamination shall be repaired or replaced.

**Responsibility:**

Builder will repair or replace siding as needed unless caused by Owner's neglect to maintain siding properly. Repaired area may not match in color and/or texture. For surfaces requiring paint, Builder will paint only the new materials. The Owner can expect that the newly painted surface may not match original surface in color.

**GUTTERS**

**Possible Deficiency:**

Gutters and/or downspouts leak.

**Performance Standard:**

Gutters and downspouts shall not leak but gutters may overflow during heavy rain.

**Responsibility:**

Builder will repair leaks. It is the Homeowner's responsibility to keep gutters and downspouts free of leaves and debris which could cause overflow.

**Possible Deficiency:**

Water standing in gutters.

**Performance Standard:**

When gutter is unobstructed by debris, the water level shall not exceed one (1) inch in depth. Industry practice is to install gutters approximately level. Consequently, it is entirely possible that small amounts of water will stand in certain section of gutters immediately after a rain.

**Responsibility:**

Builder will correct to meet Performance Standard.

15

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## SEALANTS

Possible Deficiency:

Leaks in exterior walls due to inadequate caulking.

Performance Standard:

Joints and cracks in exterior wall surface and around openings shall be properly caulked to exclude the entry of water.

Responsibility:

Builder will repair and/or caulk joints or cracks in exterior wall surfaces as required to correct deficiencies once, during the first year Warranty period. Even properly installed caulking will shrink and must be maintained by the Homeowner during the life of the home.

TOPIC: Doors and Windows

## WOOD AND PLASTIC DOORS

Possible Deficiency:

Warpage of exterior doors.

Performance Standard:

Exterior doors will warp to some degree due to temperature differential on inside and outside surfaces. However, they shall not warp to the extent that they become inoperable or cease to be weather resistant or exceed National Woodwork Manufacturers Association Standards (1/4 inch, measured diagonally from corner to corner).

Responsibility:

Builder will correct or replace and refinish defective doors, during the first year Warranty period.

Possible Deficiency:

Warpage of interior passage and closet doors.

Performance Standard:

Interior doors (full openings) shall not warp in excess of National Woodwork Manufacturers Association Standards (1/4 inch).

16

Responsibility:

Builder will correct or replace and refinish defective doors to match existing doors as closely as possible, during the first year Warranty period.

Possible Deficiency:

Shrinkage of insert panels show raw wood edges.

Performance Standard:

Panels will shrink and expand, and may expose unpainted surface.

Responsibility:

None.

Possible Deficiency:

Split in door panel.

Performance Standard:

Split panels shall not allow light to be visible through the door.

Responsibility:

Builder will, if light is visible, fill split and match paint or stain as closely as possible, one time in first year Warranty period.

## Hardware, Fixtures, Brass Hardware:

Door knobs, kick plates, frames, screws etc., will tarnish and can pit, settle, or rust. This is especially true for any item on the exterior of the house, because the acid rain and weather conditions cause the erosion of brass fixtures and hardware.

## GLASS

Possible Deficiency:

Broken or scratched glass.

Performance Standard:

None.

17

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Responsibility:**

Broken or scratched glass not reported prior to settlement is the homeowners responsibility.

**Possible deficiency:**

Moisture buildup on inside of skylight.

**Responsibility:**

Because bedrooms have large amounts of moisture in them and because it is not uncommon to have moisture build up on the glass of skylights. Chances are then cause it to run down and drip and is not considered a defect. It is the homeowners responsibility to remove this moisture (running fan during unit will help).

**Bathroom Exhaust Fans:**

Must be run during showers or baths to allow excess and moisture to be removed and to convey water and mildew damage in bath rooms.

## GARAGE DOORS ON ATTACHED GARAGE

**Possible Deficiency:**

Garage doors fail to operate properly, under normal use.

**Performance Standard:**

Garage doors shall operate properly.

**Responsibility:**

Builder will correct or adjust garage doors as required, except where the cause is determined to result from Owner actions or negligence.

**Possible Deficiency:**

Garage doors allow entrance of snow or water.

**Performance Standard:**

Garage doors shall be installed as recommended by the manufacturer. Some entrance of the elements can be expected under abnormal conditions.

18

---

**Responsibility:**

Builder will adjust or correct garage doors to meet manufacturer's recommendations.

## WOOD, PLASTIC AND METAL WINDOWS

**Possible Deficiency:**

Moisture between panes of glass

**Responsibility:**

If the seal of glass to glass has been determined to have been broken. Glass will be repaired in the first year only.

**Possible Deficiency:**

Malfunction of windows.

**Performance Standard:**

Windows shall operate with reasonable ease, as designed.

**Responsibility:**

Builder will correct or repair as required.

**Possible Deficiency:**

Condensation and/or frost on windows.

**Performance Standard:**

Windows will collect condensation on interior surfaces when extreme temperature difference and high humidity levels are present. Condensation is usually the result of climate/humidity conditions, created by the Homeowner within the home.

**Responsibility:**

Unless directly attributed to faulty installation, window condensation is a result of conditions beyond the Builder's control. No corrective action required.

19

Case# 2018-19272-160 Docketed at Montgomery County Prothonotary on 05/07/2020 4:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## WEATHER-STRIPPING AND SEALS

**Possible Deficiency:**

Air infiltration around doors and windows.

**Performance Standard:**

Some infiltration is normally noticeable around doors and windows, especially during high winds. Poorly fitted weather-stripping shall be adjusted or replaced. It may be necessary for the Owner to have storm doors and windows installed to provide satisfactory solutions in high wind areas.

**Responsibility:**

Builder will adjust or correct poorly fitted doors, windows, or poorly fitted weather-stripping.

**TOPIC: Finishes**

## LATH AND PLASTER

**Possible Deficiency:**

Cracks in interior wall and ceiling surfaces.

**Performance Standard:**

Hairline cracks are not unusual in interior wall and ceiling surfaces. Cracks greater than 1/8 inch in width shall be repaired.

**Responsibility:**

Builder will repair cracks exceeding 1/8 inch in width as required; one time only, during the first year Warranty period. (See also "Painting").

## GYPSUM WALLBOARD

**Possible Deficiency:**

Defects which appear during first year of Warranty such as: nail pops, blisters in tape, or other blemished.

20

**Performance Standard:**

Slight "imperfections" such as nail pops, seam lines and cracks not exceeding 1/8 inch in width are common in gypsum wallboard installations and are considered acceptable.

**Responsibility:**

Builder will repair only cracks exceeding 1/8 inch in width, one time only, during the first year Warranty period. (See also "Painting").

## CERAMIC TILE

**Possible Deficiency:**

Ceramic tile cracks or becomes loose.

**Performance Standard:**

Ceramic tile shall not become loose.

**Responsibility:**

Builder will re-secure loose tiles unless the defects were caused by the Owner's action or negligence. Builder will not be responsible for discontinued patterns or color variations in ceramic tile. Builder will not replace cracked tiles, if not noted during initial walk thru of home.

**Possible Deficiency:**

Cracks appear in grouting of ceramic tile joints or at junctions with other material such as a bath tub.

**Performance Standard:**

Cracks in grouting of ceramic tile joints are commonly due to normal shrinkage conditions.

**Responsibility:**

Builder will repair grouting if necessary; one time only, during the first year Warranty period. Builder will not be responsible for color variations or discontinue colored grout. Regrouting of these cracks is a maintenance responsibility of the Homeowner within the life of the home.

21

Case# 2018-19272-1/G Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## FINISHED WOOD FLOORING

Possible Deficiency:

Cracks developing between floor boards.

Performance Standard:

Cracks in excess of 1/8 inch in width shall be corrected

Responsibility:

Builder will repair cracks in excess of 1/8 inch within the first year Warranty period, by filling or replacing, at Builder's option.

## RESILIENT FLOORING

Possible Deficiency:

Nail pops appear on the surface of resilient flooring.

Performance Standard:

Readily apparent nail pops shall be repaired.

Responsibility:

Builder will correct nail pops which have broken the surface. Builder will repair or replace, at Builder's option, resilient floor covering in the affected area with similar material. Builder will not be responsible for discontinued patterns or color variations in the floor covering.

Possible Deficiency:

Depressions or ridges appear in the resilient flooring due to subfloor irregularities.

Performance Standard:

Readily apparent depressions or ridges exceeding 1/8 inch shall be repaired. The ridge or depression measurement is taken as the gap created at the end of a six-inch straightedge placed over the depression or ridge with three inches of the straightedge on one side of the defect, held tightly to the floor.

22

Responsibility:

Builder will take corrective action as necessary, to bring the defect within acceptable tolerance so that the affected area is not readily visible. Builder will not be responsible for discontinued patters or color variations in flooring covering.

Possible Deficiency:

Resilient flooring loses adhesion.

Performance Standard:

Resilient flooring shall not lift, bubble or become unglued.

Responsibility:

Builder will repair or replace, at Builder's option, the affected resilient flooring as required. Builder will not be responsible for discontinued patterns or color variation of floor covering, or for problems caused by Owner neglect or abuse.

Possible Deficiency:

Seams or shrinkage gaps shown at resilient flooring joints.

Performance Standard:

Gaps shall not exceed 1/16 inch in width in resilient floor covering joints. Where dissimilar materials abut, a gap not to exceed 1/8 inch is permissible.

Responsibility:

Builder will repair or replace, at Builder's option, the affected resilient flooring as required. Builder will not be responsible for discontinued patterns or color variation of floor covering, or for problems caused by Owner neglect or abuse.

## PAINTING

Possible Deficiency:

Exterior paint or stain peels, deteriorates or fades.

Performance Standard:

Exterior paint or stains should not fail during the first year Warranty period. However, fading is normal and the degree is dependent on climatic conditions.

23

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Responsibility:

If paint or stain is deficient, Builder will properly prepare and refinish affected areas, matching color as close as possible. Where finish deterioration affects the majority of wall area, the whole area will be refinished.

Possible Deficiency:

Painting required as corollary repair because of other work.

Performance Standard:

Repairs required under this Warranty shall be finished to match surrounding areas as closely as practicable. Builder will not be responsible for color variations.

Responsibility:

Builder will finish repair areas as indicated.

Possible Deficiency:

Deterioration of varnish or lacquer finished.

Performance Standard:

Natural finishes on interior woodwork shall not deteriorate during the first year of ownership. However, varnish type finishes used on the exterior will deteriorate rapidly and are not covered by the Warranty.

Responsibility:

Builder will retouch affected areas of natural finish interior woodwork, matching the color as closely as possible.

Possible Deficiency:

Bleed through of paint.

Performance Standard:

Sap in wood can bleed through paint and cause slight browning. *This is a natural process which Builder has no control.*

24

---

Responsibility:

None

Possible Deficiency:

Mildew or fungus on painted surfaces.

Performance Standard:

Mildew or fungus will form on a painted surface if the structure is subject to abnormal exposure (i.e., rainfall, expat, lake, or river front).

Responsibility:

Mildew or fungus formation is a condition Builder can not control and is a Homeowner maintenance item, unless it is a result of non-compliance with other sections of the Quality Standards.

WALL COVERING

Possible Deficiency:

Peeling of wall covering.

Performance Standard:

Peeling of wall covering shall not occur.

Responsibility:

Builder will repair or replace defective wall covering applications.

Possible Deficiency:

Edge mismatching in pattern of wall covering.

Performance Standard:

None.

Responsibility:

None.

25

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Appellate and Trial Courts that require filing confidential information and documents differently than non-con Unified Judicial System of Pennsylvania; Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-con

## CARPETING

Possible Deficiency:

Open carpet seams.

Performance Standard:

Carpet seams will show.  However, no visible gap is acceptable.

Responsibility:

Builder will correct.

Possible Deficiency:

Carpeting becomes loose, seams separate or stretching occurs.

Performance Standard:

Wall to wall carpeting, installed as the primary floor covering, when stretched and secured properly shall not come up, become loose, or separate from its point of attachment.

Responsibility:

Builder will re-stretch or re-secure carpeting as needed, if original installation was performed by Builder.

Possible Deficiency:

Spots on carpet, minor fading.

Performance Standard:

Exposure to light may cause spots on carpet and/or minor fading.

Responsibility:

None.

26

## SPECIAL COATINGS

Possible Deficiency:

Stucco discoloration.

Performance Standard:

Rain and minerals from rain can cause discoloration on stucco.

Responsibility:

Builder can not be responsible for discoloration of stucco.

Possible Deficiency:

Cracks in exterior stucco wall surfaces.

Performance Standard:

Cracks are not unusual in exterior stucco wall surfaces.  Cracks greater than 1/8 inch in width shall be repaired.

Responsibility:

Builder will repair cracks exceeding 1/8 inch in width, one time only, during the first year Warranty period.

TOPIC: Specialties

## LOUVERS AND VENTS

Possible Deficiency:

Inadequate ventilation of attics and crawl spaces.

Performance Standard:

Attic and crawl spaces shall be ventilated as required by the approved building code.

27

Responsibility:

The Builder shall provide for adequate ventilation. Builder will not be responsible for Homeowner alterations to the original system.

FIREPLACES

Possible Deficiency:

Fireplace or chimney does not draw properly.

Performance Standard:

A properly designed and constructed fireplace and chimney shall function properly. It is normal to expect that high winds can cause temporary negative draft situations. Similar negative draft situations can also be caused by obstructions such as large branches of trees or close to the chimney. Some homes may need to have a window opened slightly to create an effective draft, if they have been insulated and weatherproofed to meet high energy conservation criteria.

Responsibility:

Builder will determine the cause of malfunction and correct, if the problem is one of design or construction of the fireplace.

Possible Deficiency:

Chimney separation from structure to which it is attached.

Performance Standard:

Newly built fireplaces will often incur slight amounts of separation. Separation shall not exceed 1/2 inch from the main structure in any 10 foot vertical measurement.

Responsibility:

Builder will determine the cause of separation and correct if standard is not met. Caulking is acceptable.

Possible Deficiency:

Firebox paint changed by fire.

Performance Standard:

None.

28

Responsibility:

None. Heat from fires will alter finish.

Possible Deficiency:

Cracked firebrick and mortar joints.

Performance Standard:

None.

Responsibility:

None. Heat and flames from "roaring" fires cause cracking.

TOPIC: Equipment

RESIDENTIAL EQUIPMENT

Possible Deficiency:

Kitchen cabinet malfunctions.

Responsibility:

Builder will not be responsible for nicks or cracks after first occupancy

Possible Deficiency:

Cracks, joint delamination and chips on countertops.

Performance Standard:

Countertops fabricated with high pressure laminate coverings shall not delaminate.

Responsibility:

Builder will repair or replace delaminated coverings to meet specified criteria. Builder will not be responsible for chips and cracks noted following first occupancy.

29

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Possible Deficiency:

Granite countertops are a natural product and may crack.

Responsibility:

None.

Possible Deficiency:

Kitchen cabinet malfunctions.

Performance Standard:

Warpage not to exceed 1/4 inch as measured from face frame to point of furthermost warpage with door or drawer front in closed position.

Responsibility:

Builder will correct or replace doors or drawer fronts.

Possible Deficiency:

Gaps between cabinets, ceiling or walls.

Performance Standard:

Acceptable tolerance 1/4 inch in width.

Responsibility:

Builder will correct to meet Performance Standard.

TOPIC: Mechanical

WATER SUPPLY SYSTEM

Possible Deficiency:

Plumbing pipes freeze and burst.

30

Performance Standard:

Drain, waste and vent, and water pipes shall be adequately protected, as required by applicable code, during normally anticipated cold weather, and as defined in accordance with ASHRAE design temperature, to prevent freezing.

Responsibility:

Builder will correct situations not meeting the code. It is the Homeowner's responsibility to drain or otherwise protect lines and exterior faucets exposed to freezing temperatures.

PLUMBING

Possible Deficiency:

Faucet or valve leak.

Performance Standard:

No valve or faucet shall leak due to defects in material or workmanship.

