CLEMM AND ASSOCIATES, LLC
Mark C. Clemm, Esquire, 36665
Katie M. Clemm, Esquire, 320733
488 Norristown Road, Suite 140
Blue Bell, PA  19422
(484) 539-1300
mclemm@clemmlaw.com                          Attorneys for defendant W.B. Homes, Inc.
kclemm@clemmlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| | : | NO.:  2:21-cv-3977 |
| v. | : | |
| | : | |
| HOWARD LYNCH PLASTERING, INC. and W.B. HOMES, INC. | : | |
| | : | |
| | : | |

## ANSWER OF W.B. HOMES, INC. TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant W.B. Homes, Inc. ("WB" or "WB Homes"), by and through counsel Clemm and Associates, LLC, hereby answers the Complaint filed by plaintiff Main Street America Assurance Company ("Main Street") and asserts Affirmative Defenses to the Complaint as follows:

1.      Admitted.

2.      Admitted that Main Street seeks declaratory relief.  Denied that Main Street is entitled to the relief which it has requested.

3.      Denied.  The owners of various homes built by WB (as the general contractor) made claims against WB for damages which allegedly were caused by defective construction (the "Claims').  Some of the claims involved litigation and others did not.  To the extent that Plaintiff's allegations differ from the foregoing, they are specifically denied.

1

4.      Denied.  The owners of various homes built by WB (as the general contractor) made Claims against WB for damages which allegedly were caused by defective construction. Some of the Claims involved litigation and others did not.  To the extent that Plaintiff's allegations differ from the foregoing, they are specifically denied.

5.      Admitted.

6.      Admitted.

7.      Admitted that Main Street seeks declaratory relief.  Denied that Main Street is entitled to the relief which it has requested.

8.      Admitted on information and belief.

9.      Denied.  To the extent that the averments of this paragraph state facts, all such facts are specifically denied.  To the extent that the averments of this paragraph state conclusions of law, no response is required.

10.      Denied.  To the extent that the averments of this paragraph state facts, all such facts are specifically denied.  To the extent that the averments of this paragraph state conclusions of law, no response is required.

11.      Admitted on information and belief.

12.      Admitted.

13.      Denied.  To the extent that the averments of this paragraph state facts, all such facts are specifically denied.  To the extent that the averments of this paragraph state conclusions of law, no response is required.

14.      Denied.  To the extent that the averments of this paragraph state facts, all such facts are specifically denied.  To the extent that the averments of this paragraph state conclusions of law, no response is required.

15.      Denied.  To the extent that the averments of this paragraph state facts, all such facts are specifically denied.  To the extent that the averments of this paragraph state conclusions of law, no response is required.

16.      Admitted that Main Street issued insurance policies (the "Policies") covering defendant Howard Lynch Plastering, Inc. ("Lynch").  The applicable policy terms and periods can only be determined after discovery has been obtained regarding the Policies.

17.      Admitted that the Policies had various terms and provided multiple forms of coverage.  The Policies are writings which speak for themselves.  Any purported characterization

of the Policies is specifically denied.  It is admitted that the Policies included businessowners coverage.

18.     Admitted that the Policies had various terms and provided multiple forms of coverage.  The Policies are writings which speak for themselves.  Any purported characterization of the Policies is specifically denied.  It is admitted that the Policies included businessowners coverage.

19.     Admitted that the Policies had various terms and provided multiple forms of coverage.  The Policies are writings which speak for themselves.  Any purported characterization of the Policies is specifically denied.  It is admitted that the Policies included businessowners coverage.

20.     Admitted that the Policies had various terms and provided multiple forms of coverage.  The Policies are writings which speak for themselves.  Any purported characterization of the Policies is specifically denied.  It is admitted that the Policies included businessowners coverage.   Although Main Street has produced certain documents which purport to be endorsements to the Policies, it is specifically denied that any such endorsements were: a) the subject of negotiation or any meeting of the minds between carrier and customer; b) ever agreed to by the insured; ever provided to the insured in a timely fashion; c) applied to the Claims currently at issue. By way of further response, in the event that the "Exterior Insulation and Finish Systems" exclusion which was allegedly added to the Policies at some point in time constitutes a binding amendment to the Policies (which is expressly denied), the aforesaid exclusion is unreasonable, unconscionable and against public policy because it seems to completely eviscerates the primary purpose for the Policies which was to insure a stucco and siding contractor for work which he performed as an installer of stucco, siding and other exterior cladding systems.  Main Street essentially is taking the position that it provided insurance coverage to Lynch, including completed products coverage, and accepted significant premium payments from Lynch in connection with those Policies, and then, without Lynch's knowledge, participation, acquiescence or consent, unilaterally issued an endorsement to the Policies which purported to completely exclude coverage for most if not all of the services which Lynch was providing as a contractor.  It is specifically denied that anything in the Policies, including any alleged endorsements, limits any coverage for the claims being made by WB Homes against

Lynch or which absolves Main Street from providing indemnification for Lynch in connection with the aforesaid claims.

