IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Main Street America Assurance Company, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Case No. 2:21-cv-03977 (MAK) |
| | : | |
| Howard Lynch Plastering, Inc. | : | |
| | : | |
| and | : | |
| | : | |
| W.B. Homes, Inc., | : | |
| | : | |
| *Defendants*. | : | |

**MEMORANDUM IN SUPPORT OF
MAIN STREET AMERICA ASSURANCE CORPORATION'S
MOTION FOR SUMMARY JUDGMENT
OR ALTERNATIVELY FOR DEFAULT JUDGMENT**

Richard J. Orr (Bar No. 66860)
Dilworth Paxson, LLP
2 Research Way
Princeton, New Jersey 08540
Telephone: 609-987-3993
Facsimile: 215-893-8537
rorr@dilworthlaw.com

Susan M. Hogan (*pro hac vice*)
Ezra S. Gollogly (*pro hac vice*)
Joseph Dudek (of counsel)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
Telephone: 410-752-6030
Facsimile: 410-539-1269
shogan@kg-law.com
jdudek@kg-law.com

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARDS ................................................................................................... 3

   I.  Summary Judgment ............................................................................................3

   II.  Default Judgment ..............................................................................................4

FACTS .......................................................................................................................... 5

   The MSAAC Policies ..........................................................................................5

   The Claims (32 Homes) ......................................................................................6

   The Desnoyers Arbitration .................................................................................7

   The McGinnis Lawsuit .......................................................................................7

ARGUMENT ................................................................................................................. 9

   I.  Summary Judgment Is Appropriate Because, as W.B. Homes and Howard Lynch Admit, These Are Construction Defect Claims That Fall Outside the Coverage Provisions of the MSAAC Policies. ...................................................................9

     A.  Pennsylvania Courts Have Uniformly Held That Construction Defects and Their Foreseeable Consequences Are Not "Occurrences." ..........................................9

     B.  W.B. Homes and Howard Lynch Have Correctly Admitted that the Claims and the Legal Proceedings Relate Only To Alleged Construction Defects, So MSAAC Has No Duty to Indemnify W.B. Homes or Howard Lynch...........................11

     C.  MSAAC Has No Duty to Defend or Indemnify Howard Lynch in the McGinnis Complaint..............................................................................................13

   II.  W.B. Homes Also Breached Conditions of Coverage in the MSAAC Policies, So MSAAC Is Entitled to Summary Judgment That It Need Not Indemnify or Reimburse W.B. Homes. ..................................................................................16

     A.  Late Notice....................................................................................................16

     B.  Voluntary Payment .......................................................................................18

     C.  Legal Effect of W.B. Homes's Breaches .......................................................19

   III. In the Alternative, This Court Should Enter Default Judgment Against Howard Lynch. ............................................................................................................19

   CONCLUSION.............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Atain Ins. Co. v. Basement Waterproofing Specialists, Inc.*,
   No. CV 20-5440-KSM, 2021 WL 5139903 (E.D. Pa. Nov. 3, 2021) ...................................... 11

*Brakeman v. Potomac Ins. Co.*, 371 A.2d 193 (Pa. 1977) ............................................................ 17

*Buckley v. Paperboy Ventures, LLC*, 869 F. Supp. 2d 9 (D.D.C. 2012) ........................................ 4

*Burlington Ins. Co. v. Shelter Structures, Inc.*,
   No. 19-4857, 2020 WL 5292076 (E.D. Pa. Sept. 4, 2020) ...................................................... 11

*Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000) ...................................................... 4, 20

*Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532 (D.N.J. 2008) ............................................... 4

*Clemente v. Home Ins. Co.*, 791 F. Supp. 118 (E.D. Pa. 1992) ................................................... 17

*Comdyne I, Inc. v. Corbin*, 908 F.2d 1142 (3d Cir. 1990) ............................................................ 4

*Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363 (Pa. 1987) ......................................... 14

*Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. 1999) ............................. 14

*Haines v. State Auto Prop. & Cas. Ins. Co.*, 417 F. App'x 151 (3d Cir. 2011) ........................... 14

*Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979 (3d Cir. 1988) .................................................... 9

*Hyde Athletic Indus., Inc. v. Cont'l Cas. Co.*, 969 F. Supp. 289 (E.D. Pa. 1997) ....................... 17

*Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261 (E.D. Pa. 2014) ................................. 4

*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*,
   908 A.2d 888 (Pa. 2006) .............................................................................................. 2, 10, 14

*Lenick Constr., Inc. v. Selective Way Ins. Co.*, 737 Fed. Appx. 92 (3d Cir. 2018)
   (not precedential) ..................................................................................................................... 11

*Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488 (E.D. Pa. 2006) ..... 13

*Metal Bank of Am. v. Ins. Co. of N. Am.*, 520 A.2d 493 (Pa. Super. 1987) ................................ 17

*Miller v. Boston Ins. Co.*, 218 A.2d 275 (Pa. 1966) .................................................................... 12

*Millers Cap. Ins. Co. v. Gambone Bros. Dev. Co., Inc.*,
   941 A.2d 706 (Pa. Super. 2007) ...................................................................................... 10, 11

*Moreno v. Tringali*, No. CV 14-4002 (JBS/KMW), 2017 WL 2779746 (D.N.J. June 27, 2017) .. 2

