IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| Main Street America Assurance Company, | : | |
|---|---|---|
| *Plaintiff*, | : | |
| v. | : | Case No. 2:21-cv-03977 (MAK) |
| Howard Lynch Plastering, Inc. | : | |
| and | : | |
| W.B. Homes, Inc., | : | |
| *Defendants*. | : | |

**MAIN STREET AMERICA ASSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
OR ALTERNATIVELY FOR DEFAULT JUDGMENT**

Under Section IV.C. of Hon. Mark A. Kearney's Policies and Procedures, Main Street America Assurance Company ("MSAAC") files this reply in support of its motion for summary judgment against Howard Lynch Plastering, Inc. ("Howard Lynch") and against W.B. Homes, Inc. ("W.B. Homes") and its alternative motion for default judgment against Howard Lynch.

**I.  Occurrence**

The MSAAC Policies provide coverage for property damage only when it is "caused by an occurrence." Apx. 11, 81, 145. "Occurrence," as used in the MSAAC Policies, means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Apx. 24, 94, 158. This occurrence language "is unambiguous." *Millers Cap. Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 717 (Pa. Super. Ct. 2007). Construction defects are not accidents, so they are not occurrences. *Id.* at 713. W.B. Homes conceded that this case arises only from

alleged construction defects,[1] an admission that this Court has held precludes coverage under *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 899 (Pa. 2006). *Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 357 (E.D. Pa. 2017) (*Kvaerner* "relied on allegations that there were 'construction defects'" to "conclude[] that the insurer had no duty to defend because the underlying claims were based on faulty workmanship").

Contrary to its stipulation, W.B. Homes now argues that at least some of Howard Lynch's liability arises from its manufacturing or distribution of a defective product, not from its construction. Ans., ECF No. 20, at 6–7; *see generally* Charles J. Nagy, Jr., Am. L. Prod. Liab. 3d § 1:1 (Feb. 2022 Update) ("the term 'products liability' typically covers any liability of a *manufacturer* or other *distributor* of a product where personal injury or damage to some other property is caused by a defect in the product" (emphasis added)). Citing *Indalex Inc. v. National Union Fire Ins. Co. of Pittsburgh, P.A.*[2] and cases applying it, W.B. Homes notes that torts premised on the manufacture or distribution of defective products (and the resulting "active product malfunction") may be covered by occurrence-based commercial general liability policies. Ans. 5–7. W.B. Homes is right about *Indalex*'s holding: when an underlying complaint "involve[s] product-liability-based tort claims," that complaint may trigger a duty to defend under occurrence-based CGL policies, depending on the specific language in the insuring agreement. 83 A.3d at 425 (quoting, in bold, policy language that does not appear in the MSAAC Policies).

---

[1] Joint Stipulation, ECF No. 19-2, at 4, ¶ 2.
[2] 83 A.3d 418, 421 (Pa. Super. Ct. 2013).

But *Indalex* does not apply here. Nothing in the record creates a reasonable inference[3] that Howard Lynch manufactured or distributed a product that damaged the Homes. W.B. Homes relies on two notes in the inspection report for the Pisoni Home about a "sealant joint" that was "failing adhesively" and a "kickout[]" that "was split at the time of installation." Ans. 7. And W.B. Homes notes that its joinder complaint in the McGinnis Lawsuit alleges that Howard Lynch's "services and materials" were "utilized in the construction of the Home" and "were alleged by Plaintiffs to be defective, deficient, and nonconforming." Ans. 8. But these arguments were rejected in *Meridian Mut. Ins. Co. v. James Gilligan Builders*, No. 08-1995, 2009 WL 1704474, at *6 (E.D. Pa. June 18, 2009). There, the underlying plaintiffs "allege[d] defects in stucco application, *sealing* at the windows, doors, and other penetration points through the stucco, missing flashings, and other *defects* in the windows and roofing." *Id*. (emphasis added). Even so, this Court correctly held that these allegations raise only faulty workmanship claims. *Id*. Because the underlying claims were for "breach of contract and breach of warranty"—not the manufacturing or distribution of defective products—the underlying litigation was for faulty workmanship, and thus *Kvaerner* and *Millers Capital* foreclosed coverage. *Id*.