Responsibility:

Builder will repair or replace the leaking faucet or valve.

Possible Deficiency:

Defective plumbing fixtures, appliances or trim fittings.

Performance Standard:

Fixtures, appliances or fittings shall comply with their manufacturer's standards.

Responsibility:

Builder will replace any defective fixture or fitting which does not meet acceptable standards, as defined by the manufacturer.

Possible Deficiency:

Noisy water pipes.

31

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 09/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Performance Standard:**

There will be some noise emitting from the water pipe system, due to the flow of water. However, water hammer shall be eliminated.

**Responsibility:**

Builder can not remove all noises due to water flow and pipe expansion. Builder will correct to eliminate "water hammer".

**Possible Deficiency:**

Discolored plumbing fixtures, appliances or trim fitting.

**Performance Standard:**

Detergents, abrasives, cleaners, soaps and minerals in water can discolor plumbing fixtures, appliances and trim.

**Responsibility:**

Builder can not be responsible for discoloration that happens after the initial walk through.

**Possible Deficiency:**

Cracking or chipping of porcelain or fiberglass surfaces.

**Performance Standard:**

Chips and cracks on surfaces of bathtubs and kitchen sinks can occur when surface is hit with sharp or heavy objects.

**Responsibility:**

Builder will not be responsible for repairs unless damage has been reported to Builder prior to first occupancy.

**HEATING**

**Possible Deficiency:**

Inadequate heating.

31

**Performance Standard:**

Heating system shall be capable of producing an inside temperature of 70 degrees Fahrenheit, as measured in the center of each room at a height of 5 feet above the floor, under local outdoor winter design conditions as specified in ASHRAE handbook. Federal, state or local energy codes shall supersede this standard where such codes have been locally adopted.

**Responsibility:**

Builder will correct heating system to provide the required temperatures. However, Owner shall be responsible for balancing dampers, registers and other minor adjustments.

**REFRIGERATION**

**Possible Deficiency:**

Inadequate cooling.

**Performance Standard:**

Where air-conditioning is provided, the cooling system shall be capable of maintaining a temperature of 78 degrees Fahrenheit, as measured in the center of each room at a height of 5 feet above the floor, under local outdoor summer design conditions as specified in ASHRAE handbook. In the case of outside temperature exceeding 95 degrees Fahrenheit, a differential of 15 degrees Fahrenheit from the outside temperature will be maintained. Federal, state, or local energy codes shall supersede this standard where such codes have been locally adopted.

**Responsibility:**

Builder will correct cooling system to meet temperature conditions, in accordance with specifications.

**CONDENSATION LINES**

**Possible Deficiency:**

Condensation lines clog up.

**Performance Standard:**

None.

33

Case# 2016-19272-105 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Responsibility:

Condensation lines will clog eventually under normal use. This is a Homeowner maintenance item. Builder shall provide unobstructed condensation lines at time of first occupancy.

## EVAPORATIVE COOLING

Possible Deficiency:

Improper mechanical operation.

Performance Standard:

Equipment shall function properly at temperature standard set.

Responsibility:

Builder will correct and adjust so that blower and water system operate as desired.

## AIR DISTRIBUTION

Possible Deficiency:

Noisy ductwork.

Performance Standard:

When metal is heated it expands and when cooled it contracts. The result is "ticking" or "cracking" which is generally to be expected.

Responsibility:

None.

Possible Deficiency:

Oilcanning.

Performance Standard:

The stiffening of the ductwork and the gauge of the metal used shall be such that ducts do not "oilcan". The booming noise caused by "oilcanning" is not acceptable.

34

---

Responsibility:

Builder will correct to eliminate this sound.

TOPIC: Electrical 

## ELECTRICAL CONDUCTORS, FUSES, AND CIRCUIT BREAKERS

Possible Deficiency:

Fuses blow or circuit breakers (excluding ground fault interrupters) "kick out".

Performance Standard:

Fuses and circuit breakers shall not activate under normal usage.

Responsibility:

Builder will check wiring circuits for conformity with local, state, or approved national electrical code requirements. Builder will correct circuitry not conforming to code specifications.

## OUTLETS, SWITCHES AND FIXTURES

Possible Deficiency:

Drafts from electrical outlets.

Performance Standard:

Electrical junction boxes on exterior walls may produce air flow whereby the cold air can be drawn through the outlet into a room. The problem is normal in new house construction.

Responsibility:

None.

Possible Deficiency:

Malfunction of electrical outlets, switches or fixtures.

Performance Standard:

All switches, fixtures and outlets shall operate as intended.

35

Firefox

Case# 2018-19272-160, Docketed At Montgomery County Prothonotary On 07/27/2020 4:43 PM, Fee = $0.00. The Document(s) Associated With This Filing Complies with the provisions of
Unified Judicial System of Pennsylvania Case Records Public Access Policy And Were Filed Applicable and Were Redacted in Conformity Applicable and Were Subsequently Than non-conf

Lunny Building Diagnostics                                    McGinnis

## Table of Contents

Cover Page ............................................... 1
Table of Contents ....................................... 3
Intro Page .............................................. 4
General Summary ......................................... 7
1 Property Information .................................. 9
2 Elevation Findings ................................... 10
3 System Findings & Photos ............................. 21
4 General Summary Findings/Conclusions ................. 26
5 System Observations .................................. 27
6 Glossary of terms .................................... 28

2573 Murifield Lane                                   Page 3 of 30

---

Lunny Building Diagnostics                                    McGinnis

| Date: 3/23/2018 | Time: | Report ID: 2573MurifieldLane2018 |
| Property: 2573 Murifield Lane Lansdale PA 19446 | Customer: Mr. Bill McGinnis | Real Estate Professional: |

Dear Mr. McGinnis,

You have contracted with Lunny Building Diagnostics to perform a moisture intrusion inspection in accordance with the standards of practice established by Exterior Design Institute (EDI) & Moisture Free Warranty Corporation. Your inspector is Rob Lunny EDI Level II Building Envelope Water Management Consultant & Certified Inspector PA # 121 & MFWC # 1627.

**I. PURPOSE:** The purpose of an independent third party moisture inspection is to give an unbiased opinion as to the condition of the system as applied on the home as well as to help assess the condition of the cladding system by looking for visible installation flaws, inadequate water diversion, sealant failures and to conduct moisture readings using electronic moisture scanning devices. Please note that the provision of a scope of work and or estimates for remedial repairs is not the purpose of this inspection. Competitive estimates for repair should be obtained from at least three qualified contractors.

Further investigation may be needed to determine the extent of water damage, if any, and how best to modify your home to address any moisture problems that may be indicated by this inspection.

**II. SCOPE OF INSPECTION:** This is an exterior cladding inspection limited to the following:

A visual examination of the condition of the cladding system, exterior sealants, flashings, windows, doors, roof-to-wall transitions, parapets, gutters, deck-to-building connections, terminations and any penetrations through the system.

Conducting of electronic moisture scanning of the building envelope per Exterior Design Institute & Moisture Free Warranty Corporation protocols.

Preparing a report of our observations of potential problem areas and recording any high readings found. The readings provided in the report are accurate indicators of the presence of retained moisture at the surface of the substrate or framing wood in the area tested at that given moment in time. These readings are not recommended to be the absolute moisture content of the full thickness of the substrate or framing wood. The inspection provides information on specific areas of problems and defects. Moisture content in wood of 19% or more, over a sustained period of time can cause wood and other organic materials to deteriorate. In any areas repaired, the areas should be opened in a progressive manner until clean dry materials are found.

Any damaged areas can then be repaired. During the course of repairs we strongly recommend the use of a high quality moisture cure silicone with a low modulus of elasticity in addition to the installation of appropriate flashing & water management details.

The report only reports on the condition of the structure at the specific locations indicated. Locations are determined by the inspector according to probable areas of possible moisture intrusion and in accordance with the Exterior Design Institute protocol. No judgment is intended or given for any areas not reported on. This report is not a structural engineering inspection report.

**III. LIMITATIONS OF LIABILITY:** Because this is a limited inspection of only the areas tested, we can make no guarantees, express or implied, that our observations and random moisture readings offer conclusive evidence that no installation or moisture problems exist, or that problems found are all-inclusive. This inspection company, its employees and key divisions shall not be liable for non-visual defects, unseen defects, unspecified defects or hidden damage and conditions existing on the subject property and hereby disclaims any liability or responsibility thereof. This is not a code

2573 Murifield Lane                                   Page 4 of 30

Firefox



Case# 2018-19277- Self Represented Submission of Montgomery County Prothonotary on 10/04/2019 at 01:26 PM by N GKH, The December building inspection report complies with the provisions
Unified Judicial System of Pennsylvania / Docket Number of Montgomery County Prothonotary of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-con

**Lunny Building Diagnostics**                                    **McGinnis**

inspection or guarantee that the system will not leak in the future. On-going maintenance by the homeowner is required on all exterior cladding systems. Temperature changes can have a drastic impact on system performance. This report is based on the condition of the property at the time and date of the inspection only. All parties concerned agree to hold harmless and indemnify this inspection company involving any liabilities that may result.

**FURTHER TESTING / INVESTIGATION:** Our policy is to rely on moisture meter readings as an indicator of relative moisture values between different test spots, not as an absolute value of water content in the substrate. It is difficult to determine if the structural wood of your home has been damaged in areas of high readings without 'probing' and/or removing a core sample of the cladding system to allow for visual inspection. Should we feel that further investigation is needed this will be indicated. Additional charges will apply.

**REPAIR FOLLOW-UP AND ANNUAL INSPECTIONS:** A repair follow-up inspection should be conducted within three months after completion of the repairs to assess the effectiveness of the moisture modifications & repairs. This is extremely important. Bi-Annual inspections should also be scheduled to ensure that the substrate behind the cladding system remains dry. This way any sealant failures, cracks, etc. can be caught and repaired promptly. Testing and maintaining this home on a regular basis is the best way to prevent costly repairs associated with moisture damage.

This report is prepared exclusively for Rob Lunny clients. Reproduction and/or distribution is prohibited without our authorization.

Thank You,

Rob Lunny

| Standard of Practice & Certifications | Type of building: | Square footage of building: |
|---|---|---|
| NAR & NJAR Certified CEP Instructor, | Single Family (2 story) | 4707 |
| Exterior Design Institue (EDI) Level II | | |
| Certified Forensic Building Envelope | | |
| Inspector #FA-121, Moisture Free | | |
| Warranty Corporation Certified Stucco | | |
| Inspector #1627, Member AWCI #526, | | |
| Building Envelope Science Institute | | |
| Member, ITC Certified Infrared | | |
| Thermographer, GAF Steep Slope | | |
| Certified, HUD Certified Inspector, RCI | | |
| Certified Building Envelope Consultant. | | |

| Approximate age of building: | Building Faces: | Humidity: |
|---|---|---|
| Home is 13 years old | North | 40% |

| Weather: | Temperature: | Ground/Soil surface condition: |
|---|---|---|
| Clear | 34 Degrees | Snow Covered |

| Last significant rain approximately: | In Attendance: | Style of Home: |
|---|---|---|
| there within the 7 days prior (Defined as Customer 24 hrs or longer of continuous rain) | | Colonial |

**2573 Murifield Lane**                                    Page 5 of 30

---

**Lunny Building Diagnostics**                                    **McGinnis**

| Type of Exterior: | Weather resistant barrier: | Substrate (if known): |
|---|---|---|
| Hardcoat Stucco, Full Dimension Stone | Tar Paper | OSB, Oriented Strand Board |

| Average Stucco System Thickness: | | |
|---|---|---|
| 1/2" Nominal Thickness | | |

**2573 Murifield Lane**                                    Page 6 of 30

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Responsibility:**

Builder will repair or replace defective switches, fixtures and outlets.

**SERVICE AND DISTRIBUTION**

**Possible Deficiency:**

Ground fault interrupter trips frequently.

**Performance Standard:**

Ground fault interrupters are durable safety devices installed into the electrical system to provide protection against electrical shock. These sensitive devices can be tripped very easily.

**Responsibility:**

Builder shall install ground fault interrupter in accordance with approved electrical code. Tripping is to be expected and is not covered, unless due to a construction defect.

**TOPIC: Mechanical**

**WATER SUPPLY SYSTEM**

**Possible Deficiency:**

Water supply system fails to deliver water.

**Performance Standard:**

All on-site service connections to municipal water main and private water supply shall be the Builder's responsibility. Private systems shall be designed and installed in accordance with all approved building, plumbing and health codes.

**Responsibility:**

Builder will repair if failure is the result of defective workmanship or materials. If conditions beyond Builder's control disrupt or eliminate the sources of the supply, the Builder has no responsibility.

**Possible Deficiency:**

Under water springs.

36

---

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Responsibility:**

None; Builder can not be responsible for underwater springs.

**SEPTIC TANK SYSTEM**

**Possible Deficiency:**

Septic system fails to operate properly.

**Performance Standard:**

Septic system shall be capable of properly handling normal flow of household effluent. Septic system shall be designed and installed to comply with state, county or local code regulations.

**Responsibility:**

Builder will repair if failure is the result of defective workmanship or materials. Builder will not responsible for malfunctions, which occur through Owner negligence or abuse or from conditions that are beyond Builder's control, such as freezing, soil saturation, increase in water table, excessive use, etc. Owner shall be responsible for septic system maintenance.

**PLUMBING**

**Possible Deficiency:**

Leakage from any piping.

**Performance Standard:**

No leaks of any kind shall exist in any soil, waste, vent or water pipe. Condensation on piping does not constitute leakage, and is not covered.

**Responsibility:**

Builder will make repairs to eliminate leakage.

**Possible Deficiency:**

Stopped up sewers, fixtures and drains.

**Performance Standard:**

Sewers, fixtures and drains shall operate properly.

37

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

**Responsibility:**

Builder will not be responsible for sewers, flumes and drains which are clogged through the Owner's negligence. If a problem occurs, the Owner should consult Builder for a proper course of action. Where defective construction is shown to be the cause, Builder will assume the cost of the repair; where Owner negligence is shown to be the cause, the Owner shall assume all repair costs.

**Possible Deficiency:**

Refrigerant lines leak.

**Performance Standard:**

Refrigerant lines shall not develop leaks during normal operation.

**Responsibility:**

Builder will repair leaking refrigerant lines and re-charge unit, unless damage was caused by Owner.

**TOPIC: Mechanical**            ████████████

**AIR DISTRIBUTION**

**Possible Deficiency:**

Ductwork separates or becomes unattached.

**Performance Standard:**

Ductwork shall remain intact and securely fastened.

**Responsibility:**

Builder will re-attach and re-secure all separated or unattached ductwork.

**TOPIC: Electrical**            ████████████

**Possible Deficiency:**

Failure of wiring to carry its designed load.

38

**Performance Standard:**

Wiring should be capable of carrying the designed load for normal residential use.

**Responsibility:**

Builder will check wiring for conformity with local, state, or approved national electrical code requirements. Builder will repair wiring not conforming to code specifications.

39

A "Major Structural Defect" is actual physical damage to the following designated load-bearing portion of the home caused by failure of such load-bearing portions which affects their load-bearing functions to the extent that the home becomes unsafe, unsanitary or otherwise unlivable.

1. Foundation systems and footings;
2. Beams;
3. Girders;
4. Lintels;
5. Columns;
6. Walls and partitions;
7. Floor systems; and
8. Roof framing systems.

Repair of a Major Structural Defect is limited (1) to the repair of damage to the load-bearing elements of the home themselves which is necessary to restore their load-bearing ability; and (2) to the repair of those items of the home damaged by the Major Structural Defect which make the home unsafe, unsanitary or otherwise unlivable.

Damage to the following non-load bearing elements do not constitute a major structural defect (see Note 1).

a. Roof shingles and sheathing;
b. Drywall and plaster;
c. Exterior siding;
d. Brick, stone or stucco veneer;
e. Floor covering materials;
f. Wall tile or other wall coverings;
g. Non-load bearing partitions;

40

h. Concrete floors in attached garages and basements that are built separate from foundation walls or other structural elements of the home;

i. Electrical, heating, cooling, ventilation, mechanical, and plumbing systems, appliances, equipment, fixtures, paint, doors, windows, trim cabinets, hardware and insulation.