21.     Admitted that the Policies had various terms and provided multiple forms of coverage.  The Policies are writings which speak for themselves.  Any purported characterization of the Policies is specifically denied.  It is admitted that the Policies included businessowners coverage.  Although Main Street has produced certain documents which purport to be endorsements to the Policies, it is specifically denied that any such endorsements were: a) the subject of negotiation or any meeting of the minds between carrier and customer; b) ever agreed to by the insured; ever provided to the insured in a timely fashion; c) applied to the claims currently at issue.  By way of further response, WB Homes specifically meets the definition of an "additional insured" as defined in the Policies. The subcontractor agreement to which Lynch and WB Homes were parties specifically required and anticipated WB Homes being an additional insured under the Policies. As stated in the Contractor's Extension Endorsement, "Any person or organization for whom you are performing operations is also an additional insured, when you and such person or organization have agreed in writing in the contract that such person or organization be added as an additional insured on your policy." Coverage includes acts or omissions of Lynch and anyone acting on his behalf in the performance of his ongoing operations or "his work" included within the "products completed operations" hazard for the additional insured as described in the written contract. This language clearly establishes that there was coverage for the claims being made by WB Homes against Lynch.

22.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

23.     Admitted.

24.     Denied. The subcontract between WB Homes and Lynch is a writing which speaks for itself. Any purported characterization of the terms contained in the said subcontract is specifically denied. By way of further response, the said subcontract specifically provides that WB Homes will be an additional insured under the Lynch insurance Policies.

25.     Denied. The subcontract between WB Homes and Lynch is a writing which speaks for itself. Any purported characterization of the terms contained in the said subcontract is

specifically denied. By way of further response, the said subcontract specifically provides that WB Homes will be an additional insured under the Lynch insurance Policies.

26.      Denied. The subcontract between WB Homes and Lynch is a writing which speaks for itself. Any purported characterization of the terms contained in the said subcontract is specifically denied. By way of further response, the said subcontract specifically provides that WB Homes will be an additional insured under the Lynch insurance Policies.  By way of further response, through multiple communications between WB Homes and Lynch, the parties agreed to the specific locations where Lynch provided services as a subcontractor and for which Lynch received payment from WB Homes for that work.   Pursuant to the aforesaid subcontract agreement, both Lynch and WB Homes understood that Lynch would be performing services as a subcontractor for various locations where WB Homes was developing and constructing single-family residences.

27.      Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to what correspondence was received by Main Street from USI or the content of any such correspondence and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial.

28.      Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to what if anything Main Street did as a result of receiving any correspondence from USI and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial.

29.      Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to what notices Main Street received and/or the content of any such notices and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial.

30.      Admitted on information belief.

31.      Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to Main Street was advised regard whether or not counsel had entered an appearance on behalf of Howard Lynch in the McGinnis lawsuit and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial.

32.      Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to what evaluations regarding the McGinnis Complaint were done, if

any, or the reasons why Main Street chose to defend Lynch in connection with the McGinnis lawsuit and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial.  On information belief, Main Street was obliged to defend Lynch in connection with the McGinnis lawsuit because of the insurance Policies issued by Main Street which covered that claim and other similar claims involving Lynch.

33.     Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to what coverage determinations were made by Main Street in connection with the claims asserted against Lynch by McGinnis in the McGinnis lawsuit and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial. By way of further response, in addition to defending Lynch in connection with the McGinnis lawsuit, Main Street also made a significant settlement offer in order to settle the claims being made against Lynch in the McGinnis lawsuit, which is further indicative of the acknowledgment by Main Street of its obligation to not only defend Lynch but also to indemnify Lynch in connection with claims like the McGinnis claim.

34.     Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to alleged communications between Main Street and Lynch or the content thereof and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial.

35.     Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to any alleged communications between Main Street and Lynch in connection with the McGinnis lawsuit or any other claims involving Lynch and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial.  By way of further response, Howard Lynch died at some point while the claims against Lynch were outstanding which would likely explain why Main Street was not receiving any communications from Lynch. The fact that Lynch died did not and does not limit the insurance coverage which Main Street is obliged to provide to Lynch in connection with one or more of the Policies.

36.     Denied. After reasonable investigation, WB Homes is without knowledge, information or belief as to when Main Street may have learned that Howard Lynch had died and therefore, to the extent relevant, strict proof thereof is demanded at the time of hearing or trial.