*Nationwide Mut. Fire Ins. Co. v. Nova Real Est. LLC*,
No. CIV.A. 09-0303, 2011 WL 721905 (E.D. Pa. Mar. 1, 2011) ...................................... 16, 18

*Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591 (3d Cir. 2009) .................................. 14

*Nationwide Prop. & Cas. Ins. Co. v. Ismakovic*, 531 F. Supp. 3d 926 (E.D. Pa. 2021) ................. 3

*Nautilus Ins. Co. v. 200 Christian St. Partners, LLC*, 363 F. Supp. 3d 559 (E.D. Pa. 2019) ....... 13

*Northwood Nursing & Convalescent Home, Inc. v. Cont'l Ins. Co.*,
902 F. Supp. 79 (E.D. Pa. 1995) .............................................. 17

*Penn Nat'l Ins. v. HNI Corp.*, 482 F. Supp. 2d 568 (M.D. Pa. 2007) ........................................... 14

*Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351 (E.D. Pa. 2017) .... 10

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ................................................ 4

*Riehl v. Travelers Ins. Co.*, 772 F.2d 19 (3d Cir. 1985) ................................................................ 12

*Specialty Surfaces Int'l v. Cont'l Cas. Co.*, 609 F.3d 223 (3d Cir. 2010) .................................... 13

*Thomson v. Wooster*, 114 U.S. 104 (1885) ................................................................................... 4

*United Nat'l Ins. Co. v. Admiral Ins. Co.*,
No. 90–7625, 1992 WL 210000 (E.D. Pa. Aug. 19, 1992) ................................................ 17, 18

**Rules**

Fed. R. Civ. P. 55 ........................................................................................................................... 4

Fed. R. Civ. P. 56 ........................................................................................................................... 3

Fed. R. Civ. P. 8 ........................................................................................................................... 11

**Other Authorities**

10 C. Wright, A. Miller & M. Kane, *Fed. Prac. & Proc. Civ.*, § 2688 (2d ed. 1983) ................... 4

10A C. Wright & A. Miller § 2688 (3d ed. 2013) ......................................................................... 4

Plaintiff Main Street American Assurance Company ("MSAAC") files this memorandum in support of its motion for summary judgment, or alternatively for default judgment, against Defendants Howard Lynch Plastering, Inc. ("Howard Lynch") and W.B. Homes, Inc. ("W.B. Homes").

## INTRODUCTION

This action concerns MSAAC's obligations under general liability insurance policies MSAAC issued to Howard Lynch, a plastering and stucco subcontractor ("MSAAC Policies"). MSAAC seeks a declaration that it does not owe a duty to defend, indemnify, or reimburse Howard Lynch (its named insured) or W.B. Homes (which is seeking coverage as an additional insured) under the MSAAC Policies in connection with alleged construction defects and related damage to 34 single-family homes ("Homes").

Most of the Homes (32 of the 34) involve claims ("Claims") where W.B. Homes received reports of defective construction and then remediated the Homes before being sued or notifying MSAAC. The remaining two Homes are, or were, the subject of legal proceedings by homeowners against W.B. Homes. The Home owned by Rodwige and Camille Desnoyers was the subject of a private arbitration brought by the Desnoyers against W.B. Homes in 2015 ("Desnoyers Arbitration"). The Home owned by William and Rose Marie McGinnis is the subject of the lawsuit captioned *William McGinnis and Rose Marie McGinnis v. W.B. Homes, Inc., et al.*, Civil Action No. 2018-19272 in the Court of Common Pleas of Montgomery County, Pennsylvania ("McGinnis Lawsuit").[1] The McGinnises filed their Complaint against W.B. Homes, and then W.B. Homes

---

[1] The McGinnis Lawsuit and the Desnoyers Arbitration are collectively referred to in this motion as the "Legal Proceedings."

joined Howard Lynch as another defendant in the McGinnis Lawsuit. MSAAC is defending Howard Lynch in the McGinnis Lawsuit under a full reservation of rights.

As to both the Claims and the Legal Proceedings, W.B. Homes seeks to collect over $1.7 million from MSAAC by two routes. First, it has demanded indemnity from Howard Lynch, and it contends that the MSAAC Policies cover Howard Lynch's alleged liability to W.B. Homes. It also seeks coverage for the Claims directly from MSAAC as a putative additional insured under the MSAAC Policies.

When MSAAC sued W.B. Homes and Howard Lynch in this Court to vindicate its interpretation of the MSAAC Policies, nobody timely appeared to defend. When this Court sent correspondence identifying the defaults, only W.B. Homes answered the complaint. Howard Lynch defaulted, ECF No. 11, thereby admitting the well-pled allegations in the complaint.[2] W.B. Homes answered, admitting a crucial fact: all of the homeowners' Claims and all of the claims in the Legal Proceedings arise from alleged construction defects.[3] Under well-established Pennsylvania law, *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006), which this Court has applied several times, faulty workmanship and related construction defects cannot trigger coverage under occurrence-based policies like the MSAAC Policies. Indeed, Pennsylvania has applied this law specifically against claims of defective stucco application and resulting water damage, just like the claims here. Applying that law again, MSAAC has no obligation to indemnify or defend W.B. Homes or Howard Lynch for liability arising from  the homeowners' Claims and the claims in the Legal Proceedings. MSAAC

---

[2] Fed. R. Civ. P. 8(b)(6); *Moreno v. Tringali*, No. CV 14-4002 (JBS/KMW), 2017 WL 2779746, at *9 (D.N.J. June 27, 2017).