The analysis in *Meridian* applies equally here. If Howard Lynch failed to properly seal a joint or if it installed an already-split kickout, that shows only that Howard Lynch's workmanship was faulty, not that Howard Lynch manufactured or distributed some defective product. Indeed, the record is filled with evidence that Howard Lynch's faulty workmanship damaged the Homes. Memo. 11–13 (quoting extensively from the Ashbourne Report); Apx. 454–92 (the Ashbourne Report); Apx. 577–927 (W.B. Homes's collections of documents, each of which contains an

---

[3] In evaluating a motion for summary judgment "a court is required to indulge only reasonable inferences." *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 210 (3d Cir. 2001).

inspection report that describes "property damage sustained at each of the Homes" that is "substantially similar" to the "property damage described in the Ashbourne Report . . . both as to the nature of the property damage and the cause of the property damage," Joint Stipulation, ECF No. 19-2, at 5, ¶ 14). The damage to the Homes arises from Howard Lynch's alleged failure to install "expansion joints," "vertical control joints," and "kickout flashing"; failure to seal the "window frames, door frames, and garage door frames"; and failure to leave an appropriate "separation between" its stucco and the roof or the porch. Memo. 12.

And in the McGinnis Lawsuit, the underlying complaint from the homeowners raises only breach-of-contract and breach-of-warranty claims, just like the complaint in *Meridian*. *See* Memo. 14–16. W.B. Homes's joinder complaint, in turn, relies on allegations in the original complaint, using an indemnity clause to hold Howard Lynch liable for the damage "alleged by Plaintiffs"— the property damage from faulty workmanship. W.B. Homes's vague references to "services and materials" that were "defective, deficient and nonconforming," especially in the context of W.B. Homes's references to the plaintiffs' allegations, does not allege that Howard Lynch manufactured or distributed defective products or that those products damaged the McGinnises' home. As this Court held in 2018:

> the Joinder Complaint . . . does not trigger a coverage obligation . . . . It incorporates by reference the facts contained in the [original] complaint . . . and further states that faulty construction consisted of, "latent defects and deformities in the stucco in the condominium units, leaking around windows, underperforming systems, and other alleged defects in the construction and condominium units." These are all allegations of faulty workmanship.

*Union Ins. Co. v. Selective Ins. Co. of Am.*, No. CV 17-2674, 2018 WL 4335497, at *3 (E.D. Pa. Sept. 11, 2018).

The McGinnis Lawsuit unambiguously raises claims for faulty workmanship and related construction defects for which MSAAC has no duty to defend Howard Lynch. The discovery

4

record here unmistakably shows that the homeowners' Claims against W.B. Homes and, by extension, Howard Lynch arise from faulty workmanship and related construction defects, for which MSAAC has no duty to indemnify Howard Lynch or W.B. Homes. MSAAC is therefore entitled to summary judgment.

W.B. Homes offers two other arguments about the coverage afforded by the MSAAC Policies, neither of which responds to MSAAC's motion. First, W.B. Homes argues that the MSAAC Policies' "your work" exclusion is inapplicable here, because the Claims are for Howard Lynch's work and allege property damage included in the "products-completed operations hazard." Ans. 9. This argument is irrelevant. If there is no coverage for the Claims under the plain text of the insuring agreement, then it does not matter whether exclusions would also preclude coverage. "There is no need to look to the exclusions because they cannot expand the basic coverage granted in the insuring agreement." *Unitrin Direct Ins. Co. v. Esposito*, 751 Fed. Appx. 213, 215 (3d Cir. 2018) (unpublished) (quoting *Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996)); *see Kvaerner*, 908 A.2d at 900 (stating, after finding no "occurrence," that "it is not necessary for us to consider whether the business risk/work product exclusions also preclude coverage").

Second, W.B. Homes argues that because Howard Lynch proffered insurance certificates that identify W.B. Homes as an additional insured, W.B. Homes is covered. This argument, too, is irrelevant. MSAAC's motion assumes for the sake of argument that W.B. Homes is an additional insured under the MSAAC Policies and shows that, even if that were true, W.B. Homes would not be entitled to coverage for the Claims, the McGinnis Lawsuit, or the Desnoyers Arbitration.