NOTE 1: In the event of a Major Structural Defect occurring in the first year of coverage, repairs will also include correction of items necessary to bring the home into compliance with the Approved Standards.

The unsafe, unsanitary, or otherwise unlivable criteria, under Major Structural Defect is limited only to the repair of plumbing, water, gas, oil and electric lines, ductwork, heating systems, and other items that affect the health or safety of the occupants of the home, which were damaged by the Major Structural Defect. Underground springs are beyond our control and are not covered by W.B. Homes, Inc.

Of repairs, there are some problems that might occur for which we can not be responsible because either they are totally out of our control or another party is providing the warranty. No warranty is given for:

1. Appliances or component equipment for which the manufacturer issued a separate warranty. We are, however, responsible for our workmanship installing the appliance.

2. Lawn seeding can not be guaranteed because proper watering and maintenance of turf and soil is a homeowner's responsibility.

3. Normal wear and tear.

4. Variations in the color of grout, stained wood, stucco, tile, brick, paint, carpet, mortar and concrete are common. We can not guarantee that repaired or replaced areas will match the original.

5. Failure of BUYER to take timely action or notify us within a reasonable time. Loss resulting from Acts of God, insects or animals, acts beyond our control, or by use of the home for non-residential purposes or any loss other than actual physical damage to the home. Consequential damages, bodily injury, damage to personal property, and expenses related to owner's relocation during repairs.

6. Basements of homes in this area may be subject to water infiltration. We will supply a sump pump if deemed necessary to correct water in your basement. Nothing should be stored on the basement floor until it has been determined that the basement will remain dry. BUYER understands that we will not be responsible for damage to personal property resulting from water in basement.

43

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

W.S. Homes can not be responsible for any and all alterations made to the home or lot of such home after settlement. Any alterations to the original home and/or lot for any void certain parts of the Warranty, if at the sole discretion of W.S. Homes, Inc., the alterations done after settlement by the owner is the cause of an actual or potential warranty problem.

This constitutes our entire warranty. There are no others either expressed or implied and our warranty liability shall be the replacement cost of the defective portion of the home.

BUYER:_____    DATE:_____

BUYER:_____    DATE:_____

SELLER:_____    DATE:_____

SELLER:_____    DATE:_____

File: HOMEOWNR.WTY - 06/07/01

43

# EXHIBIT L

Case# 2016-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661



# LUNNY
## Building Diagnostics

STUCCO INSPECTION SPECIALISTS

**Exterior Cladding Evaluation**

**Mr. Bill McGinnis**

**Property Address:**
2573 Murifield Lane
Lansdale PA 19446

Lunny Building Diagnostics

**Rob Lunny**
**EDI II Stucco Inspector PA-121**
**2370 York Road, A9-C**
**Jamison, PA 18929**
**(267) 483-8737**

Lunny Building Diagnostics                    McGinnis

BUILDING ENVELOPE
SCIENCE INSTITUTE INC.

EDI

EXTERIOR
DESIGN
INSTITUTE

Moisture free & Warranty

2573 Murifield Lane                    Page 2 of 30



# LUNNY
## Building Diagnostics
### STUCCO INSPECTION SPECIALISTS

**Exterior Cladding Evaluation**

**Mr. Bill McGinnis**

**Property Address:**
2573 Murifield Lane
Lansdale PA 19446

**Lunny Building Diagnostics**

**Rob Lunny**
**EDI II Stucco Inspector PA-121**
**2370 York Road, A9-C**
**Jamison, PA 18929**
**(267) 483-8737**

Lunny Building Diagnostics                                              McGinnis

BUILDING ENVELOPE
SCIENCE INSTITUTE INC.
Providing the essential knowledge and skills

EDI

EXTERIOR
DESIGN
INSTITUTE

MoistureFree Warranty

Lunny Building Diagnostics                                    McGinnis

## General Summary

# LUNNY
## Building Diagnostics
STUCCO INSPECTION SPECIALISTS

**Customer**
Mr. Bill McGinnis

**Address**
2573 Murifield Lane
Lansdale PA 19446

## 4. General Summary Findings/Conclusions

**Conclusions**

**Please provide this report to your certified remediation contractor to determine the cost and extent of repairs.**

**Front Elevation Findings:**

Elevated & FS (Failed Substrate) moisture readings were recorded on the front elevation right of the garage under the gutter & under windows in the full dimension stone on garage & main house. Recommend installation of 3 kickout diverters and removal of window sill systems left & right of the front entry to determine the extent of moisture intrusion in these areas. Recommend removal of clay stones on garage to determine the extent of moisture penetration, repair & properly seal as needed. All windows in a full dimension stone system should be sealed. Replace any moisture damaged Andersen windows during remediation.

**Right Elevation Findings:**

Elevated & FS (Failed Substrate) moisture readings were recorded under the windows left & right of the chimney, at the intersection of the rim joist & chimney as well as on the lower sections of the chimney. Reset windows in sill pan flashing. Install roof line diverter & replace any moisture damaged wood during remediation.

**Left Elevation Findings:**

Elevated & FS (Failed Substrate) moisture readings were recorded under both windows, under the vent & at the base of the entry. Reset windows in sill pan flashing & replace any

---

Lunny Building Diagnostics                                    McGinnis

## 4. General Summary Findings/Conclusions

moisture damaged wood during remediation. Moisture damage to Andersen windows noted, repair/replace as needed.

**Rear Elevation Findings:**

Elevated & FS (Failed Substrate) Readings were recorded on the rear center under windows on both sides of the chimney & on the chimney. Elevated & FS readings also were recorded under the window on the right rear return wall, under the right rear entry & at the intersection of the pads for the right rear entry & the stucco. Reset windows in sill pan flashing & replace any moisture damaged wood during remediation of the chimney, under windows & at the right rear entry. Moisture damage to Andersen windows noted. Recommend contacting Andersen for replacement information on frames for all moisture damaged windows as Andersen is aware of the problem with these windows.

Prepared Using HomeGauge http://www.HomeGauge.com : Licensed To Rob Lunny

Firefox

**Lunny Building Diagnostics**                                              McGinnis

## 1. Property Information

**Items**

1.8 Property Information

**BACKGROUND:**

The subject property is a 13 year old single family home located in Lansdale, PA. The home has a combination gable style roof system with 3 tab asphalt shingles installed over the wood decking. The windows in the home are double hung wood and the exterior cladding system is a mix hardcoat stucco full dimension stone.

**PURPOSE:**

The purpose for the evaluation was to determine if moisture intrusion is occurring behind the exterior cladding and wetting the substrate beneath the system in the locations tested.

**FINDINGS:**

Elevated moisture readings were recorded on the front, left, right & rear elevations. See Section 4: General Summary for a complete understanding of The Findings.

FEMA, ASTM, BOCA, the IRC and all the major code bodies recommend a homeowner take steps to repair/replace wood substrate with a moisture content above 19.5% to reduce the risk of Organic growth. The first section of the report will list the moisture content in the substrate and the locations they were recorded from. The second portion of the report are detailed photographs of findings of the system and components.

Invasive stucco reports are "observe & report" style inspections. We are not affiliated with stucco remediation companies nor do we perform repairs or provide pricing for repairs, we consider this a conflict of interest. In areas of elevated moisture readings we recommend core samples be taken prior to performing any work to provide visual verification as to the probe readings.

We recommend this report be provided to certified remediation contractors to determine the necessity, extent and cost for any repairs.

Should you have any questions concerning this report please feel free to contact our office.

2573 Muirfield Lane                                                    Page 9 of 30

---

**Lunny Building Diagnostics**                                             McGinnis

## 2. Elevation Findings

**Items**

2.0 Legend, Probe Meter Reading Ranges.

The legend below describes the test equipment used and what the readings mean. Small 3/16 holes are drilled into specific locations and the two small probes are inserted to contact the substrate. The electrical resistance between the probes measure the moisture content in the substrate and are the readings listed in the report. Readings listed in black are normal, readings listed in red require action. The meter is calibrated prior to the evaluation and after every 3rd reading. A definition of the moisture readings and what they mean is listed below. Readings listed in red on the report require action.

**Readings listed in red on the report indicate some level of action is strongly recommend**

**Delmhorst Moisture Probe Meter BD2100**

- 6 – 12% Normal/typical reading for wood substrate
- 13-15% Some water is getting in but not likely to cause damage
- 16-19% Elevated moisture level present, damage possible, evaluation of sealant joints and flashing details for repairs is required
- 20-40% High moisture level present, damage probable, remediation required
- F9 Failed Substrate, no resistance to substrate indicating deterioration has occurred to wood substrate, remediation is required
- P Framing Probe, no resistance to substrate indicating deterioration has occurred to wood substrate, remediation is required
- S Soft Substrate, very little resistance to substrate indicating deterioration has occurred to wood substrate from repeated wetting, remediation is required
- G Windows marked with a red circle are moisture damaged & require replacement.

2573 Muirfield Lane                                                   Page 10 of 30

1 of 1                                                              5/26/2020, 12:22 PM

Case# 2018-19272-15 Case Activity Motion Bound Report Received Attachments Appendix and Trust Accounts Case Record Motion Docket Case # 2018-19272-15 Gina Lunny vs McGinnis. The filings of this document with the providers of the Appendix and documents differently than non-confidential Information and documents Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that are filed

**Lunny Building Diagnostics**                                    **McGinnis**



2.0 Item 1(Picture) The moisture probe used was
calibrated prior to the test and after every second
reading. Probe tips are Teflon coated and protected
with shrink wrap to reduce the risk of outside
interference.

**2.1 Front Elevation Findings**

The numbers on the report represent the moisture content in the underlying wood substrate on
the home recorded in a percentage value. Refer to section 2.0 Probe Meter Reading Ranges for
a better understanding of what the numbers represent. Numbers listed in red require action.

The front of the home was broken into several sections to allow for a better understanding of
moisture readings and the locations they were recorded from.

Elevated & FS (Failed Substrate) moisture readings were recorded on the front elevation right
of the garage under the gutter & under windows in the full dimension stone on garage & main
house. Recommend installation of 3 kickout diverters and removal of window sill cap stones
left & right of the front entry to determine the extent of moisture intrusion in these areas.
Recommend removal of cap stones on garage to determine the extent of moisture penetration,
repair & properly seal as needed. All windows in a full dimension stone system should be
sealed. Replace any moisture damaged Andersen windows during remediation.

2573 Murifield Lane                                    Page 11 of 30

---

**Lunny Building Diagnostics**                                    **McGinnis**



2.1 Item 1(Picture) Front left Findings

2.1 Item 2(Picture) Front left garage return wall
Findings



2.1 Item 3(Picture) Findings left of main house full dimension stone

2.1 Item 4(Picture) Right front Findings

## 2.2 Right Elevation Findings

The right elevation was visually inspected & invasively tested.

Elevated & FS (Failed Substrate) moisture readings were recorded under the windows left & right of the chimney, at the intersection of the rim joist & chimney as well as on the lower sections of the chimney. Reset windows in sill pan flashing. Install roof line diverter & replace any moisture damaged wood during remediation.

Case# 2016-19272. ... Complex Decision approved ... 09/02/2020 ...  ... Fee = ... Erie, to Erie. The filer certifies that this filing complies with the provisions of ... ... Appendix and That Court's ... implementing complementary documents adherety than non-con ... Unified Judicial System ...

**Lunny Building Diagnostics**                                    **McGinnis**



**2.2 Item 1(Picture) Right elevation Findings @ Chimney**

**2.2 Item 2(Picture) Right elevation Findings @ windows**

**2.3 Left Elevation Findings**

The left elevation was visually inspected & invasively tested.

Elevated & FS (Failed Substrate) moisture readings were recorded under both windows, under the west & of the block of the entry. Reset windows in sill pan flashing & replace any moisture-

---

Case 2016-19272-10 Docketed & Montgomery County Prothonotary on 08/04/2016 5:31 PM, Fee = $10.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Lunny Building Diagnostics**                                    **McGinnis**

damaged wood during remediation. Moisture damage to Andersen windows noted, repair/ replace as needed.



**2.3 Item 1(Picture) Left front Findings**

**2.3 Item 2(Picture) Left rear Findings**

**2.4 Rear Elevation Findings**

The rear elevation was visually inspected & invasively tested.

Elevated & FS (Failed Substrate) Readings were recorded on the rear center under windows on both sides of the chimney & on the chimney. Elevated & FS readings also also recorded under the window on the right rear return wall, under the right rear entry & at the intersection of the patio for the right rear entry & the stucco. Reset windows in sill pan flashing & replace any moisture damaged wood during remediation of the chimney, under windows & at the right rear entry. Moisture damage to Andersen windows noted. Recommend contacting Andersen for replacement information on frames for all moisture damaged windows as Andersen is aware of the problem with these windows.



Lunny Building Diagnostics                    McGinnis

2.4 Item 1(Picture) Left rear Findings

2.4 Item 2(Picture) Left rear return wall Findings

Lunny Building Diagnostics                    McGinnis

Core sample confirmed Findings

2.4 Item 3(Picture) Rear center Findings @ windows

Firefox

https://courtsapp.montcopa.org/psi/vdetail/Case/201155661



**Lunny Building Diagnostics**       McGinnis

2.4 Item 4(Picture) Rear center Findings @ chimney

2.4 Item 5(Picture) Right rear return wall Findings

**Lunny Building Diagnostics**       McGinnis

2.4 Item 6(Picture) Right rear Findings

1 of 1                                                       5/26/2020, 12:23 PM

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Firefox

**Lunny Building Diagnostics**        **McGinnis**

## 3. System Findings & Photos

## Items

### 3.0 System Findings

This section of the report are findings and detailed photos of the system and installed components.



3.0 Item 1(Picture) Moisture damage to frame noted, elevated readings recorded below. Left elevation entry.

3.0 Item 2(Picture) Kickout diverter installed on right rear

**2573 Murifield Lane**        Page 21 of 30

**Lunny Building Diagnostics**        **McGinnis**



3.0 Item 3(Picture) Window detail

3.0 Item 4(Picture) Head flashing is installed on some windows

3.0 Item 5(Picture) Vents not flashed or sealed

**2573 Murifield Lane**        Page 22 of 30

1 of 1        5/26/2020, 12:24 PM

Case# 2016-19272-16
Unified Judicial Sys...

Lunny Building Diagnostics                                    McGinnis



3.0 Item 6(Picture) Left front, elevated readings recorded in this area, limited access for inspection of kickout diverter

3.0 Item 7(Picture) Full dimension stone sills have little to no slope away from the house

2573 Murifield Lane                                           Page 23 of 30

Lunny Building Diagnostics                                    McGinnis

3.0 Item 8(Picture) Left of entry, metal electrical box is rusting, replace and/or seal.

3.0 Item 9(Picture) Exposed wood under left & right side or front portio

2573 Murifield Lane                                           Page 24 of 30

Firefox

Lunny Building Diagnostics                                    McGinnis



3.0 Item 10(Picture) Seal all gaps in sills, moisture
penetration occurs here, minimal slope noted.



3.0 Item 11(Picture) Recommend increasing separation
of floor drain from basement floor. A minimum of a 4
inch separation is recommended.

2573 Murifield Lane                                    Page 25 of 30

---

Lunny Building Diagnostics                                    McGinnis

## 4. General Summary Findings/Conclusions

### Items

**4.8 Conclusions**

☐ **Please provide this report to your certified remediation contractor to determine the cost and extent of repairs.**

**Front Elevation Findings:**

Elevated & FS (Failed Substrate) moisture readings were recorded on the front elevation right of the garage under the gutter & under windows in the full dimension stone on garage & main house. Recommend installation of 3 kickout diverters and removal of window sill cap stones left & right of the front entry to determine the extent of moisture intrusion in these areas. Recommend removal of cap stones on garage to determine the extent of moisture penetration, repair & properly seal as needed. All windows in a full dimension stone system should be sealed. Replace any moisture damaged Andersen windows during remediation.