37.     Denied. It is admitted that WB Homes did not "seek or tender a defense as an additional insured" under the Policies. It is further admitted that in response to requests for

information submitted by Main Street or its representatives to WB Homes, WB Homes provided hundreds if not thousands of pages of documents to Main Street and/or its representatives to assist Main Street in evaluating the various claims which had been made against WB Homes in connection with the allegedly defective cladding on various homes developed and sold by WB Homes, the exterior cladding of which had been installed by Lynch as a subcontractor for WB Homes.    To the extent that the averments of this paragraph differ from the foregoing, those averments are specifically denied.

38.     Admitted.

39.     a.-e.  Denied. The McGinnis Complaint is a writing which speaks for itself, and any purported characterizations of the allegations contained in that Complaint are specifically denied.

40.     Denied. The characterization of the inspection reports provided by various homeowners to WB Homes in connection with allegedly defective construction and when alleged property damage from the defective construction (including the installation of stucco by Lynch) became reasonably apparent to the homeowners is specifically denied. The inspection reports are writings which speak for themselves.

41.     Admitted.

42.     Denied. The Desnoyers Complaint is a writing which speaks for itself, and any purported characterization of the allegations contained in that Complaint are specifically denied.

43.     Admitted.

44.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves.  To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

45.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves.  To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

46.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, it is specifically denied that Howard Lynch was required to "seek and/or tender" a defense in connection with the Claims and/or the Legal Proceedings (as defined in the Complaint) in order to benefit from indemnification under the Policies.

47.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, Howard Lynch died during the pendency of the Claims and in all likelihood suffered infirmities prior to his death which would make it difficult if not impossible for him to "cooperate" with the insurance carrier in connection with the investigation and administration of those Claims.

48.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  WB Homes is currently without knowledge or information sufficient to form a belief as to whether or not there is any other insurance covering Lynch in connection with the Claims and/or the Legal Proceedings.

49.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, it is specifically denied that when any damage claimed by the various homeowners was "reasonably apparent" is the proper standard for determining whether or not the Policies provided coverage for Lynch in connection with the Claims.  To the contrary, based upon the date when Lynch perform the allegedly defective work, the continuing nature of the defective condition and continuing water encroachment and resulting damages caused thereby demonstrates that all of the Claims were covered during the time when one or more of the Policies was in effect and when the Policies provided coverage for the Claims.

50.     Denied. To the extent that the averments of this paragraph purport to characterize the Policies, they are denied because the Policies are documents which speak for themselves.  To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response

is required.  By way of further response, the coverage provided for Lynch under the Policies is not limited to claims solely based upon "suits."

51.     Denied.  To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves.  To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, WB Homes is clearly an additional insured pursuant to the Policies.

52.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, coverage for the defective work of Lynch is specifically contemplated by and covered by the Policies, including as a result of the completed products coverage under the Policies.

53.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves.  To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, the alleged endorsements which allegedly included various exclusions to coverage under the Policies are neither legal, legitimate or effective for the reasons stated more fully hereinabove. The responses contained above are incorporated herein by reference as if fully set forth at length herein.

54.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, WB Homes was not required to "seek or tender a defense" as an additional insured in order to benefit from coverage under the Policies as an additional insured.

55.     a.-c.   Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves.  To the extent that the averments of this paragraph state facts, any

and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, when called upon to do so, WB Homes clearly cooperated fully and completely with any investigation which Main Street and/or its representatives sought to undertake by providing them with hundreds if not thousands of pages of documents in connection with the Claims. WB Homes responded properly and completely to each and every request for information submitted by Main Street and/or its representatives.  By way of further response, WB Homes administered the Claims and limited its exposure (as well as the exposure of Main Street) to the greatest extent possible. Claims made by various homeowners were on some occasions denied, were on some occasions settled and, on some occasions, (very few) were litigated. The amount spent by WB Homes to review, evaluate, settle and/or litigate the various Claims was necessary and reasonable under all the circumstances. In some cases, WB Homes performed the remediation work on several of the homes at its cost which was significantly less than what any other party including Main Street would have spent to do the same work and achieve the same result.

56.      Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves.  To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

57.      Denied. The damages which are the subject of the Claims are covered by the Policies for the reasons more fully set forth above, which are incorporated herein by reference as if fully set forth at length herein.

58.      Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

59.      All the responses set forth above are incorporated herein by reference as if fully set forth at length herein.

60.         Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents

which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

61.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, the completed products provisions of the Policies, among other sections thereof, provides coverage for Lynch's defective work in connection with the Claims. The alleged endorsements/exclusions are improper, illegal, unconscionable and unenforceable for the reasons more fully set forth above.

62.     Denied. After reasonable investigation, WB Homes is without knowledge or information sufficient to form a belief as to whether or when Lynch sought a defense and/or indemnity in connection with the Claims and/or the Legal Proceedings, and to the extent relevant, strict proof thereof is demanded at the time of hearing or trial. It is specifically denied that Lynch was obliged to seek or tender a defense in order to obtain indemnity under the Policies. Furthermore, given that Howard Lynch died at some point during the pendency of the Claims, it would not have been possible for him to "tender a defense" or seek indemnity once he became deceased. These circumstances render any argument regarding an alleged lack of notice or cooperation by Lynch meritless.