[3] Compl., ECF No. 1, ¶ 5; Ans., ECF No. 9, ¶ 5; Pretrial Statement of Undisputed Facts, ECF No. 14-1, ¶ 6.

has other defenses to coverage, but this one is both straightforward and sufficient to resolve this action.

MSAAC therefore asks this Court for summary judgment against all defendants, all arising from the same admission. That judgment should (1) release MSAAC from its ongoing defense of Howard Lynch in the McGinnis Lawsuit and (2) declare that the MSAAC Policies do not provide W.B. Homes or Howard Lynch coverage for the homeowners' Claims or for the claims in the Legal Proceedings.

If this Court decides not to enter summary judgment against W.B. Homes and Howard Lynch, then MSAAC asks this Court for limited alternative relief as to each defendant. As to W.B. Homes, MSAAC asks this Court to enter summary judgment declaring that because W.B. Homes did not timely notify MSAAC of the Claims and the Desnoyers Arbitration, MSAAC is not obligated to indemnify or reimburse W.B. Homes for any money it has already paid. As to Howard Lynch, MSAAC asks this Court to enter default judgment on the occurrence issue. Even if there were some fact issue remaining as between MSAAC and W.B. Homes, there can be no fact dispute between MSAAC and Howard Lynch, because Howard Lynch's default admitted the well-pled allegations. Those allegations are enough to support default judgment.

## LEGAL STANDARDS

### I.    Summary Judgment

Under Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see generally Nationwide Prop. & Cas. Ins. Co. v. Ismakovic*, 531 F. Supp. 3d 926, 930 n.27 (E.D. Pa. 2021) (Kearney, J.) (elaborating on the summary judgment standard for cross-motions in insurance cases). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of . . . the record." Fed. R.

Civ. P. 56(c)(1)(A). In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## II.    Default Judgment

Federal Rule of Civil Procedure 55 authorizes a court to enter judgment against a defaulting party. Once a defendant has defaulted, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller & M. Kane, *Fed. Prac. & Proc. Civ.*, § 2688 at 444 (2d ed. 1983), which cites *Thomson v. Wooster*, 114 U.S. 104 (1885)). In other words, the defaulting defendant is "deemed" to have "admitted" all "well-pleaded allegations in the complaint." *Buckley v. Paperboy Ventures, LLC*, 869 F. Supp. 2d 9 (D.D.C. 2012). Even so, "the Court need not accept the moving party's legal conclusions." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing *Comdyne*, 908 F.2d at 1149). Instead, the Court should decide "whether the unchallenged facts constitute a legitimate cause of action." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014) (citing 10A C. Wright & A. Miller § 2688 at 58–59, 63 (3d ed. 2013)).

And even if the well-pled allegations make out a legitimate cause of action, this Court enters default judgment only when circumstances make it appropriate. To decide whether default judgment is appropriate, courts in this circuit consider three factors: (1) prejudice the plaintiff would suffer if default were denied; (2) whether the defendant appears to have a meritorious defense; and (3) whether the defendant's delay in answering is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F. 3d 154, 164 (3d Cir. 2000). If necessary, this Court "may conduct hearings or make referrals" when, to enter judgment, it must "establish the truth of any allegation by evidence" or "investigate any . . . matter." Fed. R. Civ. P. 55(b).

## FACTS

**The MSAAC Policies**

The MSAAC Policies were issued to Howard Lynch for consecutive annual policy periods starting on November 1, 2011; November 1, 2012; and November 1, 2013. Statement of Undisputed Facts ("UF") ¶ 1; Apx. 2–198. Under the MSAAC Policies' Businessowners Coverage Form, MSAAC agrees  to "pay those sums that [Howard Lynch] becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies." Apx. 11, 81, 145; Ans. ¶¶ 17–21 (admitting the inclusion of "businessowners coverage" in the MSAAC Policies). MSAAC also undertook "the right and duty to defend the insured against any 'suit' seeking those damages" but disclaimed any "duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage' or 'personal or advertising injury', to which this insurance does not apply." Apx. 11, 81, 145.

As part of the insuring agreement, the MSAAC Policies provide that the insurance "applies . . . to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' [was] caused by an 'occurrence.'" *Id*. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Apx. 24, 94, 158.

The MSAAC Policies also imposed duties on any insured when that insured learns of an occurrence, an offense, a claim, or a suit:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Apx. 22, 92, 156.

**The Claims (32 Homes)**

W.B. Homes has alleged that it built several homes with Howard Lynch as its stucco contractor under a subcontract. See ECF No. 1-4. MSAAC does not dispute that allegation for the purposes of this motion. UF ¶ 2; *see* Compl. ¶ 3 & n.1 (listing homes).

Between October 2010 and June 2018, W.B. Homes received the Claims and remediated the subject Homes. On January 31, 2020—shortly before filing a joinder complaint against Howard Lynch in the McGinnis Lawsuit—MSAAC received an email from W.B. Homes' insurance agent informing MSAAC that W.B. Homes was seeking coverage for reimbursement of "significant expense" incurred by W.B. Homes to "repair property damage as a result of operations performed on several private residences by Howard Lynch." UF ¶ 12.