W.B. Homes is mistaken—the insurance certificates do not make W.B. Homes an additional insured[4]—but that should have no effect on this Court's evaluation of MSAAC's motion.

As W.B. Homes has thrice admitted,[5] there is no genuine dispute about the nature of the claims underlying this lawsuit. They are construction defect claims, and they arise from Howard Lynch's allegedly faulty workmanship on the Homes. W.B. Homes's new argument that some of Howard Lynch's liability arises from its manufacturing of a defective product finds no support in the record.

## II. Late-Notice Defenses

W.B. Homes breached the plain text of the MSAAC Policies by failing to timely notify MSAAC of the Claims or the Desnoyers Arbitration. Under the MSAAC Policies, the insured "must see to it that [MSAAC is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim" and, "[i]f a claim is made or 'suit' is brought against any insured, . . . must . . . [n]otify MSAAC as soon as practicable" with a "written notice." *E.g.*, Apx. 22. W.B. Homes's late notice—its delay of nearly a decade between learning of claims and notifying MSAAC—was objectively unreasonable. And W.B. Homes's late notice prejudiced MSAAC as a matter of law, because it deprived MSAAC of a reasonable opportunity to settle the claims, seek

---

[4] An insurance certificate that is expressly "for informational purposes only" that says it does "not modify the terms, exclusions, or conditions of the policy" cannot bind an insurance company and require coverage; it is "without effect." *Quincy Mut. Fire Ins. Co. v. Imperium Ins.*, 636 Fed. Appx. 602, 606 (3d Cir. 2016) (unpublished); 17 Lee R. Russ *et al.*, *Couch on Insurance* § 242:33 (3d ed. 2005) ("A certificate of insurance is not part of the policy—if it states that there is coverage but the policy does not, the policy controls."). The insurance certificates here, which were issued by Northeast Agencies Inc. and not by MSAAC, contain this same warning in big, bold letters at the top of the page: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT . . . AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES." Apx. 494.

[5] Joint Stipulation, ECF No. 19-2, at 4, ¶ 2; Pretrial Statement of Undisputed Facts, ECF No. 14-1, ¶ 6; Ans., ECF No. 9, ¶ 5.

more cost-effective remediation, or otherwise protect its economic interest. *See* Memo., ECF No. 19-1, at 16–19.

W.B. Homes responds that it did such a cost-effective job evaluating, settling, and remediating the homes that MSAAC cannot have been prejudiced.[6] Ans. 11–12. But "Pennsylvania forgives untimely notice [for lack of prejudice] only where the insurer is afforded the opportunity to participate in the proceedings arising from a claim before the liability of its insurers becomes fixed," *Nationwide Mut. Fire Ins. Co. v. Nova Real Est. LLC*, No. 09–0303, 2011 WL 721905, at *6 (E.D. Pa. Mar. 1, 2011) (internal quotation marks omitted). W.B. Homes has pointed to no evidence showing it gave MSAAC a fair chance to *participate* in resolving the claims. *See* Ans. 11–12 (no citations to evidence). "Prejudice is found as a matter of law where notice is first supplied when the insured's liability is a *fait accompli*." *Nationwide*, 2011 WL 721905, at *6. (internal quotation marks omitted).

By the time of W.B. Homes's notice to MSAAC, the cost of remediation or settlement was fully fixed by W.B. Homes's conduct. See Memo. 18. This single fact—that W.B. Homes resolved all of the Claims and the Desnoyers Arbitration before contacting MSAAC—is undisputed and is sufficient to find, as a matter of law, that MSAAC is not obligated to reimburse W.B. Homes under the MSAAC Policies.