**Right Elevation Findings:**

Elevated & FS (Failed Substrate) moisture readings were recorded under the windows left & right of the chimney, at the intersection of the rim joist & chimney as well as on the lower sections of the chimney. Reset windows in sill pan flashing, install roof line diverter & replace any moisture damaged wood during remediation.

**Left Elevation Findings:**

Elevated & FS (Failed Substrate) moisture readings were recorded under both windows, under the vent & at the base of the entry. Reset windows in sill pan flashing & replace any moisture damaged wood during remediation. Moisture damage to Andersen windows noted, repair/ replace as needed.

**Rear Elevation Findings:**

Elevated & FS (Failed Substrate) Readings were recorded on the rear center under windows on both sides of the chimney & on the chimney. Elevated & FS readings also recorded under the window on the right rear return wall, under the right rear entry & at the intersection of the patio for the right rear entry & the stucco. Reset windows in sill pan flashing & replace any moisture damaged wood during remediation of the chimney, under windows & at the right rear entry. Moisture damage to Andersen windows noted. Recommend contacting Andersen for replacement information on frames for all moisture damaged windows as Andersen is aware of the problem with these windows.

2573 Murifield Lane                                    Page 26 of 30

Firefox

**Lunny Building Diagnostics**                                            McGinnis

## 5. System Observations

### Items

**5.0 Cracks**
Yes

**5.1 Weep Screed Installed**
NO

**5.2 Kickout flashing roof/wall intersections**
Not adequate

**5.3 Control joints installed**
NO

**5.4 Expansion joints installed**
NO

**5.5 Add Inside & Outside Corner Diverters For Gutters to Help Control Splash**
Yes

**5.6 Window head flashing installed**
Not adequate

**5.7 Andersen 200/400 Series Windows Installed**
NO

**5.8 Soft joints/casing beads installed around windows**
NO

**5.9 Soft joints/casing beads installed around doors**
NO

**5.10 Window Miter Joints Caulked & Jambs Sealed**
NO

**5.11 Light fixture attachements sealed**
NO

**5.12 System extends over foundation**
Yes

**5.13 System is terminated above grade**
NO

**5.14 Proper flashing detail at stone/stucco intersections**
NO

**5.15 Visible Surface Patio Flashing Detail**
NO

**5.16 Adequate space between window sill & stone**
NO

**5.17 4 inch spacing of stucco and softscape**
NO

**5.18 2 inch separation between stucco and hardscape/driveway/concrete**
NO

**5.19 Drainage in PG stone system**
NO

2573 Murifield Lane                                    Page 27 of 30

---

**Lunny Building Diagnostics**                                            McGinnis

## 6. Glossary of terms

### Items

**6.0 Glossary Of Terms**

#### Stucco Terms & Definitions

**Abrasives:** Substance that is rough or scratches.

**Admixture:** Material other than water, aggregate or basic cementitious material added to the batch before or during job mixing.

**Aggregate:** A granular material such as sand.

**Basecoat:** Any stucco coat applied before the application of the finish coat. The combined scratch and brown coats make up the basecoat.

**Bond:** Adhesion of stucco to other surfaces that it is applied against.

**Bonding Agent:** A compound applied as a coating to a suitable substrate to enhance a bond between it and the next layer, as between a subsurface and a succeeding stucco application.

**Brown Coat:** In multiple coat work, the second coat applied over the scratch coat. In two-coat work, brown coat refers to the double-up basecoat. The brown coat is the coat directly beneath the finish coat.

**Building Paper:** Also referred to as tar paper or black paper it comes in different ratings such as 30 minutes or 60 minute. The minute rating refers to the time it takes for water sitting on the paper to pass through it.

**Cementitious:** Made of or from cement.

**Checking:** Development of shallow cracks at closely spaced but irregular intervals in the stucco surface. (Also known as craze cracks.)

**Coat:** A thickness of stucco applied in a single operation.

**Cold Joints:** The juncture of fresh stucco application adjustment to set plaster.

**Control Joints:** A flexible metal component designed to control the shrinkage of cement plaster. It is usually placed at each floor break of a building.

**Craze Cracks:** Fine, random cracks or fissures that may appear in a stucco surface, caused by shrinkage.

**Cured:** The process of cement hydrating and chemically changing to become hard.

**Delamination:** Coming unglued or unbonded from something.

2573 Murifield Lane                                    Page 28 of 30

Lunny Building Diagnostics                                  McGinnis

**Diversion Flashing:** A flashing that is used to redirect the flow of rainwater.

**Drip Cap Flashing:** A molding over an opening for catching and shedding rain water.

**Eaves troughs:** Plastic or metal troughs that redirects rainwater from the roof to the ground.

**Efflorescence:** A deposit of salts or bases, usually white, formed on the stucco/stone surface. Water-soluble substances emerge in solution from within the plaster and are deposited during evaporation.

**Finish Coat:** The final layer of stucco (job-site mixed or pre-manufactured) applied over basecoat or direct to concrete, comprised of either cementitious or acrylic material

**Flashing:** A thin, usually metal material used to prevent water entry or to direct the flow of water in a desired direction between two or more materials or surfaces.

**Floating:** Act of compacting and leveling a stucco basecoat; act of bringing the aggregate to the surface of finish-coat stucco.

**Framing:** Structural members such as studs, joists, headers, beams, columns, girders, trusses, etc. of wood or steel.

**Head Flashing:** An aluminum or plastic profile designed to prevent water leaking over the top of a window or door when it has been installed into a building

**Kickout Flashing:** An angled piece of flashing that diverts rainwater away from the exterior cladding and into the gutter.

**Lath:** Generally the reinforcement base to which stucco is applied, secured to a substrate with appropriate fasteners. Commonly a welded wire mesh, woven wire or an expanded metal mesh.

**Mullions:** The vertical member separating the panels or glass of a window or door system.

**Oriented strand board (OSB):** It has replaced plywood as wood sheathing and is made from logs that are chipped and glued together.

**Parging:** The application of a thin Portland cement coat over a solid concrete or masonry wall, generally without lath reinforcement, to improve the aesthetic appearance of the exposed wall area.

**Rainscreen:** A method of handling water penetration, enhancing venting and improve the drying capacity of wall assembly, consisting of a water resistant outer cladding, a measurable drained and vented cavity and a water impermeable back-up wall.

**Scoring:** Grooving by scratching or scoring, usually horizontal, of the scratch coat to provide mechanical keys for the brown coat.

**Soffit:** The underside of a structural component, such as a beam, arch, staircase, or cornice.

---

Lunny Building Diagnostics                                  McGinnis

**Stucco Stop Bead:** Provides a straight edge for most perimeters of the stucco membrane; it separates the stucco membrane from adjacent materials such as roof shingles; and it provides a guide of the stucco membrane's profile.

**Substrate:** Same as sheathing.

**Tyvek:** Trade name for a house wrap that is made from fine, high-density polyethylene fibers. Tyvek is more tear resistant than building paper.

**Water resistant barrier:** A thin membrane, typically 5 to 15 mills thick (.005 to 0.015 in. or 0.13 to .38 mm) which is intended to resist liquid water that has penetrated behind the exterior cladding.

**Weep holes:** Small holes in the bottom of windows that allows water to drain out.

**Weep Screed:** Is a vinyl or metal track acting as a flashing to allow for drainage at the bottom of the drainage plane; it is the starting point of every drainage plane.

https://courtsapp.montcopa.org/psi/Wdetail/Case/201155661

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "B"

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

To: WILLIAM MCGINNIS, ROSE MARIE
MCGINNIS, and OMNIA GROUP, INC.: You are
hereby notified to file a written response to the
enclosed New Matter and Crossclaims to the
Complaint within twenty (20) days from service
hereof or a judgment may be entered against you.

CLEMM AND ASSOCIATES, LLC
Mark C. Clemm, Esquire, I.D. #36665
Katie M. Clemm, Esquire, I.D. #320733
488 Norristown Road, Suite 140
Blue Bell, PA   19422
(484) 539-1300
mclemm@clemmlaw.com
kclemm@clemmlaw.com

*/s/ Mark C. Clemm*
MARK C. CLEMM, ESQUIRE

Attorneys for defendants WB Homes, Inc.
Penn Gwyn LP, Thornby Development
Corp., and William J. Bonenberger

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CIVIL ACTION – LAW

| | |
|---|---|
| WILLIAM MCGINNIS and<br>ROSE MARIE MCGINNIS<br><br>v.<br><br>W.B. HOMES, INC., et al. | : No.  2018-19272<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## AMENDED ANSWER WITH NEW MATTER AND CROSSCLAIMS OF DEFENDANTS WB HOMES, INC., PENN GWYN LP, THORNBY DEVELOPMENT CORP. AND WILLIAM J. BONENBERGER TO PLAINTIFFS' COMPLAINT

Defendants WB Homes, Inc., Penn Gwyn LP, Thornby Development Corp. and William

J. Bonenberger (collectively, the "WB Defendants") by and through counsel Clemm and

Associates, LLC hereby amend their Answer with New Matter to the Complaint filed by

Plaintiffs and assert New Matter and Crossclaims as follows:

1.       Admitted on information and belief.

2.       Admitted in part, denied in part.  To the extent the allegations in paragraph 2 state

facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 2

state conclusions of law, no response is required.  It is admitted that the home located at 2573

1

Muirfield Way, Lansdale, Pennsylvania is located in a housing development known as Bethel Knoll.

3.    Denied.  Penn Gwyn, L.P. is the Declarant of the Planned Community.

4.    Denied.  Defendant W.B. Homes, Inc. is a corporation that operates as a builder/developer of residential homes and its principal place of business is located at 404 N. Sumneytown Pike, Suite 200, North Wales, Pennsylvania.

5.    Admitted.

6-7.   Denied.  WB Development ceased operations as of June 30, 2018 and was merged out of existence into W.B. Homes, Inc.  WB Development was not involved with the planning, development, building, selling, marketing, advertising, or any other aspect of Plaintiffs' Home, Property, or the Bethel Knoll housing development.

8.    Denied as stated.  Penn Gwyn was a limited partnership.  Penn Gwyn ceased operations on or about December 31, 2006.  It is admitted that Penn Gwyn had a principal place of business located at 404 N. Sumneytown Pike, Suite 200, North Wales, Pennsylvania.

9.    Admitted.

10.   Denied as stated.  Thornby was a corporation.  Thornby ceased operations on or about December 31, 2006.  It is admitted that Thornby had a principal place of business located at 404 N. Sumneytown Pike, Suite 200, North Wales, Pennsylvania.

11-14. Admitted.

15.   Admitted in part, denied in part.  To the extent the allegations in paragraph 15 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 15 state conclusions of law, no response is required.  It is specifically denied that Bonenberger made personal representations to the Plaintiffs about the quality and workmanship of the Home.  It is admitted that Bonenberger is the President of W.B. Homes, Inc. and was the President of Thornby Development Corp.

16.   Denied.  To the extent the allegations in paragraph 16 state facts, any and all facts are specifically denied.  To the extent the allegations in paragraph 16 state conclusions of law, no response is required.

17.   Denied.  After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph

2

Case# 2018-19272-40 Docketed at Montgomery County Prothonotary on 10/9/2019 2:24 PM, Fee = $0.00. The file copies that this filing comply with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

17 and strict proof thereof is demanded at the time of hearing or trial if relevant. It is admitted only that Omnia Group, Inc. operated as the architect of the Home.

18-19.   Denied.    After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraphs 18-19 and strict proof thereof is demanded at the time of hearing or trial if relevant.

20.   Denied.  To the extent the allegations in paragraph 20 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 20 state conclusions of law, no response is required.

21.   Denied as a conclusion of law to which no response is required.

22.   Denied.  To the extent the allegations in paragraph 22 purport to characterize the W.B. Homes website, they are denied because the W.B. Homes website is a document which speaks for itself.  To the extent the allegations in paragraph 22 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 22 state conclusions of law, no response is required.

23.   Denied as stated.  Penn Gwyn acquired the land on which the Development was built and declared a Planned Community.

24.   Denied.  To the extent the allegations in paragraph 24 purport to characterize the Agreement of Sale, they are denied because the Agreement of Sale is a document which speaks for itself.  To the extent the allegations in paragraph 24 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 24 state conclusions of law, no response is required.

25.   Denied.    After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to whom "builder defendant" is and strict proof thereof is demanded at the time of hearing or trial if relevant.  By way of further response, W.B. Homes, Inc. has agreed not to pursue arbitration.

26-29.   Admitted.

30.   Denied.  To the extent the allegations in paragraph 30 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 30 state conclusions of law, no response is required.  By way of further response, corporate formalities were observed by the WB Defendants at all times.

31.     Denied.  To the extent the allegations in paragraph 31 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 31 state conclusions of law, no response is required.  By way of further response, W.B. Homes and Penn Gwyn did not intermingle assets at any time.

32.     Denied.  The Development was marketed, designed, constructed, and sold by W.B. Homes, Inc. between 2003 to 2005.

33-36.  Denied.  To the extent the allegations in paragraphs 33-36 purport to characterize the W.B. Homes website, they are denied because the W.B. Homes website is a document which speaks for itself.  To the extent the allegations in paragraphs 33-36 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 33-36 state conclusions of law, no response is required.  By way of further response, it is specifically denied that Bonenberger made personal representations regarding the Development and/or Home.

37.     Denied.  To the extent the allegations of paragraph 37 purport to characterize the June 1, 2018 letter from Plaintiffs to WB Homes, they are denied because the June 1, 2018 letter from Plaintiffs to WB Homes is a document which speaks for itself.  By way of further response, on or about June 1, 2018, Plaintiffs, by and through counsel, sent a letter to W.B. Homes, Inc. regarding arbitration.

38.     Admitted.

39.     Denied.  After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 39 and strict proof thereof is demanded at the time of hearing or trial if relevant.

40.     Denied as stated.  Bonenberger was an acquaintance of the Plaintiffs.

41.     Denied.  After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 41 and strict proof thereof is demanded at the time of hearing or trial if relevant.  By way of further response, upon information and belief, Plaintiffs approached Bonenberger regarding the purchase of the Property.

42-43.  Denied.  To the extent the allegations in paragraphs 42-43 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 42-43 state conclusions of law, no response is required.  By way of further response, it is specifically denied

4

that Bonenberger made any personal and/or individual representations to the Plaintiffs regarding the construction of their Home.

44. Denied. After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 44 and strict proof thereof is demanded at the time of hearing or trial if relevant.

45. Denied as stated. W.B. Homes, Inc. customized the Newbury model home for Plaintiffs.

46. Denied. W.B. Homes, Inc. used a new style archway in Plaintiffs' Home and may have told Plaintiffs that it should be named the "McGinnis" archway. By way of further response, it is specifically denied that Bonenberger made any personal and/or individual representations to the Plaintiffs regarding the construction of their Home.

47. Denied. To the extent the allegations in paragraph 47 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraph 47 state conclusions of law, no response is required. It is only admitted that on or about October 12, 2003 Plaintiffs entered into an Agreement of Sale with W.B. Homes, Inc. for the purchase of the property located at 2573 Muirfield Lane, Lansdale, Pennsylvania.

48-49. Admitted.

50. Denied. After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 50 and strict proof thereof is demanded at the time of hearing or trial if relevant. It is admitted only that Penn Gwyn transferred the Home by deed to the Plaintiffs on or about November 19, 2004.

51-52. Denied. To the extent the allegations in paragraphs 51-52 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraphs 51-52 state conclusions of law, no response is required. By way of further response, it is specifically denied that Bonenberger made any personal and/or individual representations to the Plaintiffs regarding the construction of their Home.