63.     Denied. After reasonable investigation, WB Homes is without knowledge or information sufficient to form a belief as to whether or when Lynch sought a defense and/or indemnity in connection with the Claims and/or the Legal Proceedings, and to the extent relevant, strict proof thereof is demanded at the time of hearing or trial. It is specifically denied that Lynch was obliged to seek or tender a defense in order to obtain indemnity under the Policies. Furthermore, given that Howard Lynch died at some point during the pendency of the Claims, it would not have been possible for him to "tender a defense" or seek indemnity once he became deceased. These circumstances render any argument regarding an alleged lack of notice or cooperation by Lynch meritless.  By way of further response, it is specifically denied that Main Street has been and/or will be prejudiced by any alleged act or omission of Lynch in connection with the administration of the Claims and/or the Policies.

64.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

65.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

66.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

67.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

68.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

69.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

70.     All of the responses set forth above are incorporated herein by reference as if fully set forth at length herein.

71.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

72.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

73.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, coverage under the Policies is neither limited nor excluded as a result of any alleged endorsements, for the reasons more fully set forth at length above which are incorporated herein by reference as if fully set forth at length herein.

74.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, WB Homes was not required to "tender a defense" in order to benefit from coverage as an additional insured under the Policies. Further, it is specifically denied that WB Homes failed to seek reimbursement for defense fees and costs as additional insured in connection with the Claims and the Legal proceedings. WB Homes has specifically done so.

75.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.  By way of further response, WB Homes has fully and completely cooperated with any and all requests for information from Main Street including the provision of hundreds if not thousands of pages of documents to allow Main Street to evaluate and process the Claims.

76.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such

facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

77.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

78.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

79.     Denied. To the extent that the averments of this paragraph purport to characterize the MSAAC Policies, they are denied because the MSAAC Policies are documents which speak for themselves. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

80.     Denied. To the extent that the averments of this paragraph state facts, any and all such facts are specifically denied. To the extent that the averments of this paragraph state conclusions of law, no response is required.

## **AFFIRMATIVE DEFENSES**

81.      Plaintiff's Complaint fails to set forth any claim or cause of action against WB Homes upon which relief can be granted.

82.     WB Homes hereby pleads estoppel as a full and/or partial defense to the claims made in Plaintiff's Complaint.

83.     WB Homes hereby pleads justification as a full and/or partial defense to the claims made in Plaintiff's Complaint.

84.     WB Homes hereby pleads waiver as a full and/or partial defense to the claims made in Plaintiff's Complaint.

85.     WB Homes hereby pleads laches as a full and/or partial defense to the claims made in Plaintiff's Complaint.

86.     WB Homes hereby pleads failure to comply with the terms of the Policies as a full and/or partial defense to the claims made in Plaintiff's Complaint.

87.     WB Homes hereby asserts all applicable statutes, rules, laws and regulations as a full and/or partial defense to the claims made in Plaintiff's Complaint.

88.     Plaintiff's claims for relief are barred in whole or in part as a matter of law.

89.     The matters for which Plaintiff seeks relief in this case were caused by the acts and/or omissions of Plaintiff's agents, servants and/or employees.

90.     Any acts and/or omissions claimed by Plaintiff in the Complaint were those of individuals and/or persons over whom WB Homes had no right, ability and/or authority to control.

91.     Plaintiff's claims in the Complaint are barred, in whole or in part, by superseding and/or intervening causes.

92.     Plaintiff's claims for relief in the Complaint are barred, in whole or in part, by the doctrines of collateral estoppel and/or res judicata.

**WHEREFORE,** defendant W.B. Homes, Inc. requests that the Court enter an order declaring that:

A.  Plaintiff Main Street America Assurance Company is obliged to provide defendant Howard Lynch Plastering, Inc. with indemnity for all of the Claims and the Legal Proceedings pursuant to the Policies;

B.  W.B. Homes, Inc. is an additional insured under the Policies in connection with the Claims and the Legal proceedings;

C.  Plaintiff Main Street America Assurance Company is obliged to provide defendant W.B. Homes, Inc. with indemnity for all of the Claims and the Legal Proceedings pursuant to the Policies;

D.  Defendant W.B. Homes, Inc. is entitled to such other relief as the Court deems just and proper.

CLEMM AND ASSOCIATES, LLC

Dated: November 22, 2021              By:      */s/ Mark C. Clemm*
                                               Mark C. Clemm, Esquire
                                               Katie M. Clemm, Esquire
                                               Attorneys for defendant W.B. Homes, Inc.

16