### The Desnoyers Arbitration

Rodwige and Camille Desnoyers filed the complaint that initiated the Desnoyers Arbitration in November 2015. Apx. 429. It alleged that Mr. and Mrs. Desnoyers first contacted W.B. Homes to complain about "[c]onstruction [d]efects"— "problems of water and moisture intrusion through the stucco exterior of the Home"—in "the spring of 2014." Apx. 423. That contact included sending W.B. Homes "a written Moisture Intrusion Evaluation Report," which "revealed significant construction defects, including . . . [i]nadequate or non-existent caulking[,] flashing[, and] joints between stucco and other exterior building materials," "[i]mproper termination of stucco," and "[i]nadequate thickness of stucco." *Id*. Mr. and Mrs. Desnoyers arbitrated the dispute with W.B. Homes in 2018 and ultimately settled, all without W.B. Homes ever tendering its defense to MSAAC.

### The McGinnis Lawsuit

Mr. and Mrs. McGinnis filed the McGinnis Lawsuit against W.B. Homes and several of its affiliated entities in July 2018. Apx. 210–409. Their complaint alleged that in 2003, they agreed to purchase the home located at 2573 Muirfield Lane, Lansdale, Pennsylvania from W.B. Homes and that they took possession of the home in 2004. Apx. 220–21. Almost 14 years later, they "decided to have a stucco evaluation performed on the home" because they were considering selling their home and had heard about "stucco issues in neighboring developments." Apx. 222.

To that end, they hired Rob Lunny of Lunny Building Diagnostics to evaluate their home. *Id.* Based on his evaluation, Mr. Lunny identified "numerous construction defects with respect to the Home" that had caused "[e]levated moisture readings" and "[m]oisture damage to windows and doors." Apx. 222–23. The McGinnises demanded remediation and repair, including removal and replacement of stucco and flashing, which they estimated would cost more than $150,000, in addition to other damages caused by the defective construction—diminution in value of their home, engineering fees, consultant fees, and legal fees. Apx. 266.

Nearly two years into the litigation, in April 2020, MSAAC received notice of the McGinnis Lawsuit from W.B. Homes' direct insurer, Nationwide Insurance Company. UF ¶ 6. Then, in May 2020, W.B. Homes and its affiliates filed a joinder complaint, alleging that they were the general contractor entities responsible for construction of the McGinnis home and that they subcontracted with the joined defendants, Howard Lynch and Antonio Coletta, LLC. Apx. 410–20. Three months later, Howard Lynch was served with the joinder complaint. UF ¶ 8. Because "no counsel had entered an appearance on behalf of Howard Lynch," MSAAC "agreed to defend Howard Lynch against" the McGinnis Lawsuit under "a reservation of rights." UF ¶ 9. MSAAC then retained defense counsel to defend Howard Lynch. *Id.*

After a thorough review of the McGinnis Lawsuit, MSAAC concluded that there was no coverage afforded to Howard Lynch for the claims in the McGinnis Lawsuit. Compl. ¶ 33. MSAAC then informed Howard Lynch that it would be withdrawing its defense counsel after affording Howard Lynch adequate time to hire new counsel. Compl. ¶ 34. But when MSAAC learned that Howard Lynch's namesake president had died, it decided not to withdraw from its defense of Howard Lynch, but to instead seek a determination from this Court that it has no

obligation to defend, indemnify, or reimburse Howard Lynch (or W.B. Homes) in connection with the McGinnis Lawsuit. Compl. ¶ 36.

## ARGUMENT

MSAAC has many meritorious defenses to coverage here. The most straightforward defense is that these claims of defective stucco construction (both the Claims and the claims raised in the Legal Proceedings) do not fall within the insuring agreement in the MSAAC Policies because defective construction is not an "occurrence." In addition, W.B. Homes failed to provide MSAAC timely notice of the Claims and the Legal Proceedings, and voluntarily paid to remediate the affected homes, violating the MSAAC Policies and precluding coverage. MSAAC intends to prove the remaining defenses identified in its complaint at trial, if necessary.

**I.     Summary Judgment Is Appropriate Because, as W.B. Homes and Howard Lynch Admit, These Are Construction Defect Claims That Fall Outside the Coverage Provisions of the MSAAC Policies.**

The easiest way to resolve this action is to apply Pennsylvania law of "occurrence." Each of the homeowners' Claims and each of the claims in the Legal Proceedings asserts faulty stucco construction. And because the effects of faulty construction are not "occurrences" under the MSAAC Policies, there is no coverage for either Howard Lynch (as the named insured) or W.B. Homes (even if it were an additional insured).

**A.  Pennsylvania Courts Have Uniformly Held That Construction Defects and Their Foreseeable Consequences Are Not "Occurrences."**

This Court interprets insurance policies as contracts. *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988). This case turns on the meaning of "occurrence"—defined in the MSAAC Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"—in the context of defective construction.

Under settled Pennsylvania law, occurrence-based general liability policies do not guarantee the insured's workmanship. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 899 (Pa. 2006). Faulty workmanship is not an "occurrence," because faulty workmanship is not an "accident":

> [T]he definition of "accident" required to establish an "occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident" or its common judicial construction in this context.

*Kvaerner*, 908 A.2d at 899; *see Millers Cap. Ins. Co. v. Gambone Bros. Dev. Co., Inc.*, 941 A.2d 706, 713, 718 (Pa. Super. 2007) (applying the *Kvaerner* test). Under *Kvaerner*, claims of defective construction raise only faulty workmanship claims and thus do not allege an "occurrence" under the MSAAC Policies. *Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 357 (E.D. Pa. 2017) (*Kvaerner* "relied on allegations that there were 'construction defects'" to "conclude[] that the insurer had no duty to defend because the underlying claims were based on faulty workmanship").