---

[6] W.B. Homes's exclusive reliance on *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 197–98 (Pa. 1977), is misplaced. Ans. 10–11. This Court long ago applied *Brakeman* to conclude that notice is timely only if it gives the insurer an "opportunity to participate in the proceedings arising from a claim before the liability of its insured becomes fixed." *United Nat. Ins. Co. v. Admiral Ins. Co.*, No. CIV. A. 90-7625, 1992 WL 210000, at *5–*6 (E.D. Pa. Aug. 19, 1992). Even before that, the Superior Court of Pennsylvania found prejudice when, by the time of the notice, the cost of settlement "was already a fait accompli" and the insurer could "not 'gain control of the proceedings.'" *Metal Bank of Am., Inc. v. Ins. Co. of N. Am.*, 520 A.2d 493, 499 (Pa. Super. Ct. 1987) (quoting *Brakeman*, 371 A.2d at 197).

7

### III. MSAAC's Prayer For Relief

More fundamentally, W.B. Homes appears to misunderstand the declarations that MSAAC is (and is not) seeking in this action. This action seeks final resolution of (1) MSAAC's *indemnity* obligations to Howard Lynch as the named insured under the MSAAC Policies for the Claims and the Legal Proceedings, (2) MSAAC's *indemnity* obligations to W.B. Homes as an alleged additional insured under the MSAAC Policies for the Claims and the Legal Proceedings, and (3) MSAAC's *defense* obligations under the MSAAC Policies for the McGinnis Lawsuit. MSAAC is not seeking a declaration relieving it of future defense obligations that might arise from a legal proceeding involving the Homes that are the subject of the Claims. Nor could MSAAC ask for such a declaration, because defense obligations arise based on the pleadings in a case, and there are not (yet) pleadings to review.

W.B. Homes's list of questions presented for this Court's review, Ans. 2, misstates MSAAC's prayer for relief. Question 1 ignores that MSAAC is seeking a declaration about its indemnity obligations to W.B. Homes, and Question 2 suggests MSAAC is seeking to avoid its future defense obligations. These misstatements pervade W.B. Homes's analysis. W.B. Homes wanders from defense to indemnity and back, asserting for example that "MSAAC has . . . a duty to defend . . . Howard Lynch in connection with the Claims." Ans. 7, 8. There is nothing to defend and nothing to declare, because the Claims are not legal proceedings.

This same confusion affects W.B. Homes's analysis of the late-notice and voluntary-payment defenses. MSAAC's complaint and motion for summary judgment seek a declaration that W.B. Homes's late notice excuses MSAAC from *reimbursing W.B. Homes*. Memo. 16–19. But W.B. Homes tries to recast the argument, focusing instead on whether W.B. Homes's late notice excuses MSAAC from *indemnifying Howard Lynch*. Ans. 10. Those are different questions with

different answers, which MSAAC made clear. Memo. 19 (articulating the "Legal Effect of W.B. Homes's Breaches").

MSAAC is asking for tailored relief that carefully tracks the language of the MSAAC Policies, the allegations in the McGinnis Complaint, and the record W.B. Homes provided about the facts underlying the Claims and the Desnoyers Arbitration. Well-settled Pennsylvania law supports MSAAC's request, and the undisputed record shows that MSAAC is entitled to this relief.

## CONCLUSION

For all these reasons, along with the reasons in MSAAC's memorandum of law, this Court should grant MSAAC's motion and enter final judgment as set forth in the proposed order, ECF No. 19-4.

Dated: February 8, 2022

Respectfully submitted,

/s/ Gerald Wixted
Gerald D. Wixted (Bar No. 54545)
Dilworth Paxson, LLP
2 Research Way
Princeton, New Jersey 08540
Telephone: 609-734-6193
Facsimile: 215-893-8537
gwixted@dilworthlaw.com

Susan M. Hogan (*pro hac vice*)
Ezra S. Gollogly (*pro hac vice*)
Joseph Dudek (of counsel)
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
Telephone: 410-752-6030
Facsimile: 410-539-1269
shogan@kg-law.com
egollogly@kg-law.com

*Attorneys for Main Street America Assurance Company*

**CERTIFICATE OF SERVICE**

I certify that on February 8, 2022, the foregoing document is being served this day via email on all parties that have appeared via this Court's CM/ECF system and via regular mail to:

       **Howard Lynch Plastering, Inc.**
       c/o Doris Elizabeth Lynch
       31 Eagles Watch North
       Bechtelsville, Pennsylvania  19505

                                            /s/ Gerald D. Wixted