53. Admitted. By way of further response, the McGinnis Limited Warranty was included with the Agreement of Sale.

5

Firefox

https://courtapp.montcopa.org/psi/#/detail/Case/201155661

54.   Denied.  To the extent the allegations in paragraph 54 purport to characterize the McGinnis Limited Warranty, they are denied because the McGinnis Limited Warranty is a document which speaks for itself.

55-56. Denied.  To the extent the allegations in paragraphs 55-56 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraphs 55-56 state conclusions of law, no response is required.

57-59. Denied.   After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraphs 57-59 and strict proof thereof is demanded at the time of hearing or trial if relevant.

60-61. Denied.   After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraphs 60-61 and strict proof thereof is demanded at the time of hearing or trial if relevant. To the extent the allegations in paragraphs 60-61 purport to characterize the Lunny Report, they are denied because the Lunny Report is a document which speaks for itself.  To the extent the allegations in paragraphs 60-61 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 60-61 state conclusions of law, no response is required.  It is denied that the Lunny Report is accurate or valid.

62.   Denied.  On or about April 6, 2018, Plaintiffs sent an inspection report to W.B. Homes, Inc.  It is denied that any of the WB Defendants are liable for any of the alleged construction defects.

63.   Denied.   W.B. Homes, Inc. engaged in correspondence with Plaintiffs and participated in a meeting with Plaintiffs regarding Plaintiffs' alleged issues with the Home. Through the correspondence and at the meeting, W.B. Homes, Inc. clearly stated to Plaintiffs that it would not perform any work on the Home and that the twelve-year statute of repose had expired.  In the meeting, W.B. Homes, Inc. tried to help Plaintiffs' resolve their concerns by providing them with the names of contractors with whom W.B. Homes, Inc. had a relationship so to perform work for the Plaintiffs quickly and cost-effectively.

64.   Admitted.

65.   Denied as stated.  The parties were unable to come to an agreement regarding Plaintiffs' concerns about their Home.

66.   Admitted.

6

https://courtsapp.mdntcopa.org/psi/v/detail/Case/201155661

67.   Denied.   After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 67 and strict proof thereof is demanded at the time of hearing or trial if relevant.

68.   Denied.   To the extent the allegations in paragraph 68 purport to characterize various correspondence between Plaintiffs and WB Homes, they are denied because the correspondence are documents which speak for themselves.   By way of further response, on or about June 1, 2018, Plaintiffs, through counsel, sent a letter to WB Homes regarding arbitration. On or about June 15, 2018, Plaintiffs, through counsel, sent a letter to counsel for WB Homes regarding the statute of repose.   The letter dated June 15, 2018 is attached to Plaintiffs' Complaint as Exhibit G.

69.   Denied.  To the extent the allegations in paragraph 69 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraph 69 state conclusions of law, no response is required.   By way of further response, the WB Defendants have refused to perform any work on Plaintiffs' Home.

70-74.  Denied.   After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraphs 70-74 and strict proof thereof is demanded at the time of hearing or trial if relevant. To the extent the allegations in paragraphs 70-74 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraphs 70-74 state conclusions of law, no response is required.   By way of further response, it is specifically denied that the Home was constructed defectively or that any actions or inactions of the WB Defendants were unlawful, fraudulent, negligent, unfair, deceptive or misleading and it is further denied that any damages are owed by any of the WB Defendants to Plaintiffs.

75-76.  Admitted.

77.   Denied.  After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 77 and strict proof thereof is demanded at the time of hearing or trial if relevant.   The WB Defendants do not believe that there was a written contract with Omnia regarding the Home.

78.   Denied.  To the extent the allegations in paragraph 78 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraph 78 state conclusions of

7

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

law, no response is required.  By way of further response, the WB Defendants do not believe that there was a written contract with Omnia regarding the Home.

79.     Denied as stated.  Omnia prepared design plans to be used in connection with the construction of Plaintiffs' Home.  The WB Defendants do not believe that there was a written contract with Omnia regarding the Home.

80.     Denied.  Omnia supplied the design plans and some, but not all, specifications and information regarding the construction of Plaintiffs' Home.

81.     Denied.  To the extent the allegations in paragraph 81 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 81 state conclusions of law, no response is required.   By way of further response, it is specifically denied that Bonenberger made any personal and/or individual representations to the Plaintiffs regarding the construction of their Home.  It is also specifically denied that any of the other WB Defendants made any promises, representations or warranties that were not specifically contained in writing in the agreement of sale executed by the buyer and the seller in the transaction involving the sale of the Home.

82.     Denied.  To the extent the allegations in paragraph 82 state facts, any and all facts are specifically denied.  To the extent the allegations in paragraph 82 state conclusions of law, no response is required.  After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 82 and strict proof thereof is demanded at the time of hearing or trial if relevant.

83-84.  Denied.  To the extent the allegations in paragraphs 83-84 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraphs 83-84 state conclusions of law, no response is required.  After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraphs 83-84 and strict proof thereof is demanded at the time of hearing or trial if relevant.

85-88.  Denied.  To the extent the allegations in paragraphs 85-88 purport to characterize the plans and specifications of Omnia, they are denied because the plans and specifications of Omnia are documents which speak for themselves.  To the extent the allegations in paragraphs 85-88 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 85-88 state conclusions of law, no response is required.   After reasonable

Case# 2018-19272-49 Docketed at Montgomery County Prothonotary on 10/9/2020 2:04 PM / Fee=$6.00 It is hereby certified that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

5/26/2020, 12:27 PM

investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraphs 85-88 and strict proof thereof is demanded at the time of hearing or trial if relevant.

89-90.  Denied.  To the extent the allegations in paragraphs 89-90 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 89-90 state conclusions of law, no response is required.  After reasonable investigation, the WB Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraphs 89-90 and strict proof thereof is demanded at the time of hearing or trial if relevant.

91.     Denied.  To the extent the allegations in paragraph 91 purport to characterize the Lunny Report, they are denied because the Lunny Report is a document which speaks for itself.  To the extent the allegations in paragraph 91 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 91 state conclusions of law, no response is required.  By way of further response, it is specifically denied that the Lunny Report is valid or accurate.

92-94.  Denied.  To the extent the allegations in paragraphs 92-94 purport to characterize the IRC 2003, they are denied because the IRC 2003 is a document which speaks for itself.  To the extent the allegations in paragraphs 92-94 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 92-94 state conclusions of law, no response is required.  On information belief, the Home was built according to the applicable building code.

95-104.  Denied.  To the extent the allegations in paragraphs 95-104 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 95-104 state conclusions of law, no response is required.  By way of further response, plaintiffs may not automatically "supplement, modify and/or further develop allegations and averments" without following and meeting applicable court procedures and requirements.  By way of further response, it is specifically denied that the Home was constructed in violation of any applicable building code or local ordinance. By way of further response, it is specifically denied that the WB Defendants in any way failed to supervise, oversee and/or inspect the "implementation of the design" during the construction of the Home.

105.     The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

9

Case# 2018-19272-40 Docketed at Montgomery County Prothonotary on 12/09/2020 2:04 PM / Fee= $0.00 The file certifies this this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

106.   Denied.  To the extent the allegations in paragraph 106 purport to characterize the Agreement of Sale, they are denied because the Agreement of Sale is a document which speaks for itself.  To the extent the allegations in paragraph 106 state facts, any and all facts are specifically denied.  To the extent the allegations in paragraph 106 state conclusions of law, no response is required.  By way of further response, Plaintiffs purchased the Home from W.B. Homes, Inc. pursuant to the Agreement of Sale.  By way of further response, the only promises, representations and warranties made by the WB Defendants were those that were written and contained in the Agreement of Sale.

107-115.  Denied.  To the extent the allegations in paragraphs 107-115 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 107-115 state conclusions of law, no response is required.  By way of further response, the only promises, representations and warranties made by the WB Defendants were those that were written and contained in the Agreement of Sale.  By way of further response, Plaintiffs have failed to specifically plead the requisite facts which would support a claim for piercing the corporate veil or any other similar theory or otherwise for imposing personal liability against William Bonenberger.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

116.   The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

117.   Denied as stated.  Plaintiffs' Agreement of Sale included the McGinnis Limited Warranty.

118.   Denied.  To the extent the allegations in paragraph 118 purport to characterize the McGinnis Limited Warranty and Agreement of Sale, they are denied because the McGinnis Limited Warranty and Agreement of Sale are documents which speak for themselves.  To the extent the allegations in paragraph 118 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraph 118 state conclusions of law, no response is required.

10

119.   Denied.   To the extent the allegations in paragraph 119 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraph 119 state conclusions of law, no response is required.

120-124.   Denied.   To the extent the allegations in paragraphs 120-124 purport to characterize the McGinnis Limited Warranty and Agreement of Sale, they are denied because the McGinnis Limited Warranty and Agreement of Sale are documents which speak for themselves. To the extent the allegations in paragraphs 120-124 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraphs 120-124 state conclusions of law, no response is required.   By way of further response, it is specifically denied that any of the WB Defendants breached any express warranties are failed to build the Home according to applicable building codes and industry standards, failed to build the Home in a "habitable and good workmanlike manner", failed to properly supervise construction of the Development, or failed to inspect the Home (to the extent that inspections were required).   It is further denied that Plaintiffs have properly pled the necessary prerequisites to assert alter ego liability or any other basis for seeking to impose individual liability against any of the individual WB Defendants.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

125.   The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

126-130.   Denied.   To the extent the allegations in paragraphs 126-130 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraphs 126-130 state conclusions of law, no response is required.   By way of further response, the exterior of the Home was built correctly. To the extent that any moisture penetrated the exterior cladding of the Home, it likely resulted from the failure of the Plaintiffs to properly maintain the Home during the 15 or more years that they owned and occupied it.   Any and all implied warranties were waived by Plaintiffs at the time they signed the Agreement of Sale.

11

131-132.  Denied.  To the extent the allegations in paragraphs 131-132 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 131-132 state conclusions of law, no response is required.  By way of further response, it is specifically denied that the Home is uninhabitable; Plaintiffs have lived in the Home with no complaints for approximately 15 years.

133-134.  Denied.  To the extent the allegations in paragraphs 133-134 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 133-134 state conclusions of law, no response is required.  By way of further response, Plaintiffs have failed to allege any of the requisite facts necessary to support a claim based upon "alter egos" or any other basis for seeking to assert personal liability against any one or more of the WB Defendants.  It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

135.    The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

136-144.  Denied.  To the extent the allegations in paragraphs 136-144 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 136-144 state conclusions of law, no response is required.  By way of further response, the only warranty given by WB Homes was the written warranty contained in the Agreement of Sale. Any other warranties were specifically excluded and waived by the Plaintiffs. None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home.  By way of further response, Plaintiffs have failed to allege any of the requisite facts necessary to support a claim based upon "alter egos" or any other basis for seeking to assert personal liability against any one or more of the WB Defendants. It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

12

Case# 2018-19272-40 Docketed at Montgomery County Prothonotary on 12/6/2020 2:04 PM, Fee = $0.00 The filed certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

145.    The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

146-150.    Denied.  To the extent the allegations in paragraphs 146-150 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 146-150 state conclusions of law, no response is required. By way of further response, the exterior of the Home was built correctly.  There was no defective construction and there were no latent defects in the Home.  None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home. By way of further response, Plaintiffs have failed to allege any of the requisite facts necessary to support a claim based upon "alter egos" or any other basis for seeking to assert personal liability against any one or more of the WB Defendants.  It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

151.    Admitted.

152-157.    Denied.  To the extent the allegations in paragraphs 152-157 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 152-157 state conclusions of law, no response is required. By way of further response, the exterior of the Home was built correctly.  There was no negligent or defective construction and there were no latent defects in the Home.  None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home.  By way of further response, Plaintiffs have failed to allege any of the requisite facts necessary to support a claim based upon "alter egos" or any other basis for seeking to assert personal liability against any one or more of the WB Defendants.  It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

13

Firefox

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

158. The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

159. Denied. To the extent the allegations in paragraph 159 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraph 159 state conclusions of law, no response is required. B way of further response, the exterior of the Home was built correctly. There was no defective construction and there were no latent defects in the Home. None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home. By way of further response, Plaintiffs have failed to allege any of the requisite facts necessary to support a claim based upon "alter egos" or any other basis for seeking to assert personal liability against any one or more of the WB Defendants. It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

160. Denied. To the extent the allegations in paragraph 160 purport to characterize certain writings and materials on the WB Defendants' website, they are denied because the writings and materials on the WB Defendants' website are documents which speak for themselves. To the extent the allegations in paragraph 160 state facts, any and all facts are specifically denied. To the extent the allegations in paragraph 160 state conclusions of law, no response is required.

161-169. Denied. To the extent the allegations in paragraphs 161-169 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraphs 161-169 state conclusions of law, no response is required. B way of further response, the exterior of the Home was built correctly. There was no defective construction and there were no latent defects in the Home. None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home. By way of further response, Plaintiffs have failed to allege any of the requisite facts necessary to support a claim based upon "alter egos" or any other basis for seeking to assert personal liability

14

Case# 2018-19272-0 Received at Montgomery County Prothonotary on 02/02/2020 02:24:24 PM. Fee = $60.00. The file certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

against any one or more of the WB Defendants. It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

170. Denied. Denied. To the extent the allegations in paragraph 170 purport to characterize written marketing and advertising materials, they are denied because the written marketing and advertising materials are documents which speak for themselves. To the extent the allegations in paragraph 170 state facts, any and all facts are specifically denied. To the extent the allegations in paragraph 170 state conclusions of law, no response is required.

171-172. Denied. To the extent the allegations in paragraphs 171-172 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraphs 171-172 state conclusions of law, no response is required. B way of further response, the exterior of the Home was built correctly. There was no defective construction and there were no latent defects in the Home. None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home. By way of further response, Plaintiffs have failed to allege any of the requisite facts necessary to support a claim based upon "alter egos" or any other basis for seeking to assert personal liability against any one or more of the WB Defendants. It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

173. The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

174-185. Denied. To the extent the allegations in paragraphs 174-185 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraphs 174-185 state conclusions of law, no response is required.

186. Denied. To the extent the allegations in paragraph 186 purports to characterize the Lunny Report, they are denied because the Lunny Report is a document which speaks for itself. To the extent the allegations in paragraph 186 state facts, any and all facts are

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

specifically denied. To the extent the allegations in paragraph 186 state conclusions of law, no response is required. It is specifically denied that there is any merit to the Lunny Report.

187-190. Denied. To the extent the allegations in paragraphs 187-190 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraphs 187-190 state conclusions of law, no response is required. B way of further response, the exterior of the Home was built correctly. There was no defective construction and there were no latent defects in the Home. None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home. It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

191. The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

192-193. Denied as conclusions of law to which no response is required.

194. Denied. To the extent the allegations in paragraph 194 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraph 194 state conclusions of law, no response is required. B way of further response, the exterior of the Home was built correctly. There was no defective construction and there were no latent defects in the Home. None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home. By way of further response, none of the WB Defendants engaged in any misleading, confusing or deceptive conduct in connection with the construction of the Home. It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants.

195-199. Denied. To the extent the allegations in paragraphs 195-199 purport to characterize certain written materials including marketing and advertising materials, the WB Defendants' website, the McGinnis Limited Warranty, and other documents, they are denied because these written materials are documents which speak for themselves. To the extent the

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

allegations in paragraphs 195-199 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraphs 195-199 state conclusions of law, no response is required.

200-203. Denied. To the extent the allegations in paragraphs 200-203 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraphs 200-203 state conclusions of law, no response is required. B way of further response, the exterior of the Home was built correctly. There was no defective construction and there were no latent defects in the Home. None of the individual WB Defendants made any individual representations or gave any individual warranties to the Plaintiffs in connection with the construction of the Home. By way of further response, none of the WB Defendants engaged in any misleading, confusing or deceptive conduct in connection with the construction of the Home. It is specifically denied that plaintiffs have suffered any damages caused by the WB Defendants. To the extent that there is any water intrusion in the Home, which is specifically denied, any such conditions were caused by the failure of the Plaintiffs to maintain the Home during the approximately 15 years in which they resided in the Home.