And the rule removing faulty workmanship from CGL coverage applies equally to claims for property damage *resulting from* that faulty workmanship. In *Millers Capital*, a developer acknowledged that it could not sue an insurance company to seek coverage for faulty stucco workmanship under an occurrence-based CGL policy, but the developer still insisted that water damage *resulting from* faulty stucco workmanship was its own "occurrence" under the insurance policy. 941 A.2d at 713. The Pennsylvania Superior Court rejected that argument, holding that "natural and foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect, or consequences caused [initially] by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident' for the purposes of an occurrence based

[insurance] policy." *Id.* That is, if water damages a home because poorly applied stucco let rainwater in, the resulting damage is not an "occurrence" under the MSAAC Policies.

This rule applies just the same whether the insured is a general contractor or a subcontractor. *Burlington Ins. Co. v. Shelter Structures, Inc.*, No. 19-4857, 2020 WL 5292076, at *5–*6 (E.D. Pa. Sept. 4, 2020) (alleged faulty workmanship by a subcontractor does not constitute an occurrence). This Court applied the rule a few months ago to grant judgment on the pleadings. *Atain Ins. Co. v. Basement Waterproofing Specialists, Inc.*, No. CV 20-5440-KSM, 2021 WL 5139903, at *8 (E.D. Pa. Nov. 3, 2021). And the Third Circuit considers this argument so clear that it disposed of a nearly identical case with five paragraphs of analysis in an unpublished opinion. *Lenick Constr., Inc. v. Selective Way Ins. Co.*, 737 Fed. Appx. 92, 95 (3d Cir. 2018) (not precedential).

> **B.    W.B. Homes and Howard Lynch Have Correctly Admitted that the Claims and the Legal Proceedings Relate Only To Alleged Construction Defects, So MSAAC Has No Duty to Indemnify W.B. Homes or Howard Lynch.**

W.B. Homes admits[4] and Howard Lynch has never contested[5] that the Claims and the claims in the Legal Proceedings are claims for defective construction. That is because there is nothing to contest; from the very beginning, W.B. Homes has understood that these are construction-defect claims. W.B. Homes sent MSAAC dozens of inspection reports detailing how each home's stucco work was faulty and how that faulty workmanship led to water penetrating into each home.

To take a characteristic example, the report discussing the house at 926 Ashbourne Way reports only construction failures in the home's stucco cladding, including:

---

[4] UF ¶ 2; ECF No. 14-1, ¶ 6.

[5] Fed. R. Civ. P. 8(b)(6).

- Lack of "[e]xpansion joints," which are "installed at the floor lines [to] allow for compression of the building and help[] prevent cracking . . . or delamination due to shrinkage of the building materials," Apx. 466;

- Lack of "[v]ertical control joints," which "are needed to minimize cracking and allow for different rats of expansion and contraction between the components of the system," *id.*;

- Missing "[k]ickout flashing," which is "intended to prevent channeling of moisture behind a [stucco cladding] system" and "should be installed at ALL primary and secondary kickout locations," Apx. 467;

- "[W]indow frames," "door frames," and "garage door frames" that "are not sealed properly," because they lack a "bond-breaking joint or sealant" and are thus "susceptible to moisture intrusion," Apx. 468–69;

- "Stucco" that "is improperly terminated on [the] concrete porch," despite the stucco industry "require[s] flashing at the base of the wall or, alternatively, a 2" clearance above hard surface grade with an integrated weep screed," Apx. 470;

- The failure to leave "a 2" separation between the roof covering and the stucco . . . cladding," despite "[i]ndustry standards" to the contrary," Apx. 472;

- Exterior "attachments" and "penetrations" that "are not properly sealed with approved sealant in a manner that is in accordance with industry standards," Apx. 473; and

- Failure to "seal" the "intersection with other types of siding" in a standard way that would "ensur[e] a water[-]tight seal," Apx. 474.

These myriad construction defects left the home vulnerable to moisture intrusion, leading to elevated moisture readings around windows, decks, siding intersections, and more. Apx. 482–84. To cure the problem, the report recommends a "[p]artial [t]ear-[o]ff" and other remediation that would bring the home's construction into compliance with industry standards. Apx. 485–88.

And despite its burden of proving coverage,[6] W.B. Homes has turned up nothing in discovery here that would raise a genuine issue of material fact about the nature of the homeowners' Claims or the claims in the Legal Proceedings. It is now beyond reasonable dispute

---

[6] The insured has the burden of proving coverage. *See Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 23 (3d Cir. 1985); *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966) ("it is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy").

that the MSAAC Policies do not provide coverage for the homeowners' Claims or for the claims in the Legal Proceedings; "water leaks" like these "in a defectively constructed home" raise only faulty workmanship claims which are not caused by an "occurrence." *Nautilus Ins. Co. v. 200 Christian St. Partners, LLC*, 363 F. Supp. 3d 559, 564 (E.D. Pa. 2019) (citing *Specialty Surfaces Int'l v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010)), *aff'd sub nom. Nautilus Ins. Co v. 200 Christian St. Partners LLC*, 819 Fed. Appx. 87 (3d Cir. 2020).