204. Denied. To the extent the allegations in paragraph 204 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraph 204 state conclusions of law, no response is required. By way of further response, Plaintiffs have lived in the Home with no complaints for approximately 15 years.

205. Denied. To the extent the allegations in paragraph 205 purport to characterize the June 15, 2018 letter from Plaintiffs to W.B. Homes, Inc., they are denied because the June 15, 2018 letter from Plaintiffs to W.B. Homes, Inc. is a document which speaks for itself.

206. Denied. To the extent the allegations in paragraph 206 state facts, any and all such facts are specifically denied. To the extent the allegations in paragraph 206 state conclusions of law, no response is required. By way of further response, the WB Homes Defendants have refused to perform work on the Home because they have no obligation to do so. To the extent that there is any water intrusion in the Home, which is specifically denied, any such conditions were caused by the failure of the Plaintiffs to maintain the Home during the approximately 15 years in which they resided in the Home.

17

Case# 2016-19272-40/Docketed at Montgomery County Prothonotary on 12/02/2020 2:04:37PM / Fee = 6.00 / The file certifies that this filing complies with the rules provided in sections 1 (f)-(f) (6) of Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

207-209.  Denied.  To the extent the allegations in paragraphs 207-209 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 207-209 state conclusions of law, no response is required.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

210.    The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

211.    Denied.  To the extent the allegations in paragraph 211 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 211 state conclusions of law, no response is required.  By way of further response, Penn Gwyn entered into an agreement of sale with W.B. Homes, Inc. to convey title of the lot directly to Plaintiffs.  In the Plaintiffs' Agreement of Sale with W.B. Homes, Inc., W.B. Homes, Inc. disclosed to Plaintiffs that W.B. Homes, Inc. was the equitable owner of the Property pursuant to W.B. Homes, Inc.'s agreement with Penn Gwyn.  *See Exhibit "C" to Plaintiffs' Complaint at ¶4.*

212.    Denied.  To the extent the allegations in paragraph 212 purport to characterize any alleged contract between Penn Gwyn and W.B. Homes, Inc., they are denied because any alleged contract between Penn Gwyn and W.B. Homes, Inc. is a document which speaks for itself.

213.    Denied.  To the extent the allegations in paragraph 213 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 213 state conclusions of law, no response is required.  It is specifically denied that Penn Gwyn, Thornby, and W.B. Homes are essentially the same entity.  Penn Gwyn, Thornby, and W.B. Homes are/were separate and distinct entities.

214-219.  Denied.  To the extent the allegations in paragraphs 214-219 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraphs 214-219 state conclusions of law, no response is required.   By way of further response, Plaintiffs were never an intended beneficiary of any contract between any one or more of the WB Defendants.

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

220.    Denied.  To the extent the allegations in paragraph 220 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 220 state conclusions of law, no response is required.  By way of further response, W.B. Homes and the other W.B. Homes Entities are separate and different entities.

221.    Denied.  To the extent the allegations in paragraph 221 state facts, any and all such facts are specifically denied.  To the extent the allegations in paragraph 221 state conclusions of law, no response is required.  By way of further response, Penn Gwyn entered into an agreement with W.B. Homes, Inc. to convey the lots to purchasers of lots in the Development.  This fact was disclosed in ¶4 of the Agreement of Sale.  *See Exhibit "C" to Plaintiffs' Complaint at ¶4.*

222.    Admitted.

223.    Denied as stated.  Thornby was the general partner of Penn Gwyn.  Penn Gwyn and Thornby ceased operations on or about December 31, 2006.

224.    Denied.  W.B. Homes, Inc. is not the limited partner of Penn Gwyn.

225.    Admitted.

226.    Denied.  To the extent the allegations in paragraph 226 state facts, any and all facts are specifically denied.  To the extent the allegations in paragraph 226 state conclusions of law, no response is required.  It is specifically denied that the W.B. Homes Entities acted together regarding Plaintiffs' Home and other homes in the Development,   Certain WB Defendants were not associated in any way with Plaintiffs' Home or the Development.

227.    Denied.  To the extent the allegations in paragraph 227 purport to characterize the W.B. Homes' website and marketing materials, they are denied because the W.B. Homes' website and marketing materials are documents which speak for themselves.  To the extent the allegations in paragraph 227 state facts, any and all facts are specifically denied.  To the extent the allegations in paragraph 227 state conclusions of law, no response is required.

19

228.   Denied.   To the extent the allegations in paragraph 228 state facts, any and all facts are specifically denied.   To the extent the allegations in paragraph 228 state conclusions of law, no response is required.   It is specifically denied that the W.B. Homes Entities all participated in and benefited from the development, construction, marketing, and sale of Plaintiffs' Home,   Certain WB Defendants were not associated in any way with Plaintiffs' Home or the Development.

229-237.   Denied.   To the extent the allegations in paragraphs 229-237 state facts, any and all such facts are specifically denied.   To the extent the allegations in paragraphs 229-237 state conclusions of law, no response is required.   By way of further response, to the extent that Plaintiffs seek to allege individual liability against one or more of the individual WB Defendants, apart from several bald, conclusory allegations, Plaintiffs have not asserted any actual facts which would support any claims of individual liability against any one or more of the WB Defendants have failed to plead the requisite facts required at law to support any such purported claims.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

238.   The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

239.   Denied.   Paragraph 239 is directed to parties other than WB Defendants and therefore no response is required.   By way of further response, W.B. Development was incorporated on or about August 17, 1987.

240.   Denied.   Paragraph 240 is directed to parties other than WB Defendants and therefore no response is required.   By way of further response, W.B. Development ceased operations as of June 30, 2018 and was merged out of existence into W.B. Homes, Inc.   W.B. Development was not involved with the planning, development, building, selling, marketing, advertising, or any other aspect of Plaintiffs' Home, Property, or the Bethel Knoll housing development.

20

241.   Denied.   Paragraph 241 is directed to parties other than WB Defendants and therefore no response is required.   To the extent the allegations in paragraph 241 state facts, any and all facts are specifically denied.   To the extent the allegations in paragraph 241 state conclusions of law, no response is required.   By way of further response, W.B. Development ceased operations as of June 30, 2018 and was merged out of existence into W.B. Homes, Inc. W.B. Development was not involved with the planning, development, building, selling, marketing, advertising, or any other aspect of Plaintiffs' Home, Property, or the Bethel Knoll housing development.

242-243.   Denied.   Paragraphs 242-243 are directed to parties other than WB Defendants and therefore no response is required.   To the extent the allegations in paragraphs 242-243 state facts, any and all facts are specifically denied.   To the extent the allegations in paragraph 242-243 state conclusions of law, no response is required.   By way of further response, W.B. Development did not acquire W.B. Homes, Inc.   W.B. Development ceased operations as of June 30, 2018 and was merged out of existence into W.B. Homes, Inc.   W.B. Development was not involved with the planning, development, building, selling, marketing, advertising, or any other aspect of Plaintiffs' Home, Property, or the Bethel Knoll housing development.

244.   Denied.   Paragraph 244 are directed to parties other than WB Defendants and therefore no response is required.   To the extent the allegations in paragraph 244 state facts, any and all facts are specifically denied.   To the extent the allegations in paragraph 244 state conclusions of law, no response is required.   By way of further response, W.B. Development ceased operations as of June 30, 2018 and was merged out of existence into W.B. Homes, Inc. W.B. Development was not involved with the planning, development, building, selling, marketing, advertising, or any other aspect of Plaintiffs' Home, Property, or the Bethel Knoll housing development.

**WHEREFORE,** defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants and all other Defendants with prejudice.

21

Firefox

245.   The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

246-257.   Denied.  Paragraphs 246-257 are directed to parties other than WB Defendants and therefore no response is required.  To the extent the allegations in paragraphs 246-257 state facts, any and all facts are specifically denied.  To the extent the allegations in paragraphs 246-257 state conclusions of law, no response is required.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

258.   The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

259-277.   Denied.  Paragraphs 259-277 are directed to parties other than WB Defendants and therefore no response is required.  To the extent the allegations in paragraphs 259-277 state facts, any and all facts are specifically denied.  To the extent the allegations in paragraphs 259-277 state conclusions of law, no response is required.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

278.   The WB Defendants incorporate the preceding responses as if fully set forth at length herein.

279-294.   Denied.  Paragraphs 279-294 are directed to parties other than WB Defendants and therefore no response is required.  To the extent the allegations in paragraphs 279-294 state facts, any and all facts are specifically denied.  To the extent the allegations in paragraphs 279-294 state conclusions of law, no response is required.

22

WHEREFORE, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

## NEW MATTER

295.   The WB Defendants incorporate the averments contained in the preceding paragraphs as if fully set forth at length herein.

296.   Plaintiffs' claims are barred by the statute of repose.

297.   Plaintiffs' claims are barred under the applicable statute of limitations.

298.   Plaintiffs' claims are barred as moot.

299.   Plaintiffs' claims are barred, in whole or in part, under the doctrine of accord and satisfaction.

300.   Plaintiffs' claims are barred, in whole or in part, under the doctrine of estoppel.

301.   Plaintiffs' claims are barred, in whole or in part, under the doctrine of laches.

302.   Plaintiffs' claims are barred, in whole or in part, under the doctrine of justification.

303.   Plaintiffs have failed to state a claim upon which relief can be granted.

304.   Plaintiffs' claims are barred, in whole or in part, under the doctrine of waiver.

305.   Plaintiffs' claims are barred by the statute of frauds.

306.   Plaintiffs' claims are barred, in whole or in part, under the economic loss doctrine.

307.   Plaintiffs' claims are barred, in whole or in part, under the gist of the action doctrine.

308.   Plaintiffs' claims are barred, in whole or in part, by the Agreement of Sale which in pertinent part states:

23.   **LIMITED WARRANTY:**   Seller agrees to provide to Buyer at settlement a five (5) year limited warranty . . . **BUYER ACKNOWLEDGES THAT HE HAS REVIEWED SAID "LIMITED WARRANTY" . . . BUYER ACKNOWLEDGES AND AGREES THAT SAID "LIMITED WARRANTY" (EXHIBIT "A") SHALL BE THE SOLE AND EXCLUSIVE WARRANTY CONCERNING THE CONSTRUCTION OF THE SUBJECT HOUSE AND PREMISES, AND ALL OF THE RIGHTS, REMEDIES AND OBLIGATIONS WITH RESPECT TO ANY WARRANTY CONCERNING**

23

SAID CONSTRUCTION SHALL BE AS SET FORTH IN EXHIBIT "A". NO IMPLIED WARRANTY (WHETHER OF MERCHANTABILITY, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE) IS GIVEN ON PORTIONS OF THE PREMISES OTHER THAN CONSUMER PRODUCTS. THE MAXIMUM LIABILITY OF SELLER UNDER THIS WARRANTY SHALL BE THE REPLACEMENT COST OF THE DEFECTIVE PORTION OF THE UNIT. IN NO EVENT SHALL SELLER BE RESPONSIBLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES OR PERSONAL INJURIES ARISING FROM ANY BREACH OF THIS WARRANTY. *Complaint at Exhibit "C" ¶23.*

309.   Plaintiffs' claims are barred, in whole or in part, under the doctrine of failure of consideration.

310.   Plaintiffs' claims are barred, in whole or in part, under the doctrine of immunity from suit.

311.   Plaintiffs' claims are barred, in whole or in part, as a result of Plaintiffs' failure to mitigate the damages.

312.   Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' contributory negligence.

313.   Plaintiffs' claims are barred, in whole or in part, by superseding and/or intervening causes.

314.   Plaintiffs' claims are barred, in whole or in part, by the failure of Plaintiffs to maintain the Home.

315.   Plaintiffs' claims against the individual WB Defendants are barred, in whole or in part, as a result of the failure of Plaintiffs to properly plead the requisite facts necessary to maintain claims based upon piercing the corporate veil, alter ego, or any other legal theory which is the basis for individual claims against the individual WB Defendants.

**WHEREFORE,** defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs William and Rose Marie McGinnis and that this Honorable Court dismiss Plaintiffs' claims against the WB Defendants with prejudice.

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

## CROSSCLAIMS AGAINST DEFENDANT OMNIA GROUP, INC.

316.    The WB Defendants incorporate the preceding paragraphs as if fully set forth at length herein.

317.    If Plaintiffs' claims are proven at trial, then their damages were caused by the negligence, breaches of other duties and obligations owed and/or other liability producing acts or omissions of defendant Omnia Group, Inc. and therefore, Omnia Group, Inc. is solely liable for the damages incurred by Plaintiffs.

318.    In the alternative, if it is found that the WB Defendants (collectively or individually) are liable to Plaintiffs, which any liability is specifically denied, then Plaintiffs' damages were also caused by the negligence, breaches of other duties and obligations owed and/or other liability producing acts or omissions of defendant Omnia Group, Inc. and therefore Omnia Group, Inc. is jointly and severally liable with the WB Defendants, liable over to the WB Defendants, and/or liable to the WB Defendants by way of indemnity, contribution, or other causes of action for the full amount of any sums which may be adjudged against the WB Defendants.

**WHEREFORE**, defendants W.B. Homes, Inc., Penn Gwyn LP, Thornby Development Corp., and William J. Bonenberger demand judgment in their favor and against crossclaim defendant Omnia Group, Inc. plus interest and costs of suit, and other relief the Court may deem appropriate.

CLEMM AND ASSOCIATES, LLC

Dated:   December 16, 2019

By:    */s/ Mark C. Clemm*
Mark C. Clemm, Esquire
Katie M. Clemm, Esquire
Attorneys for defendants
W.B. Homes, Inc., Penn Gwyn LP,
Thornby Development Corp.,
William J. Bonenberger, and W.B.
Development Co., Inc.

25

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

## VERIFICATION

I, William Bonenberger, hereby verify that I am an authorized agent of defendants WB

Homes, Inc., Penn Gwyn LP, Thornby Development Corp., William J. Bonenberger, and W.B.

Homes Development Co., Inc., that I am authorized to make this verification on their behalf, and

that the statements made in the foregoing pleading are true and correct to the best of my

knowledge, information, and belief.  I understand that statements herein are made subject to the

penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Dated: December 4, 2019

William Bonenberger

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

CLEMM AND ASSOCIATES, LLC
Mark C. Clemm, Esquire, I.D. #36665
Katie M. Clemm, Esquire, I.D. #320733
488 Norristown Road, Suite 140
Blue Bell, PA   19422                          Attorneys for defendants WB Homes, Inc.,
(484) 539-1300                                 Penn Gwyn LP, Thornby Development
mclemm@clemmlaw.com                            Corp., William J. Bonenberger, and W.B.
kclemm@clemmlaw.com                            Homes Development Co., Inc.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

WILLIAM MCGINNIS and              :
ROSE MARIE MCGINNIS              : No.  2018-19272
                                 :
            v.                   :
                                 :
W.B. HOMES, INC., et al.         :
                                 :

### CERTIFICATE OF SERVICE

I, Katie M. Clemm, Esquire, hereby certify that a true and correct copy of the Amended
Answer with New Matter and Crossclaims of defendants WB Homes, Inc., Penn Gwyn LP,
Thornby Development Corp., and William J. Bonenberger was served on this date via e-filing
and/or email on the following:

Jennifer M. Horn, Esquire
Natalie Young, Esquire
Horn Williamson, LLC                      Gregory J. Kelley, Esquire
2 Penn Center, Suite 1700                 Marshall Dennehey Warner Coleman & Goggin
1500 JFK Blvd                             620 Freedom Business Center, Suite 300
Philadelphia PA 19102                     King of Prussia, PA  19406
jhorn@hornwilliamson.com                  gjkelley@mdwcg.com
nyoung@hornwilliamson.com


CLEMM AND ASSOCIATES, LLC

Dated: December 16, 2019          By:    /s/ Katie M. Clemm
                                         Mark C. Clemm, Esquire
                                         Katie M. Clemm, Esquire
                                         Attorneys for defendants W.B. Homes, Inc.,
                                         Penn Gwyn, L.P., Thornby Development
                                         Corp., William J. Bonenberger, and W.B.
                                         Homes Development Co., Inc.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "C"

Firefox
https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

RECEIVED MAR 1 9 2008

j:/wpfiles/jackie/asale/contractor-subcontractor
Rev. 01.08.08

## AGREEMENT BETWEEN CONTRACTOR AND SUBCONTRACTOR

**THIS AGREEMENT,** made this ___19___ day of ___March___, 200_8_, A.D., between **W. B. HOMES, INC.** (hereinafter referred to as "Contractor") and ___Havard Lynch Plastering In___(hereinafter referred to as "Subcontractor").