In sum, neither W.B. Homes nor Howard Lynch can satisfy their "initial burden . . . to establish coverage under" the MSAAC Policies. *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006). MSAAC is therefore entitled to judgment as a matter of law and a declaration that MSAAC is not obligated under the MSAAC Policies to indemnify or reimburse W.B. Homes or Howard Lynch in connection with the Claims or the Legal Proceedings.

## C.    MSAAC Has No Duty to Defend or Indemnify Howard Lynch in the McGinnis Complaint.

MSAAC began paying for Howard Lynch's defense of the McGinnis Lawsuit when it learned Howard Lynch did not have counsel. Compl. ¶ 31. Once MSAAC completed its coverage evaluation, it informed Howard Lynch that it would be withdrawing its defense and that it would provide Howard Lynch with adequate time to retain new counsel. Compl. ¶¶ 34. But when MSAAC learned Mr. Lynch had died, it decided not to withdraw that defense and instead seek a determination from this Court. Compl. ¶ 36. Now, this Court should enter judgment declaring that MSAAC has no duty to continue that defense and may withdraw counsel.

### 1.    *The Duty-to-Defend Standard*

To decide whether, under Pennsylvania law, an insurance policy obligates the insurer to defend an underlying lawsuit, courts need only a limited record: the insurance policy and the

underlying complaint. *Kvaerner*, 908 A.2d at 896. That is because "[i]f the *complaint* filed against the insured avers facts which would support a recovery that is covered by the *policy*, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987) (emphasis added). Neither the insurer nor the insured may offer extrinsic evidence to show whether the underlying lawsuit falls within the contested insurance policy; "the obligation of a casualty insurance company to defend an action brought against the insured is to be determined *solely* by the allegations of the complaint."[7] *Kvaerner*, 908 A.2d at 896–97 (emphasis in original) (reversing a lower court's reliance on expert reports).

In deciding whether the underlying complaint triggers coverage, a "court must take the factual allegations of the underlying complaint against the insured as true and liberally construe those allegations in favor of the insured." *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596 (3d Cir. 2009). The duty to defend is broader than the duty to indemnify and "arises whenever an underlying complaint may 'potentially' come within the insurance coverage." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

2.     *The McGinnis Complaint*

The complaint against Howard Lynch  in the McGinnis Lawsuit is W.B. Homes's joinder complaint, Apx. 410–20. It incorporates by reference the allegations and legal claims in the original complaint against W.B. Homes, Apx. 210–409 ("McGinnis Complaint"). The McGinnis

---

[7] There are exceptions to this general rule, none of which apply here. *See, e.g.*, *Haines v. State Auto Prop. & Cas. Ins. Co.*, 417 F. App'x 151 (3d Cir. 2011) (under Pennsylvania law, an insurer may use extrinsic evidence to show that an exception to an exclusion does not apply); *Penn Nat'l Ins. v. HNI Corp.*, 482 F. Supp. 2d 568 (M.D. Pa. 2007) (report and recommendation looking to deposition transcripts, a certificate of insurance, and an independent contractor agreement to decide whether a party is an additional insured).

Complaint, in turn, contains several counts with several legal theories, but each arises from faulty workmanship. In Count I, for example, Mr. and Mrs. McGinnis claim that W.B. Homes (and others) breached its contract with them by failing to deliver a home that was "properly constructed," "free of construction defects, and built in a reasonably workmanlike manner." Apx. 231 ¶¶ 113–14. In other words, the injury for which Count I seeks compensation is the faulty workmanship of W.B. Homes and its subcontractors. Count II similarly faults W.B. Homes for "failing to build the Home in a habitable and good workmanlike manner" and "failing to supervise" the work quality of its subcontractors. Apx. 232 ¶ 122. Indeed, each count pled against W.B. Homes alleges faulty workmanship or improper construction as the cause of Mr. and Mrs. McGinnis's injuries.[8] The McGinnis Complaint alleges no other cause besides faulty workmanship, so it does not allege "property damage" caused by an "occurrence" that would fall within the MSAAC Policies' insuring agreement.

Because these allegations of faulty workmanship cannot trigger a duty to defend under the MSAAC Policies, the MSAAC Policies do not obligate MSAAC to defend W.B. Homes or Howard Lynch against the McGinnis Lawsuit. MSAAC is thus entitled to judgment as a matter of

---

[8] *See* McGinnis Compl., Apx. 235 ¶ 132 (W.B. Homes "breached the implied warranty of habitability by failing to properly construct the Plaintiffs' Home in a reasonable *workmanlike* manner free of defects"), Apx. 236 ¶¶ 141–142 (W.B. Homes "breached the implied warranty of *workmanlike* construction" by failing to "meet the definition of reasonable *workmanship* under Pennsylvania law"), Apx. 239 ¶ 154 (Because of "W.B. Homes and [its] subcontractors' defective, careless, and negligent *performance in constructing* the Plaintiffs' Home, the Plaintiffs have experienced attendant property damage"), Apx. 240 ¶ 159 (W.B. Homes "made material misstatements . . . about the quality features and *construction* of [its] homes and [of] Plaintiffs' Home"), Apx. 244 ¶¶ 182–85 (W.B. Homes breached its "duty of care . . . to construct, supervise construction, and sell Home [*sic*] that were constructed in a reasonable *workmanlike* matter [*sic*]"), Apx. 249 ¶ 201(c) (W.B. Homes "knew or should have known . . . that[] it failed to *properly construct* the Home."). Mr. and Mrs. McGinnis also included a count that explains why they should be able to pierce W.B. Homes's corporate veil and go after its successors to recover their damages, but these counts do not identify any unique injury giving rise to liability.

law and a declaration that MSAAC is entitled to withdraw its defense of Howard Lynch in the McGinnis Lawsuit.[9]

## II. W.B. Homes Also Breached Conditions of Coverage in the MSAAC Policies, So MSAAC Is Entitled to Summary Judgment That It Need Not Indemnify or Reimburse W.B. Homes.