1. **Project(s):** _____

2. **BINDING EFFECT ON OTHER ENTITIES:** Contractor, for tax and liability reasons, frequently creates separate corporations, limited partnerships or limited liability companies for different construction projects. Payment for work performed by Subcontractor may come either from Contractor or the related entity. Subcontractor acknowledges that so long as it is dealing with an entity related to Contractor that the terms and conditions of this Agreement shall be binding without the necessity of having entered into a separate contract with the related entity.

4. **THE "WORK" AND THE "CONTRACT SUM":** Either as an Exhibit to this Agreement or by Addendum(s) to this Agreement, Contractor shall provide to Subcontractor specific contract sums for work to be performed that Subcontractor and Contractor have agreed to for a specific project or multiple projects as determined by Contractor. Either as part of this Agreement, or subsequent Addendums, or by separate correspondence, Contractor shall provide to Subcontractor specific job specifications, and scope of work that all contract sums are based upon. Subcontractor shall perform all work and furnish all material as more particularly described in these specifications and scope of work.

The Contractor shall pay the Subcontractor for the performance of the work subject only to additions and deductions made by written Change Order the dollar amounts more particularly described in the Exhibit attached to this Agreement or in the previously referenced Addendum(s).

4. **INVOICING:**

   A. Vendors **cannot** submit invoices for more than one (1) subdivision on one (1) invoice. Each invoice submitted by a vendor must be specific to only one (1) subdivision.

   B. Vendors are encouraged to invoice each lot or unit on it's own invoice.

   C. Vendors are encouraged to submit any invoices for "extras" beyond the W.O. amount on a separate invoice. They can have multiple extras on one invoice, but each invoice for "extras" above the W.O. amount should only be for individual lots (i.e.: one lot per invoice).

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1

Firefox                                                                        https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

D. Vendors and suppliers are responsible to submit invoices for their work or materials. Invoices will not be accepted or processed if received 90 calendar days after materials have been delivered or work has been substantially completed.

5. **PROGRESS PAYMENTS:**   Only bills for portions of the Work completed, received prior to a voucher being prepared, will be considered for that voucher.

6. **FINAL PAYMENT:** Final payment for each unit (lot) shall be due when the Work described in this Agreement and/or the previously referenced Addendum(s) is fully completed and performed in accordance with the terms hereof, or the terms of the previously referenced Addendums, or the job specifications and scope of work issued by separate correspondence from Contractor, and is satisfactory to the Contractor or its duly authorized agent. By issuance of the voucher for final payment for material supplied and/or work completed on any unit, Subcontractor is thereby affirming to the Contractor that all payrolls, payroll taxes, bills for materials and equipment, and all known indebtedness connected with the Work has or will be satisfied by Subcontractor.

7. **TIME OF COMMENCEMENT AND COMPLETION:** As time is of the essence, Subcontractor agrees to perform the Work as soon as possible and as scheduled by Contractor, with the appropriate amount of workmen as agreed to by Contractor and Subcontractor, and to complete the Work in it's entirety, promptly, in a good, neat, workmanlike, and professional manner.

8. **SUBCONTRACTOR'S RESPONSIBILITIES:**

a. In carrying out the Work, the Subcontractor shall take all necessary precautions to protect properly the work of Contractor and other subcontractors from damage caused by Subcontractor's operations.

b. The Subcontractor shall at all times keep the buildings and premises clean of debris arising out of the operations of this Agreement. At the completion of each phase of Subcontractor's work all debris caused by the performance of Subcontractor's work shall be placed in the on-site job dumpster, unless directed otherwise by W.B. Homes Superintendent.

c. The Subcontractor shall take all required safety precautions with respect to the Work, shall comply with all safety measures initiated by the Contractor, O.S.H.A., and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property in accordance with the requirements thereof. The Subcontractor shall report to the Contractor in writing and within twenty four (24) hours, any injury to any of the Subcontractor's employees at this site.

d. The Subcontractor shall not assign this Agreement without the written consent of the Contractor, nor subcontract the whole of the Work contemplated by this Agreement without the prior written consent of the Contractor, nor further subcontract any portion of the Work contemplated by this Agreement without

2

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the prior written consent of the Contractor. The Subcontractor shall not assign any amounts due or to become due under this Agreement without prior written notice to and approval by the Contractor.

In the event Contractor does consent in writing to any Assignment or Subcontract the Assignee or Subcontractor must provide Contractor with identical insurance to that called for to be supplied by the Subcontractor that is executing this Agreement. Failure by Assignee or Subcontractor to supply to Contractor said insurance shall invalidate Contractor's consent to any Assignment or Subcontract.

e.  The Subcontractor warrants that all materials and equipment furnished and incorporated by Subcontractor in completing the Work shall be "new" unless otherwise specified, and that all work to be performed under this Agreement shall be of good quality, free from faults and defects and in conformance with the Contractor's blue prints, scope of work, and industry accepted performance standards and requirements. All work not conforming to these blue prints, requirements and standards may be considered defective. The warranty provided in Paragraph 16 shall be in addition to, and not in limitation of, any other warranty or remedy accorded by law.

f.  The Subcontractor agrees that if the Subcontractor shall neglect to prosecute the Work diligently and properly, or fail to perform any provisions of this Agreement, the Contractor, after three (3) days written notice to the Subcontractor, may, without prejudice to any other remedy Contractor may have, terminate this Agreement and make good such deficiencies and may deduct the cost thereof from the payments then or thereafter due the Subcontractor; provided, however, that if such action is based upon faulty workmanship or materials and equipment, the Contractor or its duly authorized agent shall first have determined the workmanship or materials and equipment are not in accordance with the Contractors requirements and standards.

g.  The Subcontractor shall furnish periodic progress reports on the Work as requested by the Contractor, including information on the status of materials and equipment under this Agreement, which may be in the course of preparation or manufacture.

h.  The Subcontractor shall cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's work, and shall participate in the preparation of coordinated drawings in areas of congestion as required by the Contractor, specifically noting and advising the Contractor of any such interference.

i.  The Subcontractor shall cooperate with the Contractor in scheduling and performing the Work to avoid conflict or interference with the work of others.

3

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

j. The Subcontractor shall promptly submit shop drawings and samples, if applicable, and if requested by Contractor, in order to perform the Work efficiently, expeditiously, and in a manner that will not cause delay in the progress of the work of the Contractor or other subcontractors.

k. The Subcontractor shall give all notices and comply with all laws, ordinances, rules, regulations, and orders of any public authority bearing on the performance of the Work under this Agreement.

l. The Subcontractor shall comply with all Federal , State and local tax laws, social security acts, unemployment compensation acts, O.S.H.A., and workmen's compensation acts insofar as applicable to the performance of this Agreement.

m. The Subcontractor agrees that all work shall be done subject to the final approval of the Contractor and the Municipality.

n. Subcontractor shall perform all work in accordance with the applicable building code requirements.  If there is any discrepancy between the applicable building codes and the scope of work provided by Contractor, it shall be Subcontractor's responsibility to promptly notify Contractor in writing of the discrepancy.

o. Subcontractor shall promptly notify Contractor's Superintendent if they notice mistakes, errors, or faulty workmanship performed on behalf of other Subcontractors.

p. Subcontractor shall be responsible to ensure that all their vehicles and the vehicles of their agents (ie; delivery trucks, etc.) clean their tires properly before exiting the jobsite onto existing roads.

q. When a Subcontractor is the last person or crew performing work in a unit that is lockable (i.e.: windows, doors, and exterior locks installed) it shall be their responsibility to close and lock all windows and doors at the end of each workday.

9. **PRICE PROTECTION:** It is agreed that the Contract Sum for all work performed by Subcontractor shall be as designated on the attached Exhibit and/or in the previously referenced Addendum(s).  It is agreed that all pricing listed on the attached Exhibit shall be valid for all work where work orders are sent to Subcontractor by _____.  In the event the time period for price protection lapses, thereafter price protection shall automatically renew for sixty (60) day periods until Subcontractor shall provide sixty (60) day written notice to Contractor of a price change.  Thereafter, Contractor and Subcontractor will either:  (a) execute a new Addendum listing the agreed to prices and price protection or (b) terminate this Agreement.

All price increase requests shall be made to the Contractor in writing as follows:

4

Firefox                                                    https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Attn:  Mr. Steve Cava
        Director of Estimating, Purchasing & Special Projects
        W. B. Homes, Inc.
        404 Sumneytown Pike, Suite 200
        North Wales, PA 19454

All price increase requests will be replied to in writing by Contractor within ten (10) days of receipt by Contractor.  The Subcontractor shall not consider the price increase request "received" by the Contractor until the appropriate correspondence has been received by the Subcontractor indicating the price increase request has been received by Contractor and is in the process of being reviewed.

10. **JOB CLEAN UP:**  Upon completion of Subcontractor's Work as described in this Agreement and the previously referenced Addendum(s), Subcontractor shall be responsible to place all debris caused by the performance of Subcontractor's work in the on-site job dumpster, unless directed otherwise by W. B. Homes Superintendent.

11. **INDEMNIFICATION:**  Subcontractor assumes entire responsibility and liability and shall defend, indemnify and hold harmless the Contractor (including its Officers, Directors, Subsidiaries, and all other related, affiliated and created entities including but not limited to General Partnerships, Limited Partnerships, Limited Liability Corporations, Representatives, successors, assigns, agents, and employees), the Contractor's surety, the Contractor's other subcontractors and suppliers, the Owner and each of their agents, representatives, consultants and employees (the "Indemnities") for, from and against any and all claims, demands, liabilities, penalties, fines, settlements, interests, loss, damage, attorney fees, costs and/or expenses, of whatsoever kind or nature, including but not limited to property damage or for personal injuries (including death) to any and all persons, resulting from the Subcontract Work (including but not limited to that resulting directly or indirectly from work performed under the Subcontract, any change order, any other work incidental thereto and any other work performed by the Subcontractor and/or its subcontractors / suppliers related to the Principal Contract, whether performed at or off the project site, or resulting directly or indirectly from hazardous or radioactive waste or product on, in or entering the project site or the condition of the site), arising there from or in any manner occurring in connection therewith, even if caused, solely or in part by any negligent, grossly negligent, willful or other, act or omission of any Indemnities, the Subcontractor, the Subcontractor's subcontractors or suppliers, their agents, representatives or anyone employed directly or indirectly by any of them or by anyone for whose acts any of them may be liable, whether they are known or unknown to Contractor and/or Subcontractor. If any and all claims against the Indemnities by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor, the Subcontractor's subcontractors or supplies, their agents, representatives or anyone for whose acts the Subcontractor may be liable, for which the Contractor is seeking indemnification under this paragraph, the indemnification obligation shall not be limited in any

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Firefox

way by any applicable provisions of any workers' compensation acts, disability benefit acts or other employee benefit acts and for this purpose, the Subcontractor hereby waives its right to immunity as an employer under any workers' compensation act, disability benefit acts or other employee benefit acts. The Subcontractor further agrees to defend, indemnify and hold harmless the Indemnities from any and all manner of claims, damages or suits for infringement or violations of patents or patent rights and including all costs and expenses (including attorney's fees) which the indemnities may incur or sustain in connection with the same.   Subcontractor acknowledges that specific consideration has been received by it for this indemnification.

12. **TIME:**   All time limits stated in this Agreement are of the essence of the Agreement.

13. **PAYMENT:**   As determined by Contractor, payments may be withheld on account of: (1) defective work not remedied, (2) claims filed, (3) failure to make payments properly for labor, materials, equipment, insurance, or taxes, (4) damage to Contractor, another contractor or subcontractor, or (5) unsatisfactory prosecution of the Work by the Subcontractor.

14. **SUBCONTRACTOR'S LIABILITY INSURANCE:**

   a) Prior to starting work, the Subcontractor shall obtain insurance in the minimum amounts shown below from a company that has a rating of ("A-VIII") or better from the A.M. Best Rating Company:

   1. Minimum acceptable limits of insurance from the Subcontractors are as follows:

   Commercial General Liability - Occurrence Form
   | | |
   |---|---|
   | General Aggregate | $2,000,000 (Per Project) |
   | Products/Completed Operations | $1,000,000 |
   | Each Occurrence | $1,000,000 |
   | Personal Advertising Injury | $1,000,000 |
   | Fire Damage | $   50,000 |
   | Medical Expense | $    5,000 |

   Coverage should comply with standard ISO forms including but not limited to:

   - Independent Contractors Liability
   - Products/Completed Operations Liability
   - Contractual Liability
   - Explosion, Collapse and Underground Coverage

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

6

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

<u>Workers Compensation and Employers Liability</u>
Coverage A (Workers Compensation) – Statutory
Coverage B (Employers Liability)
$500,000 – Each Accident
$500,000 – Disease Policy Limit
$500,000 – Disease Each Employee

Including Broad Form All States endorsement. If Subcontractor is a sole proprietorship coverage is now available through the PA State Workers Insurance Fund. Subcontractor shall be required to provide proof of Workmen's Comp Insurance.

<u>Sole Proprietors</u>
Subcontractors who are sole proprietorships agree that they will make no claim against Contractor for any claim, damage, loss or expense, including bodily injury, sickness, disease or death.

<u>Commercial Auto Liability</u>
Covering all owned, non owned or hired vehicles including loading and unloading with limits of $1,000,000 Combined Single Limit of Liability.

<u>Umbrella / Excess Liability</u>
Depending on the exposure, the Subcontractor may be asked to provide evidence of a minimum limit of $1,000,000.00 Umbrella / Excess Liability.

b) Prior to starting work the Subcontractor shall supply to Contractor / Contractor Entity an Insurance Certificate that includes the following:

1. Certificate shall include language that requires carrier to provide a minimum thirty (30) day written notice of cancellation to Contractor.

2. Certificate shall list Contractor and all of it's Officers, Directors, Subsidiaries and all other related, affiliated and created Entities including but not limited to General partnerships, Limited Partnerships, Limited Liability Corporations, and Corporations as additional insured on the General Liability as respects to operations of the subcontractor. Certificate should reflect this wording as per attached sample.

3. The Subcontractor will obtain Endorsement CG 20 37 and forward a copy to Contractor each year on or before the renewal date of Subcontractor's policy.

4. The Subcontractor's General Liability policy shall state that coverage is Primary and Non-Contributory.

5. The General Liability, Automobile, and Workers Compensation policies of Subcontractor shall include a Waiver of Subrogation Endorsement.

c) Subcontractor warrants that the coverage represents the true classification for the exposures of the industry operations. The certificate of insurance provided must indicate the General Liability classification code and description of classification.

d) The Work shall not commence and no invoices or vouchers will be paid by Contractor until an approved Certificate(s) of Insurance is/are filed with Contractor in the form and amounts described in this Agreement.

e) Contractor shall not be liable for, and Subcontractor hereby releases Contractor from all liability to Subcontractor's insurance carrier(s) or to anyone claiming under or through Subcontractor by reason of subrogation or otherwise.

f) The Subcontractor waives all rights against the Contractor and against all other subcontractors for damages caused by fire or other perils to the extent covered by property insurance provided by Contractor.