Even if the homeowners' Claims and the claims in the Legal Proceedings qualified as property damage caused by an occurrence, and even if W.B. Homes were an additional insured under the MSAAC Policies, W.B. Homes breached two related general liability conditions of coverage in the MSAAC Policies. It did so by voluntarily paying for remediation without timely notifying MSAAC.

### A. Late Notice

First, W.B. Homes breached the MSAAC Policies by failing to timely notify MSAAC of the Claims or the Desnoyers Arbitration. Under the MSAAC Policies, the insured "must see to it that [MSAAC is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim" and, "[i]f a claim is made or 'suit' is brought against any insured, . . . must . . . [n]otify MSAAC as soon as practicable" with a "written notice." *E.g.*, Apx. 22. Provisions like these "ensur[e] promptness of notice, maximizing the insurer's opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured." 13 *Couch on Ins.* § 186:13 (Dec. 2021 update); *see Nationwide Mut. Fire Ins. Co. v. Nova Real Est. LLC*, No. CIV.A. 09-0303, 2011 WL 721905, at *4 (E.D. Pa. Mar. 1, 2011). Under this provision, W.B. Homes had to "provide notice to the insurer 'within a reasonable period of time given the facts and circumstances of each case.'" *Nationwide*, 2011 WL 721905, at *4

---

[9] MSAAC's complaint also seeks a declaration that "W.B. Homes is not an additional insured under the MSAAC Policies for the Claims and the Legal Proceedings." That request for relief would be moot if this Court grants full relief on the other requested declarations.

(quoting *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 195 (Pa. 1977)). Late notice is a complete defense to coverage if the insurer "can show actual prejudice." *Id*. at *5. And late notice is a complete defense to coverage *at the summary judgment stage* "when the insured's liability is a *fait accompli*" by the time the insured notifies the insurer. *Id*. at *6 (quoting *United Nat'l Ins. Co. v. Admiral Ins. Co.*, No. 90–7625, 1992 WL 210000, at *6 (E.D. Pa. Aug. 19, 1992)).

W.B. Homes's late notice to MSAAC about the Claims was objectively unreasonable. W.B. Homes was already working to remediate damage alleged in the homeowners' Claims in the early and mid 2010s. UF ¶ 10. W.B. Homes necessarily *learned* of these claims before it *remediated* them. But W.B. Homes did not notify MSAAC of the Claims for 5 or 10 more years and only after it allegedly spent $1.7 million. That decade-long lapse in notice is far longer than delays this Court has found to be unreasonably late notice as a matter of law. *See, e.g.*, *Hyde Athletic Indus., Inc. v. Cont'l Cas. Co.*, 969 F. Supp. 289, 300 (E.D. Pa. 1997) (finding a 2.5-year notice delay unreasonable); *Northwood Nursing & Convalescent Home, Inc. v. Cont'l Ins. Co.*, 902 F. Supp. 79, 83 (E.D. Pa. 1995) (finding a 3-year notice delay unreasonable); *Clemente v. Home Ins. Co.*, 791 F. Supp. 118, 120 (E.D. Pa. 1992), *aff'd*, 981 F.2d 1246 (3d Cir. 1992) (finding a 3.5-year notice delay "clearly" unreasonable).

Similarly, W.B. Homes was objectively unreasonable in failing to notify MSAAC about the Desnoyers Arbitration. W.B. Homes litigated and settled the Desnoyers Arbitration, all without notifying MSAAC, which is unreasonable as a matter of law.[10] *Metal Bank of Am. v. Ins. Co. of N. Am.*, 520 A.2d 493, 498 (Pa. Super. 1987).

---

[10] Indeed, even notifying the insurer late in the litigation is enough to make the delay unreasonable. *See, e.g.*, *Hyde Athletic*, 969 F. Supp. at 300 ("Trial was already underway when the first notice letters were provided to the insurers").

And W.B. Homes's late notice has prejudiced MSAAC as a matter of law. By the time W.B. Homes notified MSAAC of the Claims and the Desnoyers Arbitration, W.B. Homes had already fully remediated, spending what it now contends is the entire value of the Claims plus the cost of resolving the Desnoyers Arbitration. "Pennsylvania forgives untimely notice [for lack of prejudice] only where the insurer is 'afforded the opportunity to participate in the proceedings arising from a claim before the liability of its insurers becomes fixed.'" *Nationwide*, 2011 WL 721905, at *6 (quoting *United Nat'l*, 1992 WL 210000, at *6). But here, W.B. Homes fixed the value of the claims at roughly $1.7 million long before it notified MSAAC. MSAAC had no opportunity to settle the claims, seek more cost-effective remediation, or otherwise protect its economic interest. It was thus prejudiced as a matter of law by W.B. Homes's objectively unreasonable late notice.