15. **CHANGE IN THE WORK:** The Contractor, without invalidating this Agreement or any of the Addendum(s), may order Changes in the Work consisting of additions, deletions, or modifications; the Contract Sum and the Contract Time being adjusted accordingly. All such Changes in the Work shall be authorized by written Change Orders signed by the Contractor or Contractor's duly authorized agent.

The cost or credit to the Contractor from a Change in the Work shall be determined by mutual agreement before executing the work involved.

16. **CORRECTION OF WORK / WARRANTY:** The Subcontractor shall correct any of the Work that fails to conform to the requirements and standards of the Contractor where such failure to conform appears during the progress of the Work, and shall promptly remedy any defects due to faulty materials, equipment or workmanship which appear within a period of one (1) year from the date of settlement with the ultimate purchaser or within such longer period of time for latent defects, or as may be prescribed by law, or by the terms of any applicable special guarantee.

In the event that the Subcontractor does not perform the whole or parts of the Work when so asked to do so by the Contractor, the Contractor may terminate this Agreement with the Subcontractor and the Subcontractor may be held liable for any increased costs to the Contractor.

17. **ARBITRATION:** All claims, disputes, and other matters in question arising out of or relating to this Agreement shall be decided only by arbitration in accordance

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

8

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

with the following rules. Contractors and Subcontractor shall each select an individual to select the Arbitrator within ten (10) business days of receipt of written notice by the other party that an Arbitration claim is being filed. Those two (2) representatives must within ten business (10) days thereafter agree and appoint a third person who will be the sole arbitrator. Arbitration must commence within twenty (20) calendar days after the selection of the arbitrator and the decision shall be rendered within five (5) calendar days after the hearing. The fees of the arbitrator will be paid as determined by the arbitrator. The award rendered by the arbitrator shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

18. **RELEASE OF LIENS:** Subcontractor agrees to pay in full all of Subcontractor's subcontractors and materialmen, and all parties acting through or under them. In the event that a Mechanic's Lien is filed by Subcontractor or Subcontractor's subcontractors and materialmen, or any party acting through or under them, Subcontractor shall be responsible to Contractor for all attorney's fees incurred by Contractor, in the event that it is determined that Contractor did not owe Subcontractor any money, or that Subcontractor did not pay Subcontractor's subcontractors, materialmen, or any party acting through or under them. Upon completion of work, Subcontractor shall execute at the request of Contractor, a Release of Liens demonstrating that Subcontractor has been paid in full, and acknowledging that Subcontractor has paid all of Subcontractor's subcontractors, materialmen, and any other party acting through or under them.

19. **OTHER PROJECTS:** It is understood and agreed that from time to time Contractor may desire Subcontractor to perform work on projects or locations not specifically listed in Section #1 of this Agreement. In those instances, Contractor shall provide Subcontractor with a specific set of job specifications, scope of work, and payment schedule for the work to be performed. If Subcontractor agrees to perform said work then it is agreed that both parties are bound by all Terms and Conditions of this Agreement as though the project was specifically listed in Section #1 of this Agreement.

20. **This Agreement** does not obligate the Contractor to award any or all work to Subcontractor and shall not be interpreted as an exclusive Agreement for work at any particular project or location.

21. **This Agreement** shall inure to and be binding upon the parties hereto, their heirs, successors and, to the extent assignable, assigns.

22. **This Agreement** constitutes the entire agreement between the parties and there are no other understandings written or oral.

23. **This Agreement** may not be modified except by written agreement.

24. **This Agreement** shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

9

Firefox

**IN WITNESS WHEREOF,** the said parties hereto and intending to be legally bound hereby, have hereunto set their hands and seals on the date listed below.

**CONTRACTOR:**
**W. B. HOMES, INC.**

BY: _____ CFC

DATE: _____ Mr. 19, 2008 _____

**SUBCONTRACTOR:**

Howard Lynch Plastering Inc.

By: Howard Lynch Pres.

DATE: 3/10/08 _____

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

10

5/26/2020, 12:32 PM

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "D"

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "D"

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Firefox

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

WILLIAM McGINNIS, et. al.          :          2018-19272

    vs.                                         :

WB HOMES INC., et al.              :

**O R D E R**

**AND NOW**, this 23 day of April, 2020, it is hereby **ORDERED** and **DECREED** that the attached Stipulation signed by the parties is hereby made an Order of the Court.

BY THE COURT:



KELLY C. WALL, J.

**Copies sent by Prothonotary to:**
Plaintiff/Plaintiff's Counsel
Defendant/Defendant's Counsel

**Copies sent by Chambers to:**
Court Administration



2018-19272-0098  4/24/2020 9:15 AM # 12732318
Rcpt#Z3863215  Fee:$0.00  Order
Main (Public)
MontCo Prothonotary

**THIS DOCUMENT WAS DOCKETED AND SENT ON 04/24/2020**

1 of 1                                                                          5/26/2020, 12:33 PM

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILLIAM McGINNIS, et al. | : | CIVIL ACTION – LAW |
| Plaintiff, | : |  |
| vs. | : |  |
| WB HOMES INC., et al., | : | NO. 2018-19272 |
| Defendants. | : |  |

## STIPULATION

It is hereby stipulated, agreed and representing the affirmative consent of counsel, there being no present Case Management Order of Court precluding joinder of additional defendants or parties, or precluding other pleading matters by the parties (See, Case Management Order dated 03/02/2020, attached hereto as Exhibit "A"), and for avoiding piecemeal and multiple claims and litigation, seek to consolidate in this action all relevant and related parties, and claims relevant and related to such parties, Defendants, W.B. Homes, Inc. William B. Bonenberger, and Penn Gwynn, L.P. are hereby permitted to join as additional defendants Howard Lynch Plastering, Inc. and Antonio Coletta, LLC on the respective claims of common law and for contractual indemnity, and for insurance coverage protection upon the claims asserted in the Complaint to Join, attached hereto as Exhibit "B", all rights and privileges under the law and the Rules of Civil Procedure are preserved and reserved for the joined parties to assert any and all of their defenses, procedural and/or substantive.

WETZEL GAGLIARDI FETTER & LAVIN LLC

/s/Curtis P. Cheyney, III
Curtis P. Cheyney, III
*Co-counsel for Defendants, WB Homes, Inc. and William J. Bonenberger a/k/a William J. Bonnenberger; Penn Gwyn LP; and Thornby Development Corp.*

HORN WILLIAMSON, LLC

Jennifer M. Horn, Esquire
*Counsel for Plaintiffs*

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

5/26/2020, 12:33 PM

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

/s/ Gregory J. Kelley

Gregory J. Kelley, Esquire
Karen E. Grethlein, Esquire
*Counsel for Omnia Group, Inc. and Omnia
Group Architects, LLC*

**APPROVED:**

_____

                                      **J.**

2

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "E"

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

Firefox

**ERIE INSURANCE GROUP**
100 Erie Insurance Place • Erie, PA 16530

# CERTIFICATE OF INSURANCE
— THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY —

DATE (MM/DD/YY)
6/7/06

| NAME AND ADDRESS OF AGENCY | AGENT'S NO. |
|---|---|
| STORTI INSURANCE, LTD.<br>180 WEST RIDGE PIKE<br>LIMERICK, PA 19468-1714 | AA8470 |

**COMPANY(IES) AFFORDING COVERAGE**
Co.: C  ERIE INSURANCE COMPANY
Co.: D  ERIE INSURANCE PROPERTY & CASUALTY COMPANY
Co.: E  ERIE INSURANCE EXCHANGE Erie Indemnity Co., Attorney-In-Fact
Co.: G  FLAGSHIP CITY INSURANCE COMPANY

**NAME AND MAILING ADDRESS OF INSURED**
Howard Lynch Plastering Inc
3057 Pruss Hill Road
Pottstown, PA 19464-2216

This Certificate is issued for information purposes only. It does not list, amend, extend, or otherwise alter the terms and conditions of insurance coverage contained in the Policy(ies) indicated below issued by The ERIE. The terms and conditions of the Policy(ies) govern the insurance coverage as applied to any given situation.

Any party can request a copy and/or Declaration by asking the insured or the Agent. Limits shown may have been reduced by claims paid.

This is to certify that policies, as indicated by the Policy Number below, are in force for the Named Insured at the time that the Certificate is being issued.

| CO LTD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | | LIMITS | |
|---|---|---|---|---|---|---|---|
| E | **GENERAL LIABILITY**<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS MADE [X] OCCUR | ●0129 | 6/3/06 | 6/3/07 | EACH OCCURRENCE | $ | 1,000,000 |
| | | | | | FIRE DAMAGE (Any One Fire) | $ | 1,000,000 |
| | | | | | MED EXP (Any One Person) | $ | 5,000 |
| | | | | | PERSONAL & ADV. INJURY | $ | 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[X] POLICY [ ] PROJECT [ ] LOC | | | | GENERAL AGGREGATE | $ | 2,000,000 |
| | | | | | PRODUCTS-COMP/OP AGG | $ | 2,000,000 |
| E | **AUTOMOBILE LIABILITY**<br>[X] ANY AUTO* (OWNED, HIRED, NON-OWNED)<br>[ ] OWNED<br>[X] HIRED<br>[X] NON-OWNED<br>[ ] GARAGE | ●0013 | 6/3/06 | 6/3/07 | BODILY INJURY (EACH PERSON) | $ | |
| | | | | | BODILY INJURY (EACH ACCIDENT) | $ | |
| | | | | | PROPERTY DAMAGE | $ | |
| | | | | | BODILY INJURY AND PROPERTY DAMAGE COMBINED | $ | 1,000,000 |
| | **EXCESS LIABILITY**<br>[ ] OCCURRENCE<br>[ ] RETENTION  $ | | | | EACH OCCURRENCE | $ | |
| | | | | | AGGREGATE | $ | |
| E | **WORKERS COMPENSATION & EMPLOYERS LIABILITY** | ●512 | 6/3/06 | 6/3/07 | STATUTORY | | |
| | | | | | BODILY INJURY BY  ACCIDENT | $ | 100,000 EACH ACCIDENT |
| | | | | | DISEASE | $ | 500,000 POLICY LIMIT |
| | | | | | DISEASE | $ | 100,000 EACH EMPLOYEE |
| | **OTHER** | | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
WB Homes Inc. is hereby listed as additional insured.

CANCELLATION FOR NON-PAYMENT, CAUSE OR NAMED INSURED'S REQUEST: When an automobile policy is cancelled, written notice will be mailed to the Certificate Holder. When any of the above described policies (other than automobile) are cancelled before the expiration date thereof, The ERIE will endeavor to mail written notice to the Certificate Holder after the decision to cancel. Failure to mail such notice shall impose no obligation or liability of any kind upon The ERIE, its Agents or representatives.

CANCELLATION FOR SPECIAL CONTRACTS: (If the box is checked, this Certificate involves a special contract and the following cancellation provisions apply.) When an automobile policy is cancelled, written notice will be mailed to the Certificate Holder. When any of the above described policies (other than automobile) are cancelled before the expiration date thereof, The ERIE will endeavor to mail __30__ days written notice to the Certificate Holder before the decision to cancel. Failure to mail such notice shall impose no obligation or liability of any kind upon The ERIE, its Agents or representatives.

| CERTIFICATE HOLDER  [ ] ADDITIONAL INSURED; COMPANY LETTER____ | ATTENTION CERTIFICATE HOLDER |
|---|---|
| WB Homes, Inc.<br>404 Sunneytown Pike<br>Suite 200<br>North Wales, PA 19454<br><br>RECEIVED JUN 0 8 2006 | If there is a Certificate Holder for other policies of this insured, Certificates of Insurance for these other policies will be forwarded to you as soon as they are processed.<br><br>AUTHORIZED REPRESENTATIVE<br>_Karla Oswald_ |

UF23010/02                                                                 Page 1 of 1

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "F"

Case# 2018-19272-100 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "F"

Firefox

https://courtsapp.montcopa.org/psi/v/detail/Case/201155661

SEP-06-2006  14:16        STATE FARM                    12157266636      P.02

## CERTIFICATE OF INSURANCE

This certifies that
- ☒ STATE FARM FIRE AND CASUALTY COMPANY, Bloomington, Illinois
- ☐ STATE FARM GENERAL INSURANCE COMPANY, Bloomington, Illinois
- ☐ STATE FARM FIRE AND CASUALTY COMPANY, Scarborough, Ontario
- ☐ STATE FARM FLORIDA INSURANCE COMPANY, Winter Haven, Florida
- ☐ STATE FARM LLOYDS, Dallas, Texas

insures the following policyholder for the coverages indicated below:

Name of policyholder        Antonio Culotta

Address of policyholder     101 Hardwood Ln   Ivyland Pa  18974

Location of operations      Warrington Township

Description of operations

The policies listed below have been issued to the policyholder for the policy periods shown. The insurance described in these policies is subject to all the terms, exclusions, and conditions of those policies. The limits of liability shown may have been reduced by any paid claims.

| POLICY NUMBER | TYPE OF INSURANCE | POLICY PERIOD Effective Date | Expiration Date | LIMITS OF LIABILITY (at beginning of policy period) | |
|---|---|---|---|---|---|
| 57 7F | Comprehensive Business Liability | 07/25/06 | 07/25/07 | BODILY INJURY AND PROPERTY DAMAGE | |
| This insurance includes: ☒ Products - Completed Operations ☒ Contractual Liability ☒ Underground Hazard Coverage ☒ Personal Injury ☐ Advertising Injury ☐ Explosion Hazard Coverage ☐ Collapse Hazard Coverage ☐ ☐ | | | | Each Occurrence | $ 300,000.00 |
| | | | | General Aggregate | $ 600,000.00 |
| | | | | Products – Completed Operations Aggregate | $ 600,000.00 |

| | EXCESS LIABILITY | POLICY PERIOD Effective Date | Expiration Date | BODILY INJURY AND PROPERTY DAMAGE (Combined Single Limit) | |
|---|---|---|---|---|---|
| | ☐ Umbrella | | | Each Occurrence | $ |
| | ☐ Other | | | Aggregate | $ |

| POLICY NUMBER | TYPE OF INSURANCE | POLICY PERIOD Effective Date | Expiration Date | LIMITS OF LIABILITY | |
|---|---|---|---|---|---|
| 65-4F | Workers' Compensation and Employers Liability | 07/25/06 | 07/25/07 | Part 1 STATUTORY Part 2 BODILY INJURY | |
| | | | | Each Accident | $ 100,000.00 |
| | | | | Disease Each Employee | $ 500,000.00 |
| | | | | Disease - Policy Limit | $ 500,000.00 |

| POLICY NUMBER | TYPE OF INSURANCE | POLICY PERIOD Effective Date | Expiration Date | LIMITS OF LIABILITY (at beginning of policy period) |
|---|---|---|---|---|
| | | | | |

THIS CERTIFICATE OF INSURANCE IS NOT A CONTRACT OF INSURANCE AND NEITHER AFFIRMATIVELY NOR NEGATIVELY AMENDS, EXTENDS OR ALTERS THE COVERAGE APPROVED BY ANY POLICY DESCRIBED HEREIN.

Name and Address of Certificate Holder

If any of the described policies are canceled before its expiration date, State Farm will try to mail a written notice to the certificate holder

Homes Inc
Dunneytown Pike Suite 200
Wales PA  19454
Bonnie Waytowich

10 days before cancellation. If however, we fail to mail such notice, no obligation or liability will be imposed on State Farm or its agents or representatives.

*Nicholas V. Saracino*
Signature of Authorized Representative

Agent                                          10/13/2005
Title                                          Date

Agent's Code Stamp

NICHOLAS V. SARACINO INS.AGCY.INC.   6160
PHILADELPHIA                          F372

3 04-1999 Printed in U.S.A.

TOTAL P.02

Case# 2018-19272 Docketed at Montgomery County Prothonotary on 05/07/2020 4:43 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1 of 1                                                    5/26/2020, 12:34 PM