### B.      Voluntary Payment

Similarly, W.B. Homes voluntarily paid out all the Claims and the Desnoyers Arbitration settlement without first notifying MSAAC, violating yet another provision of the MSAAC Policies. Under the MSAAC Policies, "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [MSAAC's] consent." *E.g.*, Apx. 22 § E.2.d. The plain language of this clause requires that the insured seek the insurer's consent before spending money to settle or remediate a claim. *Nationwide*, 2011 WL 721905, at *8. But W.B. Homes incurred millions of dollars in expenses remediating the Claims without even notifying MSAAC of the Claims, let alone seeking and receiving MSAAC's consent. Incurring those expenses breached the plain terms of the MSAAC Policies, relieving MSAAC of any duty to indemnify W.B. Homes for these voluntarily incurred expenses.

### C.     Legal Effect of W.B. Homes's Breaches

MSAAC is not arguing that the late-notice and voluntary-payment defenses apply against Howard Lynch at summary judgment. W.B. Homes, not Howard Lynch, paid out this money without giving MSAAC fair notice of the claims. Unlike the "occurrence" argument above, which applies to all defendants equally, this argument proves only that MSAAC need not reimburse or indemnify W.B. Homes for the homeowners' Claims and the claims in the Desnoyers Arbitration.

### III.    In the Alternative, This Court Should Enter Default Judgment Against Howard Lynch.

Even if this Court decides that some genuine issue of material fact bars summary judgment in MSAAC's favor against all defendants, this Court should still grant default judgment in MSAAC's favor against Howard Lynch. MSAAC is entitled to default judgment against Howard Lynch, because none of the Claims or the claims raised in the Legal Proceedings arise from property damage caused by an occurrence.

Howard Lynch has admitted every fact necessary for MSAAC to show that none of the Claims and none of the claims in the Legal Proceedings arise from property damage caused by an occurrence. "The homeowners' Claims and the claims alleged in the Legal Proceedings seek damages caused by the allegedly defective construction of the Homes." Compl. ¶ 5; *see* UF ¶ 2. As W.B. Homes explained when it first notified MSAAC of the Claims, they are for the "significant expense" related to "repair[ing] property damage as a result of operations performed on several private residences by Howard Lynch." Compl. ¶ 27; *see* UF ¶ 12. And the pleadings in the McGinnis Lawsuit and the Desnoyers Arbitration confirm that they are for defective stucco work. Apx. 210–409, 421–53. For all the reasons in Section I(A) above, these claims for repairing defective work and related damage assert the existence of property damage *not* caused by an "occurrence." This Court should thus enter default judgment, declaring (1) that MSAAC is not

19

obligated under the MSAAC Policies to defend, indemnify, or reimburse Howard Lynch in connection with the Claims and the Legal Proceedings identified in MSAAC's complaint and (2) that MSAAC is entitled to withdraw its defense of Howard Lynch in the McGinnis Lawsuit.

And default judgment is appropriate under the circumstances. *See generally Chamberlain v. Giampapa*, 210 F. 3d 154, 164 (3d Cir. 2000). Howard Lynch has had four months in which to engage this litigation, personal service on its corporate secretary by MSAAC, and written notice from this Court about default. Failing to enter default judgment in MSAAC's favor would prejudice MSAAC, because MSAAC would have to continue its representation of Howard Lynch in the McGinnis Lawsuit, at least until this case reaches final judgment, despite no obligation to do so under the MSAAC Policies. And neither Howard Lynch, on its own, nor W.B. Homes, on Howard Lynch's behalf, has raised a meritorious defense to the declaratory relief MSAAC seeks here. Thus, even if this Court finds some fact dispute between MSAAC and W.B. Homes that requires a trial, it should immediately resolve MSAAC's legal obligations to Howard Lynch by entering default judgment.

**CONCLUSION**

For these reasons, this Court should enter summary judgment against all defendants, declaring (1) that MSAAC is not obligated under the MSAAC Policies to defend, indemnify, or reimburse W.B. Homes or Howard Lynch in connection with the Claims and the Legal Proceedings identified in MSAAC's complaint and (2) that MSAAC is entitled to withdraw its defense of Howard Lynch in the McGinnis Lawsuit.

In the alternative, this Court should enter default judgment against Howard Lynch, declaring (1) that MSAAC is not obligated under the MSAAC Policies to defend, indemnify, or reimburse Howard Lynch in connection with the Claims and the Legal Proceedings identified in

MSAAC's complaint and (2) that MSAAC is entitled to withdraw its defense of Howard Lynch in the McGinnis Lawsuit.

Dated: January 25, 2022                              Respectfully submitted,


                                                    ___/s/ Richard J. Orr_____
                                                    Richard J. Orr (Bar No. 66860)
                                                    Dilworth Paxson, LLP
                                                    2 Research Way
                                                    Princeton, New Jersey 08540
                                                    Telephone: 609-987-3993
                                                    Facsimile: 215-893-8537
                                                    rorr@dilworthlaw.com

                                                    Susan M. Hogan (*pro hac vice*)
                                                    Ezra S. Gollogly (*pro hac vice*)
                                                    Joseph Dudek (of counsel)
                                                    Kramon & Graham, P.A.
                                                    One South Street, Suite 2600
                                                    Baltimore, Maryland 21202-3201
                                                    Telephone: 410-752-6030
                                                    Facsimile: 410-539-1269
                                                    shogan@kg-law.com
                                                    egollogly@kg-law.com

                                                    *Attorneys for Main Street America Assurance